**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANICE PROGIN, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UMASS MEMORIAL HEALTH CARE, INC., UMASS MEMORIAL COMMUNITY ENTITIES, INC., UMASS MEMORIAL MEDICAL CENTER, INC., UMASS MEMORIAL HEALTHALLIANCE-CLINTON HOSPITAL, INC., MARLBOROUGH HOSPITAL, and HARRINGTON MEMORIAL HOSPITAL, INC.,<br><br>Defendants. | Case No. 4:25-cv-40003 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

I. THE CONSOLIDATED AMENDED COMPLAINT ..... 2

II. STANDARD OF REVIEW ..... 3

III. ARGUMENT ..... 4

A. Plaintiffs' Claims Fail Because No Protected Health Information Was Disclosed ..... 4

B. Plaintiffs Fail to State a Claim for Violation of the ECPA ..... 6

1. Plaintiffs Fail to Allege an Unlawful Interception ..... 6

2. Plaintiffs Fail to Allege a Criminal or Tortious Purpose ..... 7

3. Plaintiffs Fail to Allege Any Plausible Interception of "Contents" ..... 13

C. Plaintiffs Fails to State a Privacy Claim ..... 14

1. Plaintiffs Fail to Plead a Claim for Statutory Invasion of Privacy ..... 14

2. Plaintiffs Fail to Plead a Claim for Invasion of Privacy Under G.L. c. 111, § 70E ..... 16

D. Plaintiffs' Negligence Claim Fails for Lack of Duty, Breach, and Damages ..... 18

1. Plaintiffs' Negligence Claim Fails for Lack of Duty, Breach, and Damages ..... 18

2. Plaintiffs Fail to Plead Cognizable Damages ..... 19

E. Plaintiffs Fail to Allege Mutual Assent and Consideration Necessary for Their Implied Contract Claim ..... 21

F. Plaintiffs Fail to Plead a Fiduciary Relationship Between UMass Memorial and Plaintiffs Regarding Their Public Website Browsing Data ..... 22

G. Plaintiffs' Unjust Enrichment Fails For Lack Of Reasonable Expectation Of Compensation ..... 24

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.*,
No. 24-CV-1404, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ....12

*Alberts v. Devine*,
395 Mass. 59 (1985) ....18

*Allen v. Novant Health, Inc.*,
No. 1:22-CV-697, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) ....24

*American Hosp. Ass'n. v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. Jun. 20, 2024) ....5, 6

*Analog Techs., Inc. v. Analog Devices, Inc.*,
105 F.4th 13 (1st Cir. 2024) ....12

*ARK Nat'l Holdings LLC v. We Campaign LLC*,
No. 21-CV-10893-RGS, 2021 WL 5918682 (D. Mass. Dec. 15, 2021) ....25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....4

*B.K. v. Eisenhower Medical Center*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 554 (2007) ....4, 15

*Branyan v. Southwest. Airlines Co.*,
105 F. Supp. 3d 120 (D. Mass. 2015) ....14

*Brookridge Funding Corp. v. Aquamarine, Inc.*,
675 F. Supp. 2d 227 (D. Mass. 2009) ....24

*Cape Cod ASC, LLC v. Bentivegna*,
No. 20-CV-8457, 2010 WL 3038824 (Mass. Super. Jul. 1, 2010) ....22

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ....11

*Chin v. Merriot*,
470 Mass. 527 (2015) ....17

*Clark v. Rowe*,
428 Mass. 339 (1998) ....................18

*Conformis, Inc. v. Aetna, Inc.*,
58 F.4th 517 (1st Cir. 2023)....................3

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023)....................14

*Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*,
455 Mass. 458 (2009) ....................20

*Darviris v. Petros*,
442 Mass. 274 (2004) ....................16

*Doe I v. Google, LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ....................10

*Doe v. Boston Med. Ctr. Corp.*,
No. 2384CV00326-BLS-1, 2023 WL 7105628 (Mass. Super. Ct. Sept. 14, 2023)....................15

*Doe v. Chestnut Health Sys., Inc.*,
No. 24-CV-01475, 2025 WL 1616635 (C.D. Ill. June 6, 2025) ....................11

*Doe v. Emerson Hosp.*,
No. 2277CV01000, 2023 WL 8869624 (Mass. Super. Ct. Nov. 22, 2023)....................15

*Doe v. Genesis Health Sys.*,
No. 4:23-CV-04209-JEH, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) ....................9

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)....................10, 12

*Doe v. Partners Healthcare Sys., Inc.*,
No. 1984CV01651-BLS1 (Mass. Super. Ct. Nov. 20, 2020) ....................15

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) ....................15

*Doe v. Upperline Health, Inc.*,
No. 23-CV-01261, 2024 WL 4953503 (S.D. Ind. Sept. 24, 2024)....................5, 20

*Donovan v. Philip Morris USA, Inc.*,
455 Mass. 215 (2009) ....................19

*Gardiner v. Walmart, Inc.*,
No. 20-CV-04618-JSW, 2021 WL 4992539 (N.D. Cal. Jul. 28, 2021)....................21

*In re Google Cookie Placement*,
806 F.3d 125 (3rd Cir. 2015) ........................................................................9, 10, 11, 13

*Goulart et al. v. Cape Cod Healthcare, Inc.*,
No. 25-CV-10445-RGS, 2025 WL 1745732 (D. Mass. June 24, 2025)......................7, 8, 9, 10

*Gravallese v. Massachusetts Parole Bd.*,
No. CA 945777, 1995 WL 808813 (Mass. Super. Apr. 19, 1995) .........................................22

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ...................................................................................15

*Hubbard v. Google LLC*,
No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. Jul. 1, 2024) ...................................15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...................................................................................15

*Jordan's Furniture, Inc. v. Carter & Burgess, Inc.*,
92 Mass. App. Ct. 1102 (2017)................................................................................................19

*Josef Gartner USA LP v. Consigli Const. Co., Inc.*,
No. 10-CV-40072-FDS, 2011 WL 2417137 (D. Mass. Jun. 10, 2011)..................................21

*Juliano v. Simpson*,
461 Mass. 527 (2012) ..............................................................................................................18

*K.L. v. Legacy Health*,
No. 3:23-CV-1886-SI, 2024 WL 4794657 (D. Or. Nov. 14, 2024) ...................................5, 19

*Katz-Lacabe v. Oracle America, Inc.*
No. 22-CV-04792-RS, 2024 WL 1471299 (N.D. Cal. Apr. 3, 2024).....................................12

*Kelley v. CVS Pharmacy, Inc.*,
No. CIV.A. 98-0897-BLS2, 2007 WL 2781163 (Mass. Super. Aug. 24, 2007) .....................23

*Koppel v. Moses*,
No. 20-CV-11479-LTS, 2020 WL 6292871 (D. Mass. Oct. 27, 2020)..................................16

*Korper v. Weinstein*,
57 Mass. App. Ct. 433 (2003)..................................................................................................23

*Leocal v. Ashcroft*,
543 U.S. 1 (2004).....................................................................................................................13

*Loffredo v. Center for Addictive Behaviors*,
426 Mass. 541 (1998) ..............................................................................................................16

*A.G. ex rel. Maddox v. Elsevier, Inc.*,
732 F.3d 77 (1st Cir. 2013) ........................................................................20

*Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
412 F.3d 215 (1st Cir. 2005) ........................................................................21

*Metro. Life Ins. Co. v. Cotter*,
464 Mass. 623 (2013) ........................................................................24

*Morales-Cruz v. Univ. of P.R.*,
676 F.3d 220 (1st Cir. 2012) ........................................................................4

*Nelson v. Massachusetts Port Auth.*,
55 Mass. App. Ct. 433 (2002) ........................................................................18

*In re Nickelodeon Consumer Priv. Lit.*,
No. 12-CV-07829, 2014 WL 3012873 (D.N.J. Jul. 2, 2014) ........................................24

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ........................................................................6, 11

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ........................................................11

*Nienaber v. Overlake Hosp. Med. Ctr.*,
No. 23-CV-01159, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ................................12

*Okash v. Essentia Health*,
No. 23-CV-482 (JRT/LIB), 2025 WL 642913 (D. Minn. Feb. 27, 2025) ..................11, 12

*Okash v. Essentia Health*,
No. 23-CV-482 (JRT/LIB), 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ......................10

*Portier v. NEO Tech. Sols.*,
No. 3:17-CV-30111-TSH, 2019 WL 7946103 (D. Mass. Dec. 31, 2019) .........................19

*R. M. W. by Wolfe v. Homewood Suites by Hilton Mt. Laurel*,
No. 09-CV-400 (JHR/AMD), 2012 WL 13186031 (D.N.J. Jun. 28, 2012) .......................17

*Renzulli v. Sullivan*,
No. 22 MISC 000564 (KTS), 2024 WL 1903573 (Mass. Land Ct. Apr. 26, 2024) ..............19

*Roberts v. Charlotte Mecklenburg Hosp. Auth.*,
No. 24-CV-00382, 2025 WL 880538 (W.D.N.C. Mar. 20, 2025) ....................................11

*Rodriguez v. Fastmed Urgent Care, P.C.*,
741 F. Supp. 3d 352 (E.D.N.C. 2024) ........................................................................12

*Roe No. 1 v. Children's Hosp. Med. Ctr.*,
469 Mass. 710 (2014) ....................18

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) ....................10

*SEC v. Tambone*,
597 F.3d 436 (1st Cir. 2010)....................4

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................5

*Spencer v. Roche*,
755 F. Supp. 2d 250 (D. Mass. 2010)....................6

*Stop & Shop Cos. v. Fisher*,
387 Mass. 889 (1983) ....................20

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ....................8

*Sweeney v. DeLuca*,
No. 042338, 2006 WL 936688 (Mass. Super. Mar. 16, 2006) ....................24

*T.D. v. Piedmont HealthCare, Inc.*,
No. 1:23-CV-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ....................20

*In re TJX Cos. Retail Sec. Breach Litig.*,
564 F.3d 489 (1st Cir. 2009)....................20

*Town of Canton v. Comm'r of Massachusetts Highway Dep't*,
455 Mass. 783 (2010) ....................17

*Tyler v. Michaels Stores, Inc.*,
840 F. Supp. 2d 438 (D. Mass. 2012)....................24

*United States v. Councilman*,
418 F.3d 67 (1st Cir. 2005)....................13

*United States v. Jiau*,
734 F.3d 147 (2d Cir. 2013)....................7

*United States v. McHugh*,
57 F. Supp. 3d 95 (D. Mass. 2014) ....................7, 8

*Vacca v. Bringham & Women's Hosp., Inc.*,
98 Mass. App. Ct. 463 (Mass. App. Ct. 2020)....................21

*Vita v. New England Baptist Hosp.*,
494 Mass. 824 (2024) ....................8

*Wayne Inv., Inc. v. Gulf Oil Corp.*,
739 F.2d 11 (1st Cir.1984)....................2, 3

*Webb v. Injured Workers Pharmacy, LLC*,
No. 22-CV-10797, 2023 WL 5938606 (D. Mass. Sept. 12, 2023) ....................22

*Weekes v. Cohen Cleary P.C.*,
723 F. Supp. 3d 97 (D. Mass. 2024) ....................21

*Williams v. TMC Health*,
No. 23-CV-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024)...........5, 8, 10, 19

*Wofse v. Horn*,
523 F. Supp. 3d 122 (D. Mass. 2021) ....................14

*Xinrong Zhuang v. Benvie*,
No. 14-CV-13076-IT, 2018 WL 10335959 (D. Mass. Feb. 9, 2018) ....................16

*Zoll Med. Corp. v. Barracuda Networks, Inc.*,
565 F. Supp. 3d 101 (D. Mass. 2021) ....................20

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................13, 14

**Statutes**

18 U.S.C. § 2510....................13

18 U.S.C. § 2511....................6, 13

42 U.S.C. § 1320d....................4

G.L. c. 111, § 70 ....................17

G.L. c. 111, § 70E....................16, 17

**Other Authorities**

45 C.F.R. § 160.103....................4

1 A.W. Scott & W.F. Fratcher, TRUSTS § 2.4 (4th ed. 1987) ....................23

RESTATEMENT (SECOND) OF TRUSTS § 2 (1959)....................23

# INTRODUCTION

Plaintiffs' case is one of many putative class action complaints filed across the country that seek to punish non-profit health care systems for the use of ordinary and ubiquitous website analytics on their public websites. Critically, the complaint does not allege that *any* of Plaintiffs' medical records, treatments, test results, doctors' notes, or substantive communications with their doctors, nurses, or other health care providers have ever been disclosed by Defendants (collectively, "UMass Memorial"), because they have not. Instead, the consolidated amended complaint alleges generally that the collection of data regarding Plaintiffs' actions on *public websites* somehow amounts to the disclosure of patient health information in violation of the Health Insurance Portability and Accountability Act ("HIPAA") and various state statutes. Plaintiffs' allegations have multiple fatal flaws.

First, Plaintiffs' complaint consists of nothing more than formulaic recitations of the elements of the asserted causes of action and fails to allege plausible facts supporting any claim for relief. They fail to provide any individual allegations regarding any medical information they contend was transmitted, or any harm to them as a result of the alleged generic transmissions.

Second, the information that Plaintiffs contend was transmitted to Facebook and Google when they used UMass Memorial's public websites shows nothing more than the particular page that a user was viewing on a public website and which, as a matter of law, does not contain HIPAA-protected information. As such, Plaintiffs' claims, all of which are conditioned on the purported disclosure of PHI, fail to be sufficiently pled and thus should be dismissed with prejudice.

## I. THE CONSOLIDATED AMENDED COMPLAINT[1]

UMass Memorial is "the largest health care system in Central Massachusetts." Consolidated Amended Complaint ("CAC") ¶ 6. UMass Memorial has several public websites, including www.ummhealth.org, that allows anyone, patients and non-patients alike, to search its website for information regarding UMass Memorial's services, physicians, and locations. *See id.* ¶¶ 22–26. UMass Memorial also has a secure patient portal that users can access after entering log-in credentials. *See id.* ¶¶ 26, 31. Plaintiffs make generic allegations that information transmitted regarding a user's browsing on UMass Memorial's *public* webpages, including transmission of IP addresses and browser fingerprints, amounts to the transmission of personal health information ("PHI") and individually identifiably health information ("IIHI") to Facebook and/or Google. *See e.g., id.* ¶ 28, 29, 31-34. And while Plaintiffs allege that they used UMass Memorial's patient portal, they do not plausibly allege facts that any of their medical records, details of scheduled medical appointments, lab results or substantive communications on the patient portal were ever transmitted to Meta, Google or any other third-party—because they were not. *Id.* ¶ 26. Plaintiffs allege in a single paragraph of the 392 paragraph Consolidated Amended Complaint "upon information and belief" that UMass Memorial "installed tracking technologies inside of its patient portal," but provide no facts upon which the belief is founded. Such conclusory allegations should be provided no weight and can be disregarded by the Court in considering this motion to dismiss. *See Wayne Inv., Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13–14 (1st Cir.1984) (allegations based upon "information and belief" do not satisfy the particularity requirement unless the complaint sets forth the facts upon which the belief is founded, even if the supporting facts are "peculiarly within the knowledge of the opposing party.").

[1] By addressing the Consolidated Amended Complaint's allegations for purposes of this motion, UMass Memorial obviously does not concede their accuracy.

The allegations regarding Plaintiffs John Doe, Lisa Colleton, and Janice Progin themselves are limited to the fact that they were or are patients of UMass Memorial and used its public website and patient portal. *Id.* ¶¶ 28–34. Plaintiffs do not allege any specific facts regarding any actual information of theirs that they contend has been transmitted to Google or Facebook, but instead rely on generic allegations that they used the website to search for medical information and/or information about their doctors on the website *Id.* Plaintiffs also make conclusory allegations relating to purported harm, including generic allegations that they have or will suffer damages, including "statutory, actual, compensatory, consequential, punitive, and nominal damages." *See id.* at 96. They plead no facts to support these allegations.

Relying on these threadbare allegations, Plaintiffs assert six causes of action against UMass Memorial for (1) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510; (2) violation of privacy statutes G.L. c. 214, § 1B and c. 111, § 70E; (3) breach of fiduciary duty and/or common law duty of confidentiality; (4) breach of implied contract; (5) unjust enrichment; and (6) negligence. Plaintiffs seek to represent two putative classes, a "Massachusetts Class" and a "Nationwide Class", of "current and former patients of UMass Memorial Health, Inc. or any of its affiliates and who exchanged communications at Defendants' websites…" *Id.* ¶ 250. Plaintiffs' claims are insufficiently pled and fail as a matter of law.

## II. STANDARD OF REVIEW

UMass Memorial moves to dismiss this Consolidated Amended Complaint for a failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss, the complaint must be both "plausible on its face" and suggest "more than a sheer possibility that a defendant has acted unlawfully." *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528 (1st Cir. 2023) (citations omitted). "To implement the plausibility standard, an inquiring court first must separate wheat from chaff; that is, the court must separate the complaint's factual

allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

## III. ARGUMENT

### A. Plaintiffs' Claims Fail Because No Protected Health Information Was Disclosed.

Plaintiffs' claims all rest on the fundamentally flawed assumption that information allegedly disclosed to third parties when Plaintiffs used the public website is protected health information under HIPAA. CAC ¶¶ 100, 217, 274. Plaintiffs are wrong as a matter of law. Congress defined Individually Identifiable Health Information ("IIHI") as:

> any information, including demographic information collected from an individual, that—(A) is created or received by a health care provider, health plan, employer, or health care clearinghouse; and (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and—(i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

42 U.S.C. § 1320d(6). To be IIHI, information must meet all three prongs of this test: (1) created or received by an entity of the type listed; ***and*** (2) related to an individual's past, present, or future health condition, health care, or payment for health care; ***and*** (3) able to identify that same individual. HHS then defined Personal Health Information "PHI" as a subset of IIHI. 45 C.F.R. § 160.103.

Nothing in HIPAA, or in the regulations HHS has promulgated thereunder, states that public website browsing information is (or even can be) IIHI or PHI. And multiple courts have

ruled that it is not. *See, e.g.*, *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017) (IP addresses, cookies, browser information, and visits to websites containing "general health information that is accessible to the public at large" are not IIHI under HIPAA), *aff'd*, 745 F. App'x 8 (9th Cir. 2018); *K.L. v. Legacy Health*, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024) (finding "generic search queries" created during public website browsing are not PHI); *Williams v. TMC Health*, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024) (dismissing ECPA and other claims because "the disclosure of data regarding what healthcare information someone searches for and whether someone clicks on the patient portal link does not necessarily implicate HIPAA"); *Doe v. Upperline Health, Inc.*, 2024 WL 4953503, at *2 (S.D. Ind. Sept. 24, 2024) (dismissing negligence, invasion of privacy, breach of fiduciary duty, breach of contract, and other claims because plaintiff's browsing activity did not "relate[] specifically to ***her*** health or relationship with [website owner]) (emphasis original); *American Hosp. Ass'n. v. Becerra*, 738 F. Supp. 3d 780, 802–03 (N.D. Tex. Jun. 20, 2024) (information that is merely "indicative" of PHI, such as browsing activity on a healthcare public website, is not sufficient to meet the definition of IIHI).

In *Becerra*, the court explained that visitor browsing data from hospitals' public websites, even when paired with purported identifiers about those website visitors (*e.g.*, the IP addresses from which they connected, *etc.*), "does not and cannot identify an individual or the individual's PHI without an unknowable subjective-intent element": each visitor's own reason for visiting the website, and whether that reason relates to the visitor's own health, health care, or payment for health care. *Id.* at 794, 802. Without knowing the reason for each specific website visit, the resulting data cannot be IIHI as a matter of law, because any given visitor could be browsing for any number of reasons on any given day, many of which do ***not*** relate to their own health at all

(*e.g.*, for academic research, to learn more about a health condition of a friend, family member or co-worker, pure curiosity, seeking employment, driving directions to visit a patient, gift shop hours, *etc.*). *See id.* at 795, 801. As the *Becerra* court summarized, "[w]ithout knowing information that's never received—*i.e.*, the visitor's subjective motive—the resulting metadata could never identify that individual's PHI. Simply put, **Identity** (Person A) + **Query** (Condition B) ≠ **IIHI** (Person A has Condition B)." *Id.* at 803. (emphasis in original). Plaintiffs' allegations amount to nothing more than this precise scenario: a user browsing UMass Memorial's public website for information regarding doctors and various medical conditions, which reveals nothing regarding the website user's personal medical information and is not protected by HIPAA. In addition, HIPAA creates no private right of action, so it cannot be used as a bootstrapped basis for any of Plaintiffs' state law claims.[2]

### B. Plaintiffs Fail to State a Claim for Violation of the ECPA.

To state a claim under the ECPA, a plaintiff must plead facts showing that a defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *In re Nickelodeon Consumer Priv. Litig*., 827 F.3d 262, 274 (3d Cir. 2016) (citations omitted). Plaintiffs cannot satisfy either the first, second, or third elements of her ECPA claim.

#### 1. Plaintiffs Fail to Allege an Unlawful Interception.

The ECPA is a one-party consent statute. *See* 18 U.S.C. § 2511(2)(d) (The ECPA does not make it unlawful for someone to "intercept … electronic communication where such person is a party to the communication."). A party to a communication cannot "intercept" a communication directed to it and cannot be held liable for "eavesdropping" upon itself. *In re Nickelodeon*, 827

[2] *Spencer v. Roche*, 755 F. Supp. 2d 250, 271 (D. Mass. 2010), *aff'd*, 659 F.3d 142 (1st Cir. 2011).

F.3d at 275 (dismissing ECPA claim because defendant "was either a party to all communications with the Plaintiff's computers or was permitted to communicate with the Plaintiff's computers by… a party to all such communications."). Plaintiffs admit UMass Memorial is a party to the communications. *See* CAC ¶ 272 ("although Defendants is [sic] a 'part[y] [sic] to the communications at issue'…."). UMass Memorial was the intended recipient of all of the Plaintiffs' alleged communications, and therefore is exempt from liability.

### 2. **Plaintiffs Fail to Allege a Criminal or Tortious Purpose**.

Plaintiffs attempt to overcome this fatal fact by alleging that the "crime-tort exception" to the party rule applies. 18 U.S.C. § 2511(2)(d) of the ECPA specifically states that:

> It shall not be unlawful under this chapter for a person … to intercept a[n] … electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception <u>unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State</u>.

(emphasis added). The above underlined statutory language is referred to as the "crime-tort exception." In drafting the statute, Congress required that the "***purpose***" of the interception be to commit a (***separate***) crime or tort for the exception to be invoked.

Plaintiffs have failed to allege sufficient facts to demonstrate that the crime-tort exception—which must be narrowly construed—applies here. *United States v. McHugh*, 57 F. Supp. 3d 95, 100 (D. Mass. 2014) (quoting *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013)) (The crime-tort exception is "'to be construed narrowly.'").

Judge Richard G. Stearns is the first judge in this district to analyze and address the crime-tort exception to allegations concerning a health care systems' alleged used of analytics and advertising technologies in *Goulart et al. v. Cape Cod Healthcare, Inc.*, 2025 WL 1745732

(D. Mass. June 24, 2025), ("*Cape Cod*").[3] Consistent with prior decisions from this district, Judge Stearns held that for the crime tort-exception to be invoked a plaintiff must plead sufficient facts that the health system's "primary motivation" or "determinative factor" in disclosing plaintiff's alleged personal health information through software-tracking technology was for the purpose of committing a criminal or tortious act. *Id.* at *3 (citing *United States v. McHugh*, 57 F. Supp. 3d 95, 99-100 (D. Mass. 2014) and *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ("holding that 'where the taping is legal, but is done for the purpose of facilitating some further impropriety, such as blackmail, [the crime-tort exception] applies. Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere.'")). Judge Stearns noted that the complaint against Cape Cod, like the Plaintiffs' CAC against UMass Memorial, includes allegations "supporting the proposition that [the health system] used the trackers for purposes of marketing and advertising." *Id.* at *4. Given these allegations, Judge Stearns concluded that as a matter of law, marketing and advertising which are "commercial purposes or advantages are not the stuff of which a crime-tort is made." *Id.*

In reaching his decision, Judge Stearns also cited with favor recent decisions issued by the District of Arizona and the Central District of Illinois. *Id.* at *3 (citing *Williams v. TMC Health*, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024) ("finding that the use of tracking technologies to obtain personal data, increase profits through sophisticated and targeted advertising, and to improve website analytics point to a non-criminal, non-tortious purpose");

---

[3] Following the Supreme Judicial Court's ("SJC") decision *in Vita v. New England Baptist Hosp.*, 494 Mass. 824, 826–27 (2024) that the Massachusetts Wiretap Act ("MWA") does not apply to public website interactions of the type the Plaintiffs allege, Plaintiffs' counsel who have brought similar suits against a large majority of Massachusetts' health care systems amended their suits to substitute ECPA claims for their original failed MWA claims. Almost all of those suits have now been removed to this Court. *See* Exhibit A listing known putative class actions in Massachusetts based on alleged use of advertising and analytics technologies on health care systems' websites.

and *Doe v. Genesis Health Sys.*, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025) ("dismissing ECPA claim because, by plaintiff's own account, the trackers were used by defendant to benefit its marketing and advertising purposes, not for the purpose of knowingly committing a violation of [HIPAA]")).

Judge Stearns dismissed the ECPA claim finding that plaintiffs failed to plausibly plead that the "non-profit hospital system, installed Meta Pixel and software-tracking technology with the 'primary motivation' of knowingly committing a violation of HIPAA or perpetrating a tort." *Id.* at *4. Judge Stearns also addressed in his ruling the requirement that to invoke the crime-tort exception the intended criminal or tortious purpose must be "independent" of the intentional act of recording or interception. *Id.* (citing *In re Google Inc. Cookie Placement Consumer Priv. Litig*, 806 F.3d 125, 145 (3d Cir. 2015)). Judge Stearns was "unconvinced that the Complaint sufficiently alleges an independent crime or tort beyond the alleged interception itself," and rejected the plaintiffs' argument that an alleged violation of HIPAA amounts to an act secondary to the acquisition of the "interception" because no data was "independently used in a crime or tort committed by CCHC." *Id.* at 4 n.3.

Judge Stearns' analysis is persuasive and equally applicable to Plaintiffs' allegations against UMass Memorial. Here, Plaintiffs have alleged no facts that UMass Memorial—a nonprofit health care system—had the purpose to utilize the Meta Pixel or Google Analytics on its public website to harm or injure Plaintiffs or any other user of its website. Rather, Plaintiffs allege that UMass Memorial's purpose in deploying the Meta Pixel or Google Analytics was to obtain marketing and analytics benefits—not to harm Plaintiff. *See, e.g.*, CAC ¶ 125. Plaintiffs contend that the use of the Meta Pixel and/or Google Analytics violated HIPAA and Plaintiffs' privacy rights, which UMass Memorial disputes. However, alleging that UMass Memorial's use

constituted a crime or tort, is not the same as alleging that UMass Memorial had an illegal or tortious purpose when it deployed Google Analytics on its public website. *See Cape Cod*, 2025 WL 1745732, at *3.

Moreover, analytics and marketing as a matter of law are not tortious or criminal purposes and are not sufficient to prove an intent to tortiously injure Plaintiffs or commit a crime. *TMC Health*, 2024 WL 4364150, at *5 (rejecting crime tort exception where complaint alleged health care entity used technology for website analytics and to increase profits through targeted advertising); *Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (finding the "apparent purpose" of hospital system collecting information via third party software was "for market research and consumer analysis solely for the benefit of [the hospital] in better reaching and serving its patients."); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 843 n.4 (N.D. Cal. 2024) (dismissing ECPA claim because Google's purpose in offering its advertising and analytics products "has plainly not been to perpetuate torts on millions of Internet users, but to make money") (collecting cases).

Plaintiffs' allegations that the interception and purported disclosure of data to Meta and Google occurs simultaneously, also makes the crime-tort exception inapplicable since to invoke the exception "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Cookie Placement*, 806 F.3d 125, 145 (3rd Cir. 2015) (emphasis in original, citation omitted); *see also Okash v. Essentia Health*, 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) (holding that because "neither the alleged HIPAA nor privacy violations were independent of the interception, the crime-tort exception does not

apply") and 2025 WL 642913, *3-4 (D. Minn. Feb. 27, 2025) (same); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095 (W.D. Wash. 2024) (crime-tort exception did not apply because "Plaintiff points to no legal authority providing that the exception to § 2551(2)(d) is triggered when, as here, the tortious conduct is the alleged wiretapping itself.").

To undersigned counsel's knowledge, the Third Circuit is the only federal appellate court that has so far analyzed the crime/tort exception in the specific context of alleged tracking of website browsing activity. It has twice rejected plaintiffs' ECPA claims in that context—holding firmly to the analysis outlined above, requiring a showing of contemporaneous intent to commit a ***separate*** crime or tort for the exception to apply. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275–76 (3d Cir. 2016) (affirming dismissal because (1) alleged interceptor—Google—became a "party" to communications and (2) the crime/tort exception to one-party consent applies only when "offender intercepted the communication for the purpose of a tortious or criminal act that is ***independent*** of the intentional act of recording.") (quoting *In re Google Cookie Placement Litig.*, 806 F.3d at 145 (both quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010), and adding emphasis)).

District Court rulings outside of this District have been less consistent. Several have appropriately followed and have joined the Third Circuit in rejecting plaintiffs' attempts to invoke the crime/tort exception where, as here, defendants are alleged to have used website technologies in the ordinary course for analytics and marketing purposes, even if those uses allegedly violated HIPAA or other laws.[4] Some other district courts have ruled differently, but

---

[4] *See, e.g., Doe v. Chestnut Health Sys., Inc.*, 2025 WL 1616635, at *12 (C.D. Ill. June 6, 2025) (dismissing ECPA claim on one-party consent basis "because the Plaintiffs have not pleaded facts sufficient to draw an inference that the Defendant acted with a tortious or criminal purpose, independent of the interception itself"); *Roberts v. Charlotte Mecklenburg Hosp. Auth.*, 2025 WL 880538, at *3 (W.D.N.C. Mar. 20, 2025) ("Plaintiffs have not plausibly alleged that Defendant's

their rulings have departed from the statutory text and uniform appellate interpretation described above and have improperly collapsed the purpose vs. means/manner distinction just as Plaintiffs try to do here.[5] Those decisions further fail to consider the canon that courts should avoid statutory interpretations that produce absurd results if an alternative interpretation "consistent with legislative purpose [is] available." *Analog Techs., Inc. v. Analog Devices, Inc.*, 105 F.4th 13, 19 (1st Cir. 2024) (citations omitted). Imposing ECPA liability where a defendant does not have the requisite purpose, or conflating purpose with the ultimate result, creates the absurd situation of obviating the crime-tort exception's intent requirement and making felons out of numerous not-for profit healthcare systems. *See also* Amicus Brief filed by the Chamber of Commerce in *Doe v. Lawrence General Hospital*, Case No. 1:25-cv-10081-NMG, U.S. District Court for District of Massachusetts, attached as Exhibit B. The canon against absurdity exists for cases like this one.

The rule of lenity also supports UMass Memorial's interpretation of the statute. The rule of lenity requires that a "grievous ambiguity in a penal statute [be] resolved in the defendant's

---

purpose for sharing IIHI was to breach HIPAA, and Plaintiffs' ECPA claim will be dismissed."); *Okash v. Essentia Health*, 2025 WL 642913, at *4 (D. Minn. Feb. 27, 2025) (same); *Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (dismissing ECPA claim with prejudice because "Plaintiff still fails to plead a tortious or criminal use of the acquired communications, separate from their recording, interception, or transmission"); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (hospital system's purpose was "solely for the benefit of [the hospital] in better reaching and serving its patients," not to commit a tort); *Rodriguez v. Fastmed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 364 (E.D.N.C. 2024) (dismissing ECPA claim because allegations that "[defendant] intercepted and disclosed [plaintiff's] information to Meta for commercial use or gain [] does not equate to [defendant] intercepting and disclosing [plaintiff's] information 'for the purpose of committing any criminal or tortious act'") (citation omitted); *Katz-Lacabe v. Oracle America, Inc.* 2024 WL 1471299, at *3, *5 (N.D. Cal. Apr. 3, 2024) ("The fact data collection or sales might at some later point be deemed tortious does not justify application of the crime-tort exception.").

[5] *See, e.g., A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024).

favor." *United States v. Councilman*, 418 F.3d 67, 83 (1st Cir. 2005). The rule of lenity also pertains to civil claims arising out of statutes with criminal applications. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."). Because ECPA carries both civil and criminal penalties, 18 U.S.C. § 2511(4)(a), should the Court determine that the clause "intercepted for the purpose of committing any criminal or tortious act" presents a grievous ambiguity, it should resolve that ambiguity in UMass Memorial's favor and conclude that there must be an intentional purpose at the time of interception to commit a crime or tort and the alleged interception must be separate from the criminal or tortious act.

This Court should follow the clear distinction uniformly drawn by the courts of appeals, and most recently by Judge Stearn, and find that the crime-tort exception is inapplicable under the alleged facts.

Plaintiffs' failure to plead that at the time it deployed the Meta and Google analytics technologies it did so for the purpose of committing a crime or tort that was independent from the alleged interceptions of Plaintiffs' communications requires Plaintiffs' ECPA claim to be dismissed.

**3. Plaintiffs Fail to Allege Any Plausible Interception of "Contents".**

Plaintiffs' ECPA claim further fails because Plaintiffs have not pled facts showing that the "contents" of any communications were disclosed to third parties—the third element of their claim. Under the ECPA, the "contents" of a communication are defined as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). Courts in assessing ECPA claims distinguish between substantive "content" of a communication and mere "record" information. *See In re Google Cookie Placement*, 806 F.3d at 135–39 (addressing the distinctions between content and routing/record information); *see also In re*

*Zynga Privacy Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014) (in the ECPA "the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication" such as a name, address, or the identity of a subscriber or customer).

The type of data Plaintiffs allege was transmitted when they used the public websites does not reflect the substantive content of any intended communication by Plaintiffs and shows mere record information such as pages viewed on a public website. *See* CAC ¶¶ 145, 149, 152, 155; *see Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023) ("Navigating through a website's multiple pages is not the substance of a communication; it's an action taken to go to a digital location … Any 'substance' that can flow from these movements must be inferred from the observer, and are therefore not communicative."); *see also Zynga*, 750 F.3d at 1107 (holding that URLs "function[] like an 'address,'" not "contents" of a communication).

**C. Plaintiffs Fails to State a Privacy Claim**.

Plaintiffs fail to plausibly allege violations of two Massachusetts privacy statutes: (1) a violation of G.L. c. 214, §1B and (2) a violation of G.L. c. 111, § 70 E.

**1. Plaintiffs Fail to Plead a Claim for Statutory Invasion of Privacy**.

G.L. c. 214, § 1B, provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." Whether based on intrusion upon seclusion or public disclosure of private facts, "a plaintiff must prove that there was 1) a gathering and dissemination of facts of a private nature that 2) resulted in an unreasonable, substantial or serious interference with his privacy." *Branyan v. Southwest. Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015). The disclosed facts must be "of a highly personal or intimate nature" and the invasion must be "both unreasonable and substantial or serious." *Id.* (citations omitted); *Wofse v. Horn*, 523 F. Supp. 3d 122, 137 (D. Mass. 2021) (citation omitted).

Here, the CAC is devoid of any factual allegations regarding what information of the Plaintiffs' was allegedly disclosed to Facebook or Google. Plaintiffs, instead, rely on generic allegations, such as they used the website "to search for medical information" or "obtain information about [their] doctors." CAC ¶¶ 28–33. Plaintiffs fail to identify *any* particular communications of theirs that they claim were disclosed, and therefore do not allege facts sufficient to plausibly allege above a speculative level that any facts of a "highly personal or intimate nature" were disclosed. *Twombly*, 550 U.S. at 545.[6]

Furthermore, mere public browsing data is not information that is "highly personal or intimate in nature." Allegations regarding analytics technologies collecting public website user data is so ubiquitous that Courts have found that "*a reasonable user should expect as much*." *See Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. Jul. 1, 2024) (emphasis in original); *B.K. v. Eisenhower Medical Center*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024) (dismissing privacy claims because disclosure of "routine medical searches and inquiries" was not "highly offensive"); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (explaining "data collection and disclosure to third parties is not a 'highly offensive' intrusion of privacy.") (collecting cases); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding disclosure of unique device identifier number, personal data, and geolocation information "does not constitute an egregious breach of social norms.") (citations

[6] Defendants acknowledge that some judges have ruled differently in parallel cases against other hospitals, but those cases are distinguishable on their facts since they made specific allegations about their browsing history and how it related to their own medical conditions. *See Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 151-52 (D. Mass. 2024); *Doe v. Boston Med. Ctr. Corp.*, No. 2384CV00326-BLS-1, 2023 WL 7105628, at *5 (Mass. Super. Ct. Sept. 14, 2023); *Doe v. Emerson Hosp.*, No. 2277CV01000, 2023 WL 8869624, at *5 (Mass. Super. Ct. Nov. 22, 2023); *Doe v. Partners Healthcare Sys., Inc.*, No. 1984CV01651-BLS1 (Mass. Super. Ct. Nov. 20, 2020) (motion to dismiss denied, in part, but no written opinion issued). Defendants further respectfully contend that that those decisions held plaintiffs to a lower standard than the body of SJC and Appeals Court caselaw on Privacy Act claims require.

omitted); *Koppel v. Moses*, 2020 WL 6292871, at *8–9 (D. Mass. Oct. 27, 2020) (dismissing invasion of privacy claim where plaintiff had "not alleged the disclosure of any private facts").

Plaintiffs fail to allege the disclosure of any highly personal or intimate private facts; therefore, their privacy claim should be dismissed.

### 2. Plaintiffs Fail to Plead a Claim for Invasion of Privacy Under G.L. c. 111, § 70E.

G.L. c. 111, § 70E is known as the Massachusetts "Patients' Bill of Rights." *Darviris v. Petros*, 442 Mass. 274, 275 (2004). It provides that every patient or resident of a Massachusetts health care facility shall have the right "to confidentiality of all records and communications to the extent provided by law." G.L. c. 111, § 70E(b). This cause of action fails for two reasons: (1) there is no private cause of action under the statute; and (2) the browsing history data involved in this case are not medical records protected under the statute.

First, the statute does not provide a private cause of action but instead requires all causes of actions under it to be brought as a medical malpractice claim. Massachusetts courts are "reluctant to infer a private cause of action from a statute in the absence of some indication from the Legislature supporting such an inference." *Loffredo v. Center for Addictive Behaviors*, 426 Mass. 541, 544 (1998). The Massachusetts legislature was clear that causes of action under the Patients' Bill of Rights be brought as medical malpractice claims. The statute provides that, "[a]ny person whose rights under this section are violated may bring, in addition to any other action allowed by law or regulation, a civil action under sections sixty B to sixty E, inclusive, of chapter two hundred and thirty-one." G.L. c. 111, § 70E. In turn, G.L. c. 231, §§ 60B–60E contain provisions regarding medical malpractice claims. This means that "any claim for violation of the Massachusetts Patients' Bill of Rights is to be brought as a medical malpractice claim." *See Xinrong Zhuang v. Benvie*, 2018 WL 10335959, at *5 (D. Mass. Feb. 9, 2018).

Because there is no private cause of action under the statute other than for medical malpractice claims, Plaintiffs' claim must be dismissed.

Second, the statute does not protect the public browsing history data at issue. G.L. c. 111, § 70E(b) provides that every patient or resident of a Massachusetts health care facility shall have the right "to confidentiality of all records and communications to the extent provided by law." Plaintiffs fail to allege that any of their communications with doctors were ever disclosed or that any of their medical records, the only kinds of records protected by the Act, were disclosed. The statute explains that confidentiality is afforded to "***records relating to diagnosis, treatment, or other services provided to any person*** …." G. L. c. 111, § 70E (emphasis added). Similarly, in the same chapter, a section regarding hospital record retention provides that hospitals "shall keep ***records of the treatment of the cases under their care including the medical history and nurses' notes***…." G. L. c. 111, § 70 (emphasis added). These provisions show that confidentiality is only afforded to medical records regarding a patient's actual diagnosis, treatment, or medical history, none of which are alleged to be disclosed in this case. *Chin v. Merriot*, 470 Mass. 527, 537 (2015) ("Where possible, we seek to harmonize the provisions of a statute with related provisions that are part of the same statutory scheme 'so as to give full effect to the expressed intent of the Legislature.'") (citation omitted); *Town of Canton v. Comm'r of Massachusetts Highway Dep't*, 455 Mass. 783, 791 (2010) ("We construe statutes that relate to the same subject matter as a harmonious whole and avoid absurd results.") (citations omitted).

Courts have similarly understood the term "records" to refer specifically to medical records that are not at issue here. *See R. M. W. by Wolfe v. Homewood Suites by Hilton Mt. Laurel*, 2012 WL 13186031, at *11 (D.N.J. Jun. 28, 2012) ("Massachusetts does *not* recognize a physician-patient privilege … but does hold that ***medical records*** are confidential.") (emphasis

added, citations omitted); *Alberts v. Devine*, 395 Mass. 59, 67 (1985) ("In Massachusetts, the Legislature has demonstrated its recognition of a policy favoring confidentiality of ***medical facts*** by enacting G.L. c. 111, §§ 70 and 70E, to limit the availability of hospital records.") (emphasis added).

Plaintiffs do not plausibly allege that any of their medical records were disclosed in this case. Therefore, Plaintiffs' claim for a violation of G.L. c. 111, § 70E should be dismissed.

### D. Plaintiffs' Negligence Claim Fails for Lack of Duty, Breach, and Damages.

For their negligence claim Plaintiffs must plausibly allege facts establishing: "(1) a legal duty owed by defendant[s] to plaintiff[s]; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury." *Nelson v. Massachusetts Port Auth.*, 55 Mass. App. Ct. 433, 435 (2002) (citation omitted).

#### 1. Plaintiffs' Negligence Claim Fails for Lack of Duty, Breach, and Damages.

The purported source of UMass Memorial's alleged duty to protect Plaintiffs' browsing data on a public website is unclear. To the extent Plaintiffs allege that UMass Memorial's duty originates from statute, whether it be created by HIPAA, Massachusetts privacy statutes, or any other statute, Plaintiffs' claim must be dismissed because Massachusetts does not recognize negligence per se causes of action. *See Roe No. 1 v. Children's Hosp. Med. Ctr.*, 469 Mass. 710, 719 (2014) ("As an initial matter, and as the judge correctly noted, the mere existence of a statute or regulation does not automatically give rise to a legal duty for the purpose of a negligence action.") (citation omitted); *see also Juliano v. Simpson*, 461 Mass. 527, 532 (2012).

To the extent Plaintiffs allege that UMass Memorial's duty originates from a fiduciary duty owed by UMass Memorial, Plaintiffs' negligence claim is duplicative of their fiduciary duty claim and should be dismissed. *See Clark v. Rowe*, 428 Mass. 339, 345 (1998) (dismissing

breach of fiduciary duty claim as duplicative of a malpractice claim); *Jordan's Furniture, Inc. v. Carter & Burgess, Inc.*, 92 Mass. App. Ct. 1102 at *3 (2017) (finding no error in trial judge dismissing contract claims as duplicative of negligence claim because they were all "based on the same core facts."); *Renzulli v. Sullivan*, 2024 WL 1903573, at *10 (Mass. Land Ct. Apr. 26, 2024) (instructing plaintiff not to plead a negligence counterclaim because it was "duplicative of the breach of fiduciary duty claim[.]").

Moreover, Plaintiffs do not plausibly allege the breach of any duty. Plaintiffs allege the breached duty at issue is a duty "to exercise reasonable care in safeguarding and protecting Plaintiffs and Class Members' Private Information from unauthorized disclosure." *See* CAC ¶ 387. PHI and IIHI are terms of art defined by HIPAA, and as explained *infra* in § III.A, the public browsing data at issue is not protected information. *See TMC Health*, 2024 WL 4364150, at *7 (dismissing negligence claim because health care entity owed no duty to protect the browsing history of website visitors from being shared; holding that to interpret otherwise "would stretch HIPAA and federal guidance implementing HIPAA to an extent completely divorced from the text."); *see Legacy Health*, 2024 WL 4794657 (dismissing plaintiff's negligence claim regarding the public website, under Oregon law, finding that the plaintiff only sufficiently pled that defendant owed plaintiff a duty with regards to her PHI, which did not include the public website browsing activity at issue).

**2. Plaintiffs Fail to Plead Cognizable Damages**.

Plaintiffs' negligence claim also fails because they fail to plead that they suffered any actual compensable loss. *See Donovan v. Philip Morris USA, Inc.*, 455 Mass. 215, 222 (2009) ("[T]here can be no invasion of the rights of another unless legal damage is caused, and for that reason nominal damages cannot be recovered."); *Portier v. NEO Tech. Sols.*, 2019 WL 7946103, at *15 (D. Mass. Dec. 31, 2019), *report and recommendation adopted*, 2020 WL 877035 (D.

Mass. Jan. 30, 2020); *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 81 (1st Cir. 2013) ("When allegations, though disguised as factual, are so threadbare that they omit any meaningful factual content, we will treat them as what they are: naked conclusions.") (citations omitted). Plaintiffs' claimed losses are purely conjectural and conclusory. Indeed, in assessing similar allegations many courts have found that plaintiffs have no actionable damages for browsing history information that may be transmitted when searching a health care entity's public website or clicking a button to log in to a patient portal. *See T.D. v. Piedmont HealthCare, Inc.*, 2024 WL 3972984, at *3–4 (N.D. Ga. Aug. 28, 2024) ("This is not a case where Plaintiff's personal information was stolen by criminal hackers with malicious intent… The better view from other courts around the country is that these types of damage claims are not actionable."); *Doe v. Upperline Health, Inc.*, 2024 WL 4953503, at *3 (S.D. Ind. Sept. 24, 2024) (searches on public website are not PHI and "Plaintiff does not explain how clicking on a 'patient portal' in the navigation bar involves the use of Private Information.");

Relatedly, "the economic loss doctrine bars recovery unless the plaintiffs can establish that the injuries they suffered due to the defendants' negligence involved physical harm or property damage, and not solely economic loss." *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 469 (2009); *accord, e.g.*, *Stop & Shop Cos. v. Fisher*, 387 Mass. 889, 893-94 (1983) (negligence claim for "purely economic harm" from bridge closure barred). Courts routinely dismiss negligence claims, like this one, that allege no personal injury or property damage. *See, e.g.*, *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 498–99 (1st Cir. 2009); *Zoll Med. Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101, 106–07 (D. Mass. 2021); *Cumis Ins. Soc'y, Inc.*, 455 Mass. at 469–70.

Courts have also rejected loss of diminution of value of personal information damages

theories where, like here, the plaintiff fails to allege "the existence of a market for the personal information and an impairment of the ability to participate in that market." *Gardiner v. Walmart, Inc.*, 2021 WL 4992539, at *3 (N.D. Cal. Jul. 28, 2021).

### E. Plaintiffs Fail to Allege Mutual Assent and Consideration Necessary for Their Implied Contract Claim.

Under Massachusetts law, breach of contract and breach of implied contract claims largely have the same elements. *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005). A valid contract requires offer, acceptance, and consideration. *Josef Gartner USA LP v. Consigli Const. Co., Inc.*, 2011 WL 2417137, at *4 (D. Mass. Jun. 10, 2011) (citations omitted). If the parties do not agree on the essential elements of the contract, there can be no contract. *Id.* (affirming dismissal of implied contract claim for a "failure to reach agreement on the basic terms of the contract").

Plaintiffs allege they were required to disclose their PHI to UMass Memorial "as part of the physician-patient relationship," and as a result Plaintiffs and UMass Memorial had an implied contract for the protection of said information. *See* CAC ¶¶ 312. As explained *supra* § III.A, the information at issue is not protected by HIPAA, not shared within the context of the provision of medical care, and is merely browsing information. There is no requirement that anyone use UMass Memorial's public website as a condition of receiving healthcare services.

Plaintiffs fail to plead any facts showing that UMass Memorial assented to the protection of Plaintiffs' public website browsing data. Contract formation "requires a bargain in which there is manifestation of mutual assent to the exchange." *Vacca v. Bringham & Women's Hosp., Inc.*, 98 Mass. App. Ct. 463, 467 (2020) (internal citations and quotations omitted). There is a lack of mutual assent where the parties do not discuss the need to safeguard information. *See Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 104 (D. Mass. 2024) (dismissing breach of implied

contract claim where no allegations that parties "discussed the manner of safeguarding the PII or PHI or that plaintiff had a particular concern about disclosing that information."). Plaintiffs do not allege that UMass Memorial agreed to protect Plaintiffs' public browsing data, and mere belief by the Plaintiffs is insufficient as a matter of law to create a binding contract. *See Webb v. Injured Workers Pharmacy, LLC*, 2023 WL 5938606, at *3 (D. Mass. Sept. 12, 2023) (finding plaintiff's good faith belief that their PII would be protected as insufficient because there was "no allegation that [Defendant] agreed—explicitly or implicitly—to provide such protection."). As such, Plaintiffs fail to plead facts sufficient to show assent by UMass Memorial to protect their public browsing data.

Plaintiffs also fail to plead the existence of any consideration. Moreover, although Defendant disputes that the information at issue contains PHI/IIHI, a purported promise for UMass Memorial to protect PHI/IIHI is not valid consideration given that it is a pre-existing legal obligation under HIPAA. *See Gravallese v. Massachusetts Parole Bd.*, 1995 WL 808813, at *2 (Mass. Super. Apr. 19, 1995) (a promise to perform a pre-existing duty is not valid consideration).

### F. Plaintiffs Fail to Plead a Fiduciary Relationship Between UMass Memorial and Plaintiffs Regarding Their Public Website Browsing Data.

Plaintiffs fail to plausibly allege the existence of a fiduciary relationship between themselves and UMass Memorial regarding their browsing the public website. The elements of a breach of fiduciary duty claim include: (1) existence of a fiduciary duty based upon the relationship of the parties; (2) breach of the fiduciary duty; (3) damages; and (4) a causal connection between breach of fiduciary duty and damages. *Cape Cod ASC, LLC v. Bentivegna*, 2010 WL 3038824, at *3 (Mass. Super. Jul. 1, 2010) (citation omitted). However, fiduciary relationships have boundaries. The central tenet of a fiduciary relationship is the "duty on the

part of the fiduciary to act for the benefit of the other party to the relation as to matters ***within the scope of the relation***." 1 A.W. Scott & W.F. Fratcher, TRUSTS § 2.4 (4th ed. 1987) (emphasis added); *see* RESTATEMENT (SECOND) OF TRUSTS § 2 comment b (1959) (same).

Plaintiffs allege that a fiduciary relationship exists between them and UMass Memorial because UMass Memorial is a "medical provider." *See* CAC ¶ 311. Accepting that allegation as true, Massachusetts courts have recognized limits to such fiduciary relationships. Fiduciaries are only held to a higher standard "as to matters within the scope of the fiduciary relationship," and even in a physician-patient relationship, "the scope of the fiduciary duty is defined by the incidents and undertakings of the defendant ***as a physician***." *Korper v. Weinstein*, 57 Mass. App. Ct. 433, 437–38 (2003) (emphasis added).

The context of the Plaintiffs' relationship with UMass Memorial when they used the public websites is outside the scope of the alleged physician/patient fiduciary relationship. *See supra* §III.A; *see also Kelley v. CVS Pharmacy, Inc.*, 2007 WL 2781163, at *6 (Mass. Super. Aug. 24, 2007) (finding that alleged disclosure of data such as names, addresses, dates of birth and the mere fact that a patient has been prescribed medication is not "so private, standing alone, as to constitute a breach of a . . . duty of confidentiality" to a healthcare customer). Both patients and non-patients alike may browse the public website. As such, it would be inconsistent to afford higher fiduciary duty protections to some visitors to the public website—namely patients—and not other members of the public when UMass Memorial does not know who any of the browsers to its public website are nor the context for their visit to the website. Plaintiffs' allegations fall outside the scope of any alleged patient/physician relationship, and Plaintiffs failed to plausibly allege the breach of a fiduciary relationship between them and UMass Memorial.

### G. Plaintiffs' Unjust Enrichment Fails For Lack Of Reasonable Expectation Of Compensation.

Under Massachusetts law, a claim for unjust enrichment includes the following elements: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under circumstances which make such acceptance or retention inequitable." *Sweeney v. DeLuca*, 2006 WL 936688, at *8 (Mass. Super. Mar. 16, 2006) (citation omitted). The fact that the Defendant received any benefit is not enough, the benefit received must be *unjust* which "turns on the reasonable expectations of the parties." *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013) (citations omitted). "Usually, this means that the parties were dealing with each other in such a way, or in such circumstances, that reasonable people would expect payment by the defendant to the plaintiff for some benefit conferred by the plaintiff on the defendant." *Brookridge Funding Corp. v. Aquamarine, Inc.*, 675 F. Supp. 2d 227, 234–35 (D. Mass. 2009).

Plaintiffs' unjust enrichment claim fails because they fail to allege that the reasonable expectation of the parties was for UMass Memorial to compensate Plaintiffs for the collection of their public browsing data. Plaintiffs makes no factual allegations that, at the time they were browsing the free UMass Memorial websites, they expected to receive payment from UMass Memorial for their public browsing data. Nor would there be any reasonable expectation that browsing UMass Memorial's free websites would somehow result in compensation for the browser. Similar allegations and theories levied against other healthcare providers have been rejected by other courts at the motion to dismiss stage. *See e.g., Allen v. Novant Health, Inc.*, 2023 WL 5486240, at *1, *3 (M.D.N.C. Aug. 24, 2023); *In re Nickelodeon Consumer Priv. Lit.*, 2014 WL 3012873, at *19 (D.N.J. Jul. 2, 2014) (dismissing unjust enrichment claim alleging unauthorized collection of information about plaintiff's browsing activities because there were

no allegations that Plaintiff should have expected renumeration); *Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438, 451 (D. Mass. 2012) (dismissing unjust enrichment claim because plaintiff did not allege that a reasonable person would expect payment for PII); *ARK Nat'l Holdings LLC v. We Campaign LLC*, 2021 WL 5918682, at *5 n.2 (D. Mass. Dec. 15, 2021) (same). Plaintiffs' unjust enrichment claim should similarly be dismissed for failure to state a viable claim.

## CONCLUSION

For the foregoing reasons, UMass Memorial respectfully asks the Court to dismiss the Consolidated Amended Complaint with prejudice.

Dated: July 16, 2025

Respectfully submitted,

*/s/ Elizabeth A. Scully*

Elizabeth A. Scully (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W., Suite 1100
Washington, DC 20036-5304
escully@bakerlaw.com
T: (202) 861-1500

James H. Rollinson (BBO #649407)
BAKER & HOSTETLER LLP
127 Public Street, Suite 2000
Cleveland, OH 44116
jrollinson@bakerlaw.com

Paul G. Karlsgodt (*pro hac vice* to be filed)
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202-2662
pkarlsgodt@bakerlaw.com

Stephen T. Paterniti (BBO #564860)
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, MA 02116
Stephen.Paterniti@jacksonlewis.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 16, 2025, a copy of the foregoing was served via CM/ECF which will serve the Plaintiffs' counsels of record.

*/s/ Elizabeth A. Scully*
Elizabeth A. Scully (admitted *pro hac vice*)
BAKER & HOSTETLER LLP

*Attorney for Defendants*