**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANICE PROGIN,<br><br>For herself and the Class,<br><br>v.<br><br>UMASS MEMORIAL HEALTH CARE, INC., UMASS MEMORIAL COMMUNITY ENTITIES, INC., UMASS MEMORIAL MEDICAL CENTER, INC., UMASS MEMORIAL HEALTHALLIANCE-CLINTON HOSPITAL, INC., MARLBOROUGH HOSPITAL, and HARRINGTON MEMORIAL HOSPITAL, INC.,<br><br>Defendants. | **Case No. 1:25-cv-40003-ADB** |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**


J. Tucker Merrigan (BBO# 681627)
**Sweeney Merrigan Law**
268 Summer St. LL
Boston, MA 02210
Tel: (617) 391-9001
Fax: (617) 357-9001
tucker@sweeneymerrigan.com

*Counsel for John Doe and the Putative Classes*

Patrick J. Vallely (BBO #663866)
**Shapiro Haber & Urmy LLP**
One Boston Place
Suite 2600
Boston, MA 02108
Tel: (617) 439-3939
Fax: (617) 439-0134
pvallely@shulaw.com

*Counsel for Janice Progin and the Putative Classes*

William P. Doyle (BBO# 556999)
**Law Offices of Colonna & Doyle**
26 Main Street
Lynnfield, MA 01940
Tel: (781) 245-1127
Fax: (781) 245-1148
bill@colonna-doyle.com

*Counsel for Lisa Colleton and the Putative Classes*

***Additional Counsel Listed in Signature Block***

**Table of Contents**

I. Introduction ........ 1

II. The Facts. ........ 2

A. UMass Memorial Injected Hidden Tracking Technologies into Its Website that Intercepted Patient Communications. ........ 2

B. UMass Memorial Intercepted Communications Without Disclosure or Consent. ........ 4

C. Plaintiffs' Communications Intercepted on the UMass Memorial Website. ........ 5

III. Argument ........ 6

A. Even Though Not Required for Any Claim, Plaintiffs Allege UMass Memorial Violated HIPAA. ........ 6

B. Plaintiffs State a Claim for Violation of the ECPA. ........ 9

1. Plaintiffs Adequately Allege the Crime-Tort Exception to One-Party Consent. ........ 9

a. The Court Should Not Impose a Heightened Intent Requirement. ........ 10

b. UMass Memorial's Financial Motives Do Not Excuse It from Liability. ........ 11

c. Plaintiffs Allege Crimes and Torts Independent of the ECPA Violations. ........ 12

d. Canons of Construction Cannot Override the ECPA's Plain Terms. ........ 14

2. Plaintiffs Allege Interception of the Contents of Communications ........ 15

C. Plaintiffs State a Claim under the MRPA. ........ 16

D. Plaintiffs State a Claim under the Massachusetts Patients' Bill of Rights. ........ 19

E. Plaintiffs State a Claim for Breach of Fiduciary Duty/Duty of Confidentiality. ........ 20

F. Plaintiffs State a Claim for Negligence. ........ 21

G. Plaintiffs State a Claim for Breach of Contract. ........ 24

H. Plaintiffs State a Claim for Unjust Enrichment. ........ 25

IV. Conclusion ........ 25

# **Table of Authorities**

Pages

## **Cases**

*A.J. v. LMND Med. Grp., Inc.*,
2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ........ 11, 21, 25

*Alberts v. Devine*,
395 Mass. 59 (1985) ........ 20

*Alves v. BJ's Wholesale Club, Inc.*,
2023 Mass. Super. LEXIS 59 (Super. Ct. June 21, 2023) ........ 17

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ........ 7, 8

*Angiuoni v. Town of Billerica*,
No. CV 11-11661-NMG, 2012 WL 12910268 (D. Mass. July 16, 2012) ........ 3

*Bennett v. Eagle Brook County Store, Inc.*,
408 Mass. 355 (1990) ........ 22

*Brahm v. Hosp. Sisters Health Sys.*,
2024 U.S. Dist. LEXIS 114827 (W.D. Wis. June 28, 2024) ........ 11, 18

*Branyan v. Sw. Airlines Co.*,,
105 F. Supp. 3d 120126 (D. Mass. 2015) ........ 16

*Bratt v. Int'l Bus. Machines Corp.*,
392 Mass. 508 (1984) ........ 17

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 19

*Clark v. Rowe*,
428 Mass. 339 (1998) ........ 22

*Cooper v. Mt. Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) ........ 12

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........ 7

*Darviris v. Petros*,
442 Mass. 274 (2004) ........ 19

*Doe v. Bayhealth Med. Ctr. Inc.*,
2025 Del. Super. LEXIS 154 (Super. Ct. Apr. 2, 2025) ....................9

*Doe v. Bos. Med. Ctr. Corp.*,
2023 Mass. Super. LEXIS 674 (Super. Ct. Sep. 14, 2023) .................... 17, 18

*Doe v. Emerson Hosp.*,
2023 Mass. Super. LEXIS 673 (Super. Ct. Nov. 22, 2023)....................passim

*Doe v. GoodRx Holdings, Inc.*,
2025 U.S. Dist. LEXIS 140287 (N.D. Cal. July 22, 2025) ....................3

*Doe v. Medstar Health, Inc.*,
2020 Md. Cir. Ct. LEXIS 139 (Cir. Ct. Aug. 5, 2020) ....................19

*Doe v. Partners Healthcare*,
No. 1984CV01651-BLS1 (Mass. Super. Ct.).................... 6, 17, 21

*Doe v. Post Acute Med., LLC*,
2025 U.S. Dist. LEXIS 26667 (M.D. Pa. Feb. 14, 2025) ....................16

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024).................... 17, 21, 24, 25

*Dunbar v. Google, Inc.*,
2011 U.S. Dist. LEXIS 157932 (E.D. Tex. May 23, 2011) ....................15

*Gaige v. Exer Holdings Co., LLC*,
2025 U.S. Dist. LEXIS 17146 (C.D. Cal. Jan. 30, 2025) ....................8

*Goodridge v. Dep't of Pub. Health*,
440 Mass. 309 (2003)....................20

*Harris v. comScore, Inc.*,
292 F.R.D. 579 (N.D. Ill. 2013)....................15

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ....................19

*In re Google Inc. St. View Elec. Communs. Litig.*,
794 F. Supp. 2d 1067 (N.D. Cal. 2011) ....................15

*In re Google, Inc.*,
806 F.3d 125 (3d Cir. 2015)....................13, 16, 19

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....................passim

*In re Meta Pixel Healthcare Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024)....................23

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024).................... 18, 23

*In re Nickelodeon Consumer Privacy Litigation*,
827 F.3d 262 (3d Cir. 2016)....................13

*In re Pharmatrak, Inc. Privacy Litig.*,
329 F.3d 9 (1st Cir. 2003) .................... 1, 15

*In re State Police Litig.*,
88 F.3d 111 (2d Cir. 1996)....................15

*Jarrell v. Adena Health Sys.*,
2025 U.S. Dist. LEXIS 6169 (S.D. Ohio Jan. 13, 2015) ....................13

*Joffe v. Google, Inc.*,
746 F.3d 920 (9th Cir. 2013) ....................15

*Jordan's Furniture, Inc. v. Carter & Burgess, Inc.,*
92 Mass. App. Ct. 1102 (App. Ct. 2017) ....................22

*Juliano v. Simpson,*
461 Mass. 527 (2012)....................22

*K.L. v. Legacy Health*,
2024 U.S. Dist. LEXIS 206864 (D. Or. Nov. 14, 2024) ....................7

*Kane v. Univ. of Rochester,*
2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024)....................7

*Kurowski v. Rush Sys. for Health*,
2023 U.S. Dist. LEXIS 219895 (N.D. Ill. Dec. 11, 2023)....................18

*Kurowski v. Rush Sys. for Health*,
2024 U.S. Dist. LEXIS 126837 (N.D. Ill. July 18, 2024) ....................passim

*Lamarr v. Goshen Health Sys., Inc.*,
2024 Ind. Super. LEXIS 107 (Super. Ct. Oct. 3, 2024).................... 18, 23

*Langadinos v. American Airlines, Inc.*,
199 F.3d 68 (1st Cir. 2000) ....................3

*Lee v. Conagra Brands, Inc.,*
958 F.3d 70 (1st Cir. 2020) ....................23

*Li v. Off. of Transcription Servs.*,
2016 Mass. App. Unpub. LEXIS 1079 (App. Ct. Nov. 8, 2016) ........ 21

*Lugo v. Inova Health Care Servs.*,
2025 U.S. Dist. LEXIS 55590 (E.D. Va. Mar. 25, 2025) ........ 12

*M.G. v. Therapymatch*,
2024 U.S. Dist. LEXIS 166534 (N.D. Cal. Sept. 16, 2024) ........ 16

*M.R. v. Salem Health Hosps. & Clinics*,
2024 U.S. Dist. LEXIS 155513 (D. Or. Aug. 28, 2024) ........ 7

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) ........ 12

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2024 U.S. Dist. LEXIS 177625 (E.D. Pa. Sep. 30, 2024) ........ 13

*Nienaber v. Oberlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ........ 7

*Polay v. McMahon*,
468 Mass. 379 (2014) ........ 17

*Portier v. NEO Tech. Sols.*,
2019 U.S. Dist. LEXIS 227494 (D. Mass. Dec. 31, 2019) ........ 24

*R.S. v. Prime Healthcare Servs.*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025) ........ 11, 13

*Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
409 Mass. 514 (1991) ........ 16

*Shedd v. Sturdy Mem. Hosp.*,
2022 Mass. Super. LEXIS 7 (Super. Ct. Apr. 5, 2022) ........ 24

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 94 (N.D. Cal. 2017) ........ 7

*Specht v. Netscape Communs. Corp.,*
306 F.3d 17 (2d Cir. 2002) ........ 15

*Stein v. Edward-Elmhurst Health,*
2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025) ........ 11

*T.S. v. Body Contour Ctrs., LLC*,
2025 U.S. Dist. LEXIS 128429 (W.D. Wash. July 7, 2025) ........ 18

*Tower v. Hitschhorn*,
397 Mass. 581 (1986) ........................................ 17

*Wayne Inv., Inc. v. Gulf Oil Corp.*,
739 F.2d 11 (1st Cir. 1984) ........................................ 3

*Weekes v. Choen Cleary P.C.*,
723 F. Supp. 3d 97 (D. Mass. 2024) ........................................ 21, 25

*Yoon v. Meta Platforms, Inc.*,
2024 U.S. Dist. LEXIS 234457 (N.D. Cal. Dec. 30, 2024) ........................................ 16

**<u>Statutes</u>**

18 U.S.C. § 2510 ........................................ 15

18 U.S.C. § 2511 ........................................ 9, 10

M. G.L. c. 111, § 70E ........................................ 19

M.G.L. c. 214 § 1B ........................................ 16

MPC § 2.02 ........................................ 11

**<u>Other Authorities</u>**

S. Rep. No. 90-1097, 90th Cong., 2d Sess. at 12 (1968) ........................................ 13

# I. INTRODUCTION

Plaintiffs John Doe, Lisa Colleton, and Janice Progin's ("Plaintiffs"") claims against Defendants[1] (collectively, "UMass Memorial") are not novel. They align with First Circuit precedent established twenty years ago, affirming federal wiretap claims for the surreptitious use of tracking technologies on medical websites. *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 13-16 (1st Cir. 2003). They also align with more recent decisions applying Massachusetts law to directly analogous claims. *E.g.*, *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142 (D. Mass. 2024). UMass Memorial's arguments for dismissal each lacks merit.

***First***, none of Plaintiffs' claims require as an element that UMass Memorial violated HIPAA, let alone a specific portion of regulatory guidance regarding HIPAA. Accordingly, a federal court decision regarding that guidance does not preclude any of their claims. In any event, Plaintiffs adequately allege a HIPAA violation; UMass Memorial's contrary arguments ignore Plaintiffs' well-pled allegations.

***Second***, Plaintiffs adequately allege a claim under the federal Electronic Communications Privacy Act ("ECPA"). UMass Memorial's status as a party to the communications it intercepted provides it no defense under the ECPA's one-party consent defense, as Plaintiffs allege UMass Memorial redirected the communications for the purpose of disclosing confidential communications to third parties without the consent of patients—an act that violates both federal criminal law (HIPAA) and state tort law. Plaintiffs also adequately allege interception of the contents of communications, including disclosure of patient status and descriptive URLs that revealed the substance of intercepted communications.

***Third***, Plaintiffs adequately allege each Massachusetts claim they assert. UMass Memorial's scattershot challenges to various elements of those claims lack merit.

If Defendants secretly printed out copies of private communications between them and their own patients, including Plaintiffs, that disclosed those patients' status as patients, treating physicians, medical conditions, and bill payment status, and mailed those printed copies to Google and Facebook, there would be no dispute that UMass Memorial violated HIPAA, other state and federal privacy laws, and the

---

[1] UMass Memorial Health Care, Inc. UMass Memorial Community Entities, Inc., UMass Memorial Medical Center, Inc., UMass Memorial HealthAllianceClinton Hospital, Inc., Marlborough Hospital, and Harrington Memorial Hospital, Inc.

hospital's common law duties. Yet UMass Memorial contends the same conduct raises no concern when done digitally through hidden tracking code injected into its websites. This defies both common sense and Massachusetts and federal law.

For the reasons detailed below, the Court should deny the motion to dismiss.

## II. THE FACTS.

### A. *UMass Memorial Injected Hidden Tracking Technologies into Its Website that Intercepted Patient Communications.*

UMass Memorial injected hidden code throughout its website that redirected patient communications to Google and Facebook. ¶¶ 37-68, 113-40.[2] This code was found in pages used by patients, including (i) the login button to and pages within its patient portal; (ii) pages used to make appointments; (iii) pages used to select doctors; and (iv) pages used to pay bills. ¶ 34. The code revealed to third parties such as Google and Facebook the substance of the communications made through each webpage a patient visited, all without informing the patient. *Id.* After it was sued, UMass Memorial reduced its use of tracking technologies on its website. ¶ 212.

Although UMass Memorial repeatedly emphasizes in its brief that much of its website is "public," UMass Memorial also used tracking technologies on its patient portal. ¶ 35. This includes both the login page for the patient portal, and after the patient has logged in to the patient portal itself. ¶ 34 (login button); ¶ 35 (patient portal). UMass Memorial challenges Plaintiffs' allegations regarding tracking within the patient portal (*i.e.*, on the part of the portal accessed *after* logging in) as improperly based on information and belief, but Plaintiffs' allegations are proper. UMass Memorial engaged in a pattern of installing tracking code throughout pages of its website used by patients, including the pages used to make appointments, select doctors, pay bills, and log in to the patient portal itself. ¶ 34. Engaging in this practice, UMass Memorial exhibited disregard for patient consent and reasonable expectations of privacy. ¶¶ 36-37. There was no technological impediment for the installation of tracking code in the patient portal itself. ¶¶ 64-66. And UMass Memorial had a non-exclusive financial incentive to continue to violate

[2] "¶ __" refers to paragraphs of the Consolidated Amended Class Action Complaint, Doc. No. 20.

patient rights by installation inside the patient portal. ¶¶ 236, 371.[3]

In addition to Plaintiffs' allegations regarding Defendants' use of tracking technologies inside the patient portal, Plaintiffs **also** allege (with concrete direct evidence) that UMass Memorial deployed hidden tracking technologies on many pages that although publicly accessible, are designed specifically for patients, including the pages used to navigate to and login on the patient portal (¶¶ 158-62), to find doctors for treatment (¶¶ 149-52), to request appointments (¶¶ 154-55), and to pay bills (¶¶ 156-57), among others. By deploying tracking technologies on pages designed for patients, UMass Memorial disclosed Plaintiffs' status as UMass Memorial patients to Google, Facebook, and other third parties. *See* § III-A, *infra* (disclosure of patient status relevant to HIPAA violation); § III-B-2, *infra* (also relevant to content element under ECPA); § III-D (fiduciary duty claim).

UMass Memorial also configured the tracking technologies to intercept and disclose to Google and Facebook the substance of communications between UMass Memorial and its patients through the disclosure of URLs, titles of webpages, and text patients inputted on the website. URLs serve as addresses for webpages but sometimes also reveal information about the substance of the communication—such URLs are called descriptive URLs. UMass Memorial configured its website to use descriptive URLs. ¶¶ 171, 173, 176-77. For example, URLs for a particular doctor contain within them the name of the doctor, the types of conditions the doctor treats, and the doctor's location; therefore, when patients sought information on particular doctors, the tracking technologies disclosed the doctors and potential treatments to third-party marketers. *See, e.g.*, ¶ 176 ("https://**physicians**.**umassmemorial**.org/details/5019/**edward-appelbaum-orthopedics**-**southbridge**") (emphasis added). The tracking technologies

[3] Plaintiffs' allegations thus go above and beyond the notice and plausibility standard required in this case and clear the heightened pleading standard that UMass Memorial mistakenly cites (and that does not apply here). *Compare* MTD 2 (citing *Wayne Inv., Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13-14 (1st Cir. 1984) (requiring pleadings on fraud claims to "set forth the facts on which the belief [of fraud] is founded")), *with Angiuoni v. Town of Billerica*, No. CV 11-11661-NMG, 2012 WL 12910268, at *6 (D. Mass. July 16, 2012), *report and recommendation adopted sub nom. Angiuoni v. Billerica, Town of*, No. CV 11-11661-NMG, 2012 WL 12950635 (D. Mass. Sept. 27, 2012) ("'information and belief' allegations in the complaint [were permissible] so long as [there was] a good faith basis for doing so, particularly when the facts are the kind that are peculiarly within the possession and control of defendant [] or where the belief is based on factual information that makes the inference of culpability plausible") (citing *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 73 (1st Cir. 2000)). *See also Doe v. GoodRx Holdings, Inc.*, 2025 U.S. Dist. LEXIS 140287, at *19-20 (N.D. Cal. July 22, 2025) (holding defendant "cannot demand that Plaintiffs allege the details about these tools, which only Defendants would possess, to survive a motion to dismiss").

also disclosed to Google and Facebook the precise search terms patients inputted to obtain information from UMass Memorial. ¶ 167.

The tracking technologies are designed to enable Google and Facebook to associate the intercepted communications with the real-world identities of individuals known to those third parties to permit individualized advertising to those individuals (advertising not just for UMass Memorial but also for other businesses that buy advertising from Google and Facebook). ¶¶ 39, 101. The information Google and Facebook used to identify individuals included IP addresses, ¶¶ 34, 63, 70-71; cookies, ¶¶ 72-93; browser fingerprints (unique combinations of browser and computer settings that confirm the identity of an individual), ¶¶ 34, 94-98; and persistent personal identifiers (identification numbers) assigned by Google or Facebook used to track a particular individual across the UMass Memorial website and other websites. ¶¶ 99-100. Google and Facebook used each of these identifiers individually and in combination to confirm the identity of individuals whose communications were intercepted. ¶¶ 101, 135-39.

B. *UMass Memorial Intercepted Communications Without Disclosure or Consent.*

By design, the tracking technologies at issue are invisible to patients, implemented through hidden code injected by the website owner (here, UMass Memorial) that is not depicted visually in any part of the website observable to the website user. ¶¶ 47, 53, 55, 58-59, 68, 118, 123.

UMass Memorial did not disclose to patients the use of any technology that permitted third parties such as Google or Facebook to eavesdrop on their communications; in fact, UMass Memorial promised the exact opposite. In a "Privacy Practices" disclosure located inside a link labeled "Terms of Use" concealed at the bottom of the UMass Memorial webpage (¶ 196), it promised patients it had "designed [its] website to allow [patients] to visit most areas without identifying [themselves] or providing personal information." ¶ 198. This was not true. In fact, UMass Memorial configured the hidden tracking technologies to identify users in order to serve individualized advertising to them. *Id.* UMass Memorial also promised that it would "not disclose your information to third parties except" in particular circumstances, which did **not** include sharing website communications with third-party technology and

marketing companies. ¶ 199. This promise, too, was false. *Id.* Finally, UMass Memorial describes limited marketing communications that UMass Memorial may make to patients but promises that "[o]nly UMass Memorial (or those working on behalf of UMass Memorial) will send you information." ¶ 200. This likewise was false, as Google and Facebook did not simply act on UMass Memorial's behalf but were free to use the intercepted communications for individualized advertising sold to any advertisers. *Id.*

C. *Plaintiffs' Communications Intercepted on the UMass Memorial Website.*

Plaintiffs each reside in Massachusetts and are UMass Memorial patients. ¶¶ 28, 30, 32. Plaintiffs regularly used the UMass Memorial Website to obtain information about doctors, search for information on specific medical conditions and procedures, review medical records, schedule appointments, and pay bills. ¶¶ 28-33. Each Plaintiff used the UMass Memorial patient portal during the class period. *Id.* UMass Memorial used tracking technologies on all pages Plaintiffs visited. ¶ 35 (trackers used within patient portal); ¶¶ 158-62 (trackers used on pages to navigate to patient portal); ¶¶ 149-52 (trackers used on doctor search pages); ¶¶ 154-55 (trackers used on pages to request appointments); ¶¶ 156-57 (trackers used on pages used to pay UMass Memorial bills).

UMass Memorial contends that Plaintiffs allege no "specific facts regarding any actual information of theirs that they contend has been transmitted to Google or Facebook" (Motion to Dismiss ("MTD") at 3). Not true. Plaintiffs identify several specific pages they visited (*see* preceding paragraph), including the UMass Memorial patient portal, the appointment request page, and the bill payment page. Plaintiffs also allege they visited specific pages on particular conditions and medical procedures. ¶¶ 29, 31, 33. They do not identify by name every condition they experienced or medical procedure they obtained (although plaintiff John Doe does reference searching for information on a spinal injury, ¶ 30), but Plaintiffs need not abdicate their medical privacy by publicly disclosing in a complaint their doctors and medical treatments in order to vindicate their legal privacy rights, *see* § III-C, *infra*.

Because of how UMass Memorial configured its website, UMass Memorial disclosed to Google and Facebook Plaintiffs' status as UMass Memorial patients, the identity of Plaintiffs' doctors,

information about their medical procedures, and their identities, confirmed through their IP address, browser fingerprints, and persistent identifiers Google and Facebook assigned to them. ¶¶ 29-33, 70-101. Plaintiffs neither knew of nor consented to these interceptions or disclosures. ¶¶ 36, 206, 208.

## III. ARGUMENT

### A. *Even Though Not Required for Any Claim, Plaintiffs Allege UMass Memorial Violated HIPAA.*

UMass Memorial argues that "all" of Plaintiffs' claims "rest on the…assumption" that the "information allegedly disclosed" is "protected health information" under HIPAA. MTD 4. Plaintiffs assert no claim under HIPAA, and none of Plaintiffs' claims requires proof of a HIPAA violation. Even if this Court were to find, against Plaintiffs' arguments below, that Plaintiffs allege no HIPAA violation, that conclusion would not require dismissal of *any* of Plaintiffs' claims, no less "all" of them.

HIPAA is relevant, although not essential to, Plaintiffs' ECPA claim. As argued below (§ III-B-1, *infra*), Plaintiffs alleged in anticipation of a one-party consent defense to their ECPA claim that UMass Memorial possessed a purpose to engage in acts that violated HIPAA, which would transform ECPA into a two-party consent statute (¶¶ 274(a), 275-78). However, Plaintiffs **also** allege several other bases for invoking the crime-tort exception, including the tort claims they assert in their complaint (¶¶ 274(b-d)). Additionally, although Plaintiffs allege that HIPAA and other privacy laws may inform the contours of their negligence claim (¶ 389), their negligence claim does not depend upon a violation of HIPAA or any other particular law. *See* § III-E, *infra*; *see also Doe v. Partners Healthcare Sys.*, No. 1984CV01651-BLS1 (Mass. Super. Ct. Nov. 20, 2020) at 39 (motion to dismiss decision and transcript attached as **Exhibit 1**) (Judge Davis on Massachusetts claims: "I think HIPAA is a bit of a red herring…. I'm not persuaded that HIPAA really has much of a role to play in the analysis that I have to undertake.").

Even though the Court does not need to resolve any issues relating to HIPAA to resolve this motion, Plaintiffs allege a HIPAA violation. UMass Memorial argues that HIPAA doesn't apply to "public website browsing information" (MTD 4-5), but, in distinction to the cases UMass Memorial cites, UMass Memorial deployed tracking technologies on its patient portal and other pages that are designed

specifically for patients, which therefore reveal patient status.

In a landmark decision against Facebook concerning the Meta Pixel, the court held that "patient status is protected health information under HIPAA," and therefore, website communications that "show[] patient-status constitute[] protected health information" under HIPAA. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 792-93 (N.D. Cal. 2022). Pages inside of a patient portal, of course, reveal patient status, but even other "public" pages can likewise reveal patient status, including pages showing "a user is about to log in to a healthcare provider's website," *id.*, and other public pages designed for patients. *See, e.g.*, *M.R. v. Salem Health Hosps. & Clinics*, 2024 U.S. Dist. LEXIS 155513, at *10-11, *16-17 (D. Or. Aug. 28, 2024) (interceptions disclosing "status as a patient" through "financial assistance form" supported HIPAA violation); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1124 (S.D. Cal. 2023) ("navigating to…a healthcare provider's patient portal differs from…general internet browsing…because it conveys a user's patient status"); *Kane v. Univ. of Rochester,* 2024 U.S. Dist. LEXIS 48515, at *19 (W.D.N.Y. Mar. 19, 2024) (distinguishing UMass Memorial's authority, *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 94 (N.D. Cal. 2017), in case involving healthcare provider "because Defendant's website transmits data from which it is possible to identify a specific individual who is seeking treatment from a specific physician, [and therefore,] the information does relate to the provision of healthcare to an individual").[4]

UMass Memorial relies heavily on *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024), to argue that Plaintiffs cannot allege a HIPAA violation based on interceptions involving "public websites," implying *Becerra* opened the door for the undisclosed use of tracking technologies on any publicly accessible page of a healthcare provider website. However, *Becerra* is not so broad. *Becerra* considered a bulletin issued by the Department of Health and Human Services and vacated only part of the bulletin relating to a "Proscribed Combination" of an "IP address" and a public page "addressing

---

[4] UMass Memorial's own authorities confirm that public webpages reflecting patient status reveal private health information. *Nienaber v. Oberlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1081-82 (W.D. Wash. 2024) ("As other courts within this Circuit have acknowledged, the transmission of information submitted to a *private patient portal*—such as a user clicking on the 'log in' button on that webpage—reveals patient status, which in and of itself is protected health information."); *K.L. v. Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *11 (D. Or. Nov. 14, 2024) (affirming same rule).

specific health conditions or healthcare providers," holding merely that disclosure of those two facts alone is insufficient for a HIPAA violation. *Id.* at 789.

Plaintiffs' claims, however, do not even reference, no less depend on, the HHS bulletin at issue in *Becerra*, and contrary to UMass Memorial's citation-free assertion that "Plaintiffs' allegations amount to nothing more than" the "Proscribed Combination" addressed in *Becerra* (MTD 6), Plaintiffs' allegations go well beyond it. Plaintiffs allege UMass Memorial deployed the technologies on its patient portal—both on the pages used to navigate to the portal (¶¶ 158-62) and on the portions of the portal accessed after logging in (¶ 35). Although UMass Memorial challenges the latter allegations regarding the use of tracking technologies on the portions of the portal accessed after logging in (MTD 2), UMass Memorial does not challenge or dispute that it used tracking technologies on the pages used to navigate to the patient portal. And UMass Memorial also used tracking technologies on several other pages that, although publicly accessible, are designed specifically for patients, including pages to find doctors for treatment (¶¶ 149-52); pages to request appointments (¶¶ 154-55); and pages to pay bills (¶¶ 156-57). These pages are **<u>not</u>** "informational" pages like those at issue in *Becerra.* The interception of Plaintiffs' communications on pages designed specifically for patients, together with the disclosure of their IP addresses[5] and other identifiers, presents an entirely different factual question than *Becerra* addressed.

Finally, *Becerra*'s construction of HIPAA does not bind this Court or require that it ignore other persuasive authority holding that allegations similar to those here state a claim for its violation. *Gaige v. Exer Holdings Co., LLC*, 2025 U.S. Dist. LEXIS 17146, at *10 (C.D. Cal. Jan. 30, 2025) (holding *Becerra* does **<u>not</u>** preclude invoking HIPAA under the ECPA's crime-tort exception where "Plaintiff's claims are not premised on a violation of HHS guidance, but rather are based on violations of various statutes and common law"); *Doe v. Bayhealth Med. Ctr. Inc.*, 2025 Del. Super. LEXIS 154, at *16-17 (Super. Ct. Apr. 2,

[5] Although *Becerra*'s holdings focused on the content of pages, not whether an IP address can identify an individual, regulations issued pursuant to notice-and-comment confirm "Internet Protocol (IP) address numbers" are information that a "recipient" could use "to identify an individual." 45 C.F.R. 164.514(B)(i)(2)(i)(O). Plaintiffs also allege identification not just by IP address but also browser fingerprints, cookies, and persistent identifiers assigned by Facebook and Google. ¶¶ 72-101; *see Kurowski v. Rush Sys. for Health*, 2024 U.S. Dist. LEXIS 126837, at *17-19 (N.D. Ill. July 18, 2024) (disclosure of IP addresses, browser fingerprints, and other identifiers, combined with health information, violates HIPAA).

2025) ("[T]he HHS guidance vacated by *Becerra* has no impact on a plaintiff's disclosure allegations when the plaintiff's claims are based on statutory and common law violations"); *Kurowski*, 2024 U.S. Dist. LEXIS 126837, at *17-20 (finding HIPAA violation while declining to rely on HHS Bulletin, given interceptions involved users' patient statuses); *J.C. v. Cath. Health Sys. Inc.*, 2024 U.S. Dist. LEXIS 155939, *41 (W.D.N.Y. Aug. 29, 2024) (rejecting *Becerra*'s reasoning as not "persuasive or controlling").

B. *Plaintiffs State a Claim for Violation of the ECPA.*

UMass Memorial violated the ECPA by injecting hidden tracking technologies into its own website, which secretly redirected Plaintiffs' communications to undisclosed third-party eavesdroppers, including Google and Facebook, without Plaintiffs' knowledge or consent. UMass Memorial makes several arguments for dismissal of the ECPA claim, each of which lacks merit.

1. <u>Plaintiffs Adequately Allege the Crime-Tort Exception to One-Party Consent.</u>

Although the ECPA provides a defense if <u>**either**</u> party to a communication consents to its interception, the ECPA imposes a <u>**two-party**</u> consent requirement if a communication "is intercepted for the purpose of committing any criminal *or* tortious act in violation of the Constitution or laws of the United States or of any state." 18 U.S.C. § 2511(2)(d) (emphasis added). Here, Plaintiffs allege UMass Memorial injected hidden tracking technologies onto its website for the both criminal and tortious purpose of disclosing confidential communication and facilitating the subsequent misuse of those communications by third parties, violating HIPAA and statutory and common law torts.[6] The torts include invasion of privacy torts codified by the Massachusetts Right to Privacy Act ("MRPA"), breach of fiduciary duty/breach of confidence, and violation of the Massachusetts Patient's Bill of Rights, M.G.L. c. 111 § 70E. Although the precise elements of those torts vary, the tortious purpose Plaintiffs allege for each is the same—the intentional disclosure to third parties of private medical communications in contradiction to UMass Memorial's promises to patients and patients' reasonable expectations of

[6] ¶¶ 272-74 ("Thus, although Defendants [are] a 'part[y] to the communications' at issue, they still incur liability under the ECPA because they intercepted and then disclosed Plaintiffs' communications and personal information to third parties without consent and for criminal and tortious purposes, as alleged throughout this complaint.") (emphasis added); ¶¶ 284-322 (Massachusetts statutory and common law tort claims).

privacy. UMass Memorial's consent to its own interceptions, therefore, provides it no defense.

a. The Court Should Not Impose a Heightened Intent Requirement.

As the text of the ECPA makes clear, for the crime-tort exception to apply, the "communication [must] be intercepted for the purpose of committing any criminal or tortious act." MTD 7 (quoting 18 U.S.C. § 2511(2)(d)). Under the ECPA's plain terms, the relevant "purpose" must be to "commit" an "act" that is either criminal *or* tortious.

As UMass Memorial recognizes (MTD 11-12), courts have disagreed on how the ECPA's crime-tort exception should apply to the surreptitious use of tracking technologies that intercept website communications. One case that closely considered the issue is *Kurowski v. Rush Sys. for Health*. There, a healthcare provider, like UMass Memorial here, argued the ECPA's crime-tort exception requires a "party to have knowledge that its intended use of the intercepted information is illegal." 2024 U.S. Dist. LEXIS 126837, at *9-10. In considering this argument, the court described alternative definitions of "purpose," which can require either that a defendant have specific knowledge of illegality, or alternatively, merely a purpose to engage in acts that are unlawful. *Id.* at *10-11. The court noted that the former approach, requiring a specific knowledge of illegality, is the exception, not the rule, reserved for circumstances involving "criminal offenses based on highly technical areas of the law," such as tax law. *Id.* The court saw "no persuasive reason to read a heightened willfulness requirement into the crime-or-tort exception…. [T]he purpose requirement [of the ECPA] … sweeps in both sophisticated offenses and straightforward ones. Moreover, the Court sees no reason to presume that the *mens rea* requirements of the underlying torts or crimes do not already address concerns about separating innocent from criminal or tortious conduct." *Id.* at *12-13. Put more plainly:

> A party does not have to say, in effect, "I want to commit a crime," or "today is a great day to commit a tort." The text points to the "purpose of committing any criminal or tortious act." …. The purpose must be to commit an act, and that act must be criminal or tortious. If the purpose is to do X, and if X is a crime or a tort, then the crime-tort exception to the one-party consent rule applies.

*Stein v. Edward-Elmhurst Health,* 2025 U.S. Dist. LEXIS 31273, at *14 (N.D. Ill. Feb. 21, 2025).[7]

Applying the more appropriate notion of purpose—to commit the relevant "acts" that are tortious or criminal—means that Plaintiffs must allege UMass Memorial "actively chose to employ the tracking technology on certain pages of its website that were likely to contain" personal information. *Kurowski*, 2024 U.S. Dist. LEXIS 126837, at *14.[8] Plaintiffs readily satisfy that requirement: They allege that UMass Memorial controls what tracking technologies it deploys on its website, and that the hospital elected not to disclose them or obtain user consent. *See* ¶¶ 4, 37, 67, 83, 147-48, 190, 196-208.

Plaintiffs recognize several district courts have imposed a requirement closer to a heightened showing of intent to violate the law (*see* MTD 8-10), including Judge Stearns in *Goulart v. Cape Cod Healthcare, Inc.*, 2025 U.S. Dist. LEXIS 119435 (D. Mass. June 24, 2025), which held that a plaintiff must allege that the defendant "knowingly commit[ed] a violation of HIPAA or perpetrat[ed] a tort." MTD 9 (quoting *Goulart*, 2025 U.S. 2025 U.S. Dist. LEXIS 119435, at *10). *Goulart* is one of dozens of decisions that have considered these issues. With utmost respect, Judge Stearns's status as a judge in this Court confers that decision no greater persuasive force than the dozens of other courts to have addressed the same issue, many of which have found allegations similar to those here to be adequate. Judge Stearns's and the other decisions that apply a heightened intent requirement contain little or no consideration of the alternative meanings of "purpose" or how the ECPA's plain terms—including that the exception applies to acts that are criminal *or* tortious—fit therein. *Kurowski*'s analysis is better-reasoned and squarely aligned with the ECPA's plain language. The Court should follow it and affirm Plaintiffs' claim.

b. UMass Memorial's Financial Motives Do Not Excuse It from Liability.

A driver of Judge Stearns's decision declining to apply the crime-tort exception—and several

---

[7] *Kurowski*'s and *Stein*'s analyses align with established principles of *mens rea* underlying criminal and tort law. Even for serious crimes, one need not act with a purpose to violate the law or even an awareness of the law (hence the common saying, "ignorance of the law is no defense"); rather, the relevant "purpose" is to commit the act that is proscribed by law. *E.g.*, Model Penal Code §§ 2.02(2)(a), 2.02(9).

[8] *Brahm v. Hosp. Sisters Health Sys.*, 2024 U.S. Dist. LEXIS 114827, at *13-16 (W.D. Wis. June 28, 2024) (crime-tort exception satisfied where "plaintiff alleges that defendants intercepted patients' electronic communications *for the purposes* of making disclosures that violated HIPAA"); *R.S. v. Prime Healthcare Servs.*, 2025 U.S. Dist. LEXIS 6338, at *14 (C.D. Cal. Jan. 13, 2025) ("intent to disclose [the] information" sufficient); *A.J. v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 194480, at *3-4 (N.D. Cal. Oct. 25, 2024) (affirming ECPA claim based on purpose of disclosing communications that HIPAA protects).

others UMass cites (MTD 10)—is that hospitals use trackers "for purposes of marketing and advertising," which, in Judge Stearns's view, is incompatible as a matter of law with a purpose of committing a criminal or tortious act. 2025 U.S. Dist. LEXIS 119435, at *9-10. UMass Memorial's financial motives were, in fact, consistent with its purpose to commit criminal or tortious acts of improper disclosure.

"Many crimes and torts are motivated by a desire to make money, and it 'defies common sense that a clearly harmful act could escape liability as long as it was done for profit.'" *Kurowski*, 2024 U.S. Dist. LEXIS 126837, at *16 (quoting *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928 n.4 (D. Minn. 2024)). "[N]othing in [the ECPA] requires that a party act with the *sole* purpose of committing the underlying crime or tort"; accordingly, secretly deploying tracking technologies to improve "profit margins…does not mean [the defendant] didn't also 'consciously desire' to make unauthorized disclosures" of patient communications. *Id.*; *accord Lugo v. Inova Health Care Servs.*, 2025 U.S. Dist. LEXIS 55590, at *21 (E.D. Va. Mar. 25, 2025) ("Courts around the country have upheld ECPA claims…where the alleged criminal purpose for the interception was a violation of HIPAA or a state…law, despite the…provider having an additional commercial, marketing, or advertising purpose"); *Cooper v. Mt. Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 383 (S.D.N.Y. 2024) (hospital's "theory that the presence of a primary financial motive inoculates a defendant from liability under the ECPA is wrong").

The Court should decline to follow decisions that assume the existence of financial motivations precludes a purpose to commit an act which is criminal or tortious.

c. Plaintiffs Allege Crimes and Torts Independent of the ECPA Violations.

UMass Memorial is also wrong to argue (MTD 9) that the crimes or torts Plaintiffs allege are not sufficiently "independent" of its ECPA violation. Although common sense confirms that the requisite "criminal or tortious act" cannot be the ECPA violation itself, nothing in the ECPA's terms suggests the interception must be wholly unrelated to or somehow distant from the criminal or tortious act. Indeed, the interception **must** be related to the tortious act for the exception to apply: It must be made "for the purpose of" the "act" that is criminal or tortious.

Considering both the plain terms of the ECPA and its legislative history,[9] the better-reasoned authorities conclude that where, as here, a business (i) deploys tracking technologies for (ii) the purpose of a tortious disclosure to third parties, that tortious disclosure supports the crime-tort exception. *Stein*, 2025 U.S. Dist. LEXIS 31273, at *12-17 (finding independent act upon careful analysis of ECPA statutory text, observing "[c]ourts from coast to coast have recognized that a violation of HIPAA can give rise to the crime-tort exception"); *Meta Pixel Healthcare*, 647 F. Supp. 3d at 797 (holding "tort claims may lie against health care providers over their use of the Pixel," and "the crime-tort exception [may] appl[y]" based on such torts); *Jarrell v. Adena Health Sys.*, 2025 U.S. Dist. LEXIS 6169, at *6-13 (S.D. Ohio Jan. 13, 2015); *R.C.*, 733 F. Supp. 3d at 901-02 (same).[10]

Moreover, the fact that the interception and tortious disclosure happened near in time does not mean that tortious and criminal disclosures are not independent of ECPA violations. "[A]n independent tort…that…arises not from the mere ***interception*** of Plaintiff's [communications], but from the ***disclosure*** of that…material to third parties," is sufficient, and UMass Memorial's argument, if accepted, would mean that "tortfeasors under the ECPA would enjoy a bizarre defense to liability as a reward for their efficiency." *Jarrell*, 2025 U.S. Dist. LEXIS 6169, at *7-8.[11]

At an absolute minimum, whether the ECPA and tortious disclosures are sufficiently

[9] The author of the exception, Senator Hart, provided examples of the torts and crimes to which the exception might apply, "such as blackmail [or] stealing business secrets." S. Rep. No. 90-1097, 90th Cong., 2d Sess. at 12 (1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2236. The theft of business secrets through eavesdropping, much like the tortious disclosures to third parties here, is largely accomplished at the time of the interception, but at least according to the author, the crime of theft is a sufficiently distinct crime from the wiretap violation for the exception to apply.

[10] UMass Memorial's suggestion that a pair of Third Circuit decisions have agreed with its arguments (*In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 275-76 (3d Cir. 2016), and *In re Google, Inc.*, 806 F.3d 125 (3d Cir. 2015)), ignores that those cases did not hold that no criminal or tortious purpose could ever be asserted in connection with website tracking but instead simply that the plaintiffs in those cases alleged no tortious or criminal disclosures or misuse of any healthcare or similarly sensitive communications, nor were there allegations of website owners deceiving consumers. District courts applying those authorities under facts closer to those here affirm ECPA claims. *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 U.S. Dist. LEXIS 177625, *7-12 (E.D. Pa. Sep. 30, 2024) (applying *Nickelodeon* and *In re Google*; affirming ECPA claim relating to secret tracking technology use on healthcare provider website); *Pattison v. Teladoc Health, Inc.*, 2025 U.S. Dist. LEXIS 121044, at *7-10, 17 (S.D.N.Y. June 25, 2025).

[11] *Gay*, 2024 U.S. Dist. LEXIS 168515, at *8 (in carefully reasoned decision, holding "[t]he Complaint sufficiently alleges an independent action secondary to the interception"—the "use[]" of "the content of [the] communications … [by] Facebook [and] Google") (collecting and analyzing authorities); *R.S.*, 2025 U.S. Dist. LEXIS 6338, at *16 ("R.S. does not allege that Prime Healthcare's interception *itself* violated HIPAA…. Instead, R.S. asserts that the violation stems from Prime Healthcare's intentional *disclosure* of the collected Private Information, which constitutes a 'further impropriety' independent … [of] Prime Healthcare's *interception*.").

"independent" acts presents a question at the intersection of technology and law, which the Court should resolve after discovery (including expert discovery) that will help illuminate how the tracking technologies operated and the nature of the tortious disclosures they generated. *W.W. v. Orlando Health, Inc.*, 2025 U.S. Dist. LEXIS 40038, *23 (M.D. Fla. Mar. 6, 2025) (holding that "[a]pplication of the crime-tort exception appears more fit for resolution at summary judgment or trial than at the motion to dismiss stage").

d. Canons of Construction Cannot Override the ECPA's Plain Terms.

UMass Memorial invokes two canons of construction—absurdity (MTD 12) and the rule of lenity (MTD 12-13). Neither canon warrants departure from the ECPA's plain terms.

UMass Memorial's "absurdity" argument comes in the form of a warning: it claims that Plaintiffs' theory, if accepted, will make "felons" out of many businesses. MTD 12. This is not true. The argument ignores that any business can readily avoid liability by, for example, obtaining users' consent. Most hospitals have **<u>not</u>** been sued for tracking technologies, and few companies other than medical providers have been sued, because most healthcare providers and the vast majority of businesses that use tracking technologies disclose them. UMass Memorial would not have faced this lawsuit had it disclosed the tracking technologies, as Google and Facebook directed UMass Memorial to do.[12]

The Third Circuit in *Popa v. Harriet Carter Gifts, Inc.*, another case concerning website tracking technologies, rejected similar absurdity arguments. Its analysis is on point:

> Though the Defendants try to convince us about the certainty of any number of "parade of horribles," the [Pennsylvania wiretap act] is not so unreasonable. It…includes many exceptions from liability. One is the all-party consent exception, under which [there is no liability] when the person being recorded knew…that the conversation was being recorded [such as by a] privacy policy [that] sufficiently alert[s] [website users] that [website] communications [are] being sent to a third-party company.

52 F.4th at 132 (quotations omitted).

[12] *See* https://www.facebook.com/legal/terms/businesstools (websites must "represent and warrant that [they] have provided **<u>robust and sufficiently prominent notice</u>** to users regarding [Meta Pixel] that includes, at a minimum:…a **<u>clear and prominent notice on each web page where our pixels are used</u>** that links to a clear explanation…that third parties, including Meta, may…collect or receive information from your websites…and use that information to…target and deliver ads"); https://marketingplatform.google.com/about/analytics/terms/us/ ("You must disclose [to users] the use of Google Analytics, and how it collects and processes data. This can be done by displaying a prominent link to the site 'How Google uses information from sites or apps that use our services.'").

The rule of lenity does not help UMass Memorial either. Its own authority—*United States v. Councilman*, 418 F.3d 67, 83 (1st Cir. 2005)—describes the rule as ensuring a "fair warning" for criminal liability. UMass Memorial has had plenty of "fair warning," given that the First Circuit, more than twenty years ago, affirmed class federal wiretap liability for tracking technologies "designed to record the webpages a user viewed at clients' websites," *Pharmatrak*, 329 F.3d at 13, putting businesses on notice of the importance of disclosure and consent when it comes to sensitive website communications.[13]

Additionally, lenity applies only if "there is a grievous ambiguity or uncertainty in the statute," *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998), and even then, only as a "last resort" applied "when none of the other canons of statutory interpretation is capable of resolving the statute's meaning," including legislative history, *Adams v. Holder*, 692 F.3d 91, 107 (2d Cir. 2012) (citation omitted). UMass Memorial identifies no grievous ambiguity and does not even consider other tools of construction before fast-forwarding to lenity. The rule of lenity does not apply. *Councilman*, 418 F.3d at 83 (declining to apply lenity to ECPA; "while the statute contains some textual ambiguity, it is not 'grievous'").

2. <u>Plaintiffs Allege Interception of the Contents of Communications</u>

UMass Memorial argues Plaintiffs allege no "contents" of any communications were intercepted because no "substance" was revealed. MTD 13-14. The ECPA does not require a verbatim recording of the entirety of a communication to satisfy the "contents" element. Instead, "contents" include "**<u>any</u>** information concerning the substance, purport, or meaning of [the] communication." 18 U.S.C. § 2510(8) (emphasis added). Plaintiffs' allegations readily meet that requirement.

First, Plaintiffs allege interceptions that revealed patient status, including through UMass Memorial's injection of hidden tracking technologies into its patient portal, appointment pages, and bill

[13] *Pharmatrak* was no outlier; class action wiretap lawsuits have for decades been used to redress privacy encroachments by online technologies. *Joffe v. Google, Inc.*, 746 F.3d 920 (9th Cir. 2013); *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020); *Specht v. Netscape Communs. Corp.*, 306 F.3d 17, 21, 39 (2d Cir. 2002) (allowing class ECPA claim to proceed); *In re State Police Litig.*, 88 F.3d 111, 115, 127 (2d Cir. 1996) (affirming denial of summary judgment on class ECPA claim); *Dunbar v. Google, Inc.*, 2011 U.S. Dist. LEXIS 157932, at *2, 13 (E.D. Tex. May 23, 2011) (denying motion to dismiss class ECPA claim); *Harris v. comScore, Inc.*, 292 F.R.D. 579, 581, 590 (N.D. Ill. 2013) (certifying class ECPA claim); *In re Google Inc. St. View Elec. Communs. Litig.*, 794 F. Supp. 2d 1067, 1070, 1086 (N.D. Cal. 2011) (denying motion to dismiss class ECPA claim).

and payment pages. *See* § II-A, C, *supra*. Interceptions that disclose an individual's status as a patient of a particular provider disclose "contents" of the communication. *Meta Pixel Healthcare*, 647 F. Supp. 3d at 795-96 (website communications involve "contents" if they reveal patient status); *M.G.*, 2024 U.S. Dist. LEXIS 166534, at *12 (same); *Castillo,* 2024 U.S. Dist. LEXIS 207197, at *15 (same).

Second, Plaintiffs detail in their complaint how UMass Memorial configured its website to use descriptive URLs that, when intercepted, reveal the substance of the information a patient requests and that UMass Memorial provides in response, including the identity of patients' doctors and the specific names of patients' medical conditions and procedures. *See* §§ II-A, C, *supra*. UMass Memorial also intercepted the specific search terms users entered on the website. *Id.* Given these allegations, UMass Memorial's suggestion that no "substance" was intercepted is wrong, because "[o]ften, a location identifier [i.e., a URL]…comprises part of a communication's substance." *Google*, 806 F.3d at 136. Where descriptive URLs are used, "the categories of content and non-content [record information] overlap and are not mutually exclusive." *Doe v. Post Acute Med., LLC*, 2025 U.S. Dist. LEXIS 26667, at *13 (M.D. Pa. Feb. 14, 2025); *Meta Pixel Healthcare*, 647 F. Supp. 3d at 795 ("descriptive URLs" are "'contents'"). Plaintiff's allegations, which describe disclosures revealing doctor identities and Plaintiffs' conditions and treatments, meet the requirement that "any" aspect of "substance" of a communication be intercepted.[14]

C. *Plaintiffs State a Claim under the MRPA.*

The MRPA, M.G.L. c. 214 § 1B, codifies "in broad terms" certain common law privacy torts. *See Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 409 Mass. 514, 519 (1991). Plaintiffs invoke two theories[15] of tort liability under the MRPA—(i) intrusion upon seclusion and (ii) disclosure of private facts, ¶¶ 287-300,[16] two torts that the Massachusetts Supreme Judicial Court ("SJC") has expressly held

[14] *Castillo*, 2024 U.S. Dist. LEXIS 207197, at *15 (URLs disclosing "underlying health conditions" are "contents"); *M.G.*, 2024 U.S. Dist. LEXIS 166534, at *12 (same); *R.C.*, 733 F. Supp. 3d at 902 ("descriptive URLs" are contents); *Yoon v. Meta Platforms, Inc.*, 2024 U.S. Dist. LEXIS 234457, at *13-15 (N.D. Cal. Dec. 30, 2024) (same).

[15] UMass Memorial strangely argues that a "dissemination of facts of a private nature" is the essence of both intrusion upon seclusion and disclosure of private facts (MTD 14), but the case UMass Memorial cites plainly refers to the tort of disclosure of private facts. *See Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015).

[16] Although UMass Memorial references the tort of "public disclosure of private facts" (MTD 14), a "public" dissemination is not required. The SJC has held that "publication" even among a limited group of employees within a firm is enough,

are incorporated within the MRPA's scope, *Polay v. McMahon*, 468 Mass. 379, 382-84 (2014).

Applying these tort theories, Judge Saris and four Massachusetts Superior Court justices have concluded that the surreptitious use of tracking technologies to transmit private medical communications and information states a claim for violation of the MRPA. *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 152 (D. Mass. 2024); *Doe v. Emerson Hosp.*, 2023 Mass. Super. LEXIS 673, at *11-12 (Super. Ct. Nov. 22, 2023); *Doe v. Bos. Med. Ctr. Corp.*, 2023 Mass. Super. LEXIS 674, at *11-12 (Super. Ct. Sep. 14, 2023); *Alves v. BJ's Wholesale Club, Inc.*, 2023 Mass. Super. LEXIS 59, at *13-17 (Super. Ct. June 21, 2023); *Partners Healthcare*, Ex. 1 (hereto) at 44 (plaintiff "states a viable claim for invasion of the right of privacy" under MRPA based on the same allegations as those here). As the *Tenet* court explained:

> [T]he health information that was allegedly disclosed to Facebook (e.g., Plaintiff's identity, patient status, request for medical treatment, health conditions and treatments, and appointment time and location) constitutes information of a "highly personal or intimate nature." Moreover, "whether an intrusion is unreasonable, substantial, or serious is a question of fact." As other courts have concluded, these allegations suffice to advance Plaintiff's claim under the Massachusetts Right to Privacy Law.

731 F. Supp. 3d at 151-52. The SJC has also "emphasize[d]" in a case with substantively the same facts "that the Legislature has provided…statutory and common-law causes of action…directly applicable to misrepresentations or misuse of private medical information" that are likely "cognizable" under the facts alleged here, including the MRPA. *Vita*, 494 Mass. at 849-50. **<u>There is no contrary authority</u>**.

Those courts did not write on a blank slate. Instead, their decisions followed the SJC's decision in *Polay*, which held that allegations of "electronic surveillance" state an MRPA claim, and whether such surveillance violates the MRPA in a particular case "presents a question of fact." 468 Mass. at 382-84. Indeed, under *Polay*, the fact that some webpages at issue are "public" pages should not matter, given the SJC has construed the MRPA as broader than the common law torts it codifies, holding it applies even where "an individual's conduct is observable by the public" if the "electronic surveillance" is contrary to

confirming the MRPA "depart[s]…from the Restatement's concept of the tort" in this respect. *Bratt v. Int'l Bus. Machines Corp.*, 392 Mass. 508, 519 & n.15 (1984); *Tower v. Hitschhorn*, 397 Mass. 581, 586 (1986) ("[T]he success of [an MRPA claim] is not dependent on communication of the personal matters disclosed to the public at large.").

an individual's "reasonable expectation of privacy." *Id.* at 384.[17]

UMass Memorial has little to say about the courts that have each independently upheld MRPA claims on largely the same facts, other than to argue, without elaboration or any comparison of the allegations in this case against prior cases, that the plaintiffs in those other cases "made specific allegations about their browsing history." MTD 15 & n.6. Plaintiffs here, in fact, identify specific pages they visited from which their communications with UMass Memorial were intercepted, including the find-a-doctor page, pages on particular symptoms, the appointment scheduling page, bill payment pages, and the UMass Memorial patient portal, among others. ¶¶ 29-33. They also describe precisely how the tracking technologies were designed to intercept the substance of communications on those pages. *See, e.g.,* ¶¶ 149-52 (doctor search function); ¶¶ 154-55 (appointment scheduling page); ¶¶ 156-57 (bill payment page); ¶¶ 35, 158-62 (patient portal). Plaintiffs do not allege the verbatim substance of each communication of theirs that UMass Memorial intercepted (such as their specific appointment dates or the names of their doctors and medical conditions), but if UMass Memorial means to argue that Plaintiffs must, to vindicate their privacy rights, publicize the exact contents of the communications that were intercepted, that is wrong. *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1004 (N.D. Cal. 2024) ("Plaintiffs do not need to plead the specific and presumably highly sensitive contents of the communications they say were intercepted in order to plausibly allege that interception occurred.").[18] Plaintiffs provide sufficient detail to provide UMass Memorial notice of the claims against it and to allege disclosure of private facts.

UMass Memorial also avoids discussing the core fact that it lied to patients about tracking

---

[17] *See also Brahm*, 2024 U.S. Dist. LEXIS 114827, at *19-21; *Lamarr v. Goshen Health Sys., Inc.*, 2024 Ind. Super. LEXIS 107, at *17-18 (Super. Ct. Oct. 3, 2024) (same); *R.C.*, 733 F. Supp. 3d at 888-95. Defendants' out-of-state authorities construing different causes of action from different states (MTD 15-16) are not persuasive, as they do not construe Massachusetts law (in contrast to the five judges that have affirmed MRPA claims under substantively the same facts).

[18] *T.S. v. Body Contour Ctrs., LLC*, 2025 U.S. Dist. LEXIS 128429, at *5-6 (W.D. Wash. July 7, 2025) (holding that requiring "plaintiffs who seek to vindicate their privacy rights to publicly link their names to the [very] information they seek to protect…is against the public interest, as it could dissuade plaintiffs from bringing privacy cases") (quotations omitted); *Kurowski v. Rush Sys. for Health*, 2023 U.S. Dist. LEXIS 219895, at *7-8 (N.D. Ill. Dec. 11, 2023) (affirming the sufficiency of allegations very similar to those here, which described the types of information intercepted without disclosing the names of the plaintiff's doctors or their specific medical conditions); *see also Emerson*, 2023 Mass. Super. LEXIS 673, at *11-12 (rejecting similar argument that complaint "reveals little about the information that Plaintiff entered on its website" in connection with MRPA claim) (citing *Bos. Med. Ctr.*, 2023 Mass. Super. LEXIS 674).

technologies. ¶¶ 196-203. False promises bolster invasion of privacy claims like those here. *Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 602 (affirming privacy claim where "tracking" contradicted "privacy disclosures"); *Google*, 806 F.3d at 150-52 (reversing dismissal of privacy claim where Google's practices contradicted its own disclosures).[19]

D. *Plaintiffs State a Claim under the Massachusetts Patients' Bill of Rights.*

UMass Memorial contends that any private cause of action brought under Massachusetts G.L. c. 111, § 70E, also known as the Patients' Bill of Rights, must be brought as a medical malpractice claim. To the best of Plaintiffs' knowledge, this is not a settled proposition under Massachusetts law. *See* § 70E ("Any person whose rights under this section are violated *may* bring, *in addition to any other action allowed by law or regulation*, a civil action under [the Massachusetts medical malpractice statute].") (emphases added); *Darviris v. Petros*, 442 Mass. 274, 281 (2004) (analyzing interaction of § 70E and Massachusetts deceptive trade practices statutes, and noting that "a violation of G.L. c. 111, § 70E, may in some cases constitute a violation of [the deceptive trade practices statute]"). Indeed, at least one court applying § 70E has held that it permits invasion of privacy claims. *Pressman v. Brigham Med. Grp. Found. Inc.*, 919 F. Supp. 516, 524 (D. Mass. 1996) (denying summary judgment on invasion of privacy claims brought under § 70E). Section 70E provides that every patient of a facility shall have the right "to confidentiality of all records *and communications* to the extent provided by law" (emphasis added). Massachusetts law is clear that communications related to a patient's medical condition or treatment, such as those alleged here, are protected. *E.g.*, *Alberts*, 395 Mass. at 68-69. Although Plaintiffs are aware of no authority construing the term "communications" in § 70E, courts applying similar statutes have held—consistent with Massachusetts' common law rule stated in *Albert*—that transmissions to Google and Facebook in circumstances like those here are "communications" giving rise to a violation. *E.g.*, *Meta Pixel Healthcare*,

[19] *See also Meta Pixel Healthcare*, 647 F. Supp. 3d at 799-800 (defendant's violation of own "policies tend[s] to support" a "fairly strong" privacy claim); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1076 (N.D. Cal. 2021) (privacy claim where company's "privacy disclosures…failed to acknowledge [the] tracking …[and] suggest[ed] that users' information would not be tracked"); *Doe v. Medstar Health, Inc.*, 2020 Md. Cir. Ct. LEXIS 139, at *6 (Cir. Ct. Aug. 5, 2020) (tracking technologies contradicted "express promises of privacy to patients"); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 864-65 (C.D. Cal. 2024) (allegations that tracking technologies implemented "surreptitiously" supports invasion of privacy claim).

647 F. Supp. 3d at 799. UMass Memorial's emphasis on the statutory term "records" is a red herring, and its argument would have the impermissible effect of rewriting the clear language of the statute. *See Goodridge v. Dep't of Pub. Health*, 440 Mass. 309, 319 (2003) ("We interpret statutes to carry out the Legislature's intent, determined by the words of a statute interpreted according to 'the ordinary and approved usage of the language.'").

E. *Plaintiffs State a Claim for Breach of Fiduciary Duty/Duty of Confidentiality.*

Plaintiffs assert a common law claim for breach of fiduciary duty and breach of confidentiality under the SJC's decision in *Alberts v. Devine*, 395 Mass. 59, 68-69 (1985). The SJC made clear in *Alberts* that "a duty of confidentiality arises from the physician-patient relationship, and that a violation of that duty resulting in damages, gives rise to a cause of action sounding in tort." *Id.* Even though Plaintiffs expressly invoke *Alberts* in their complaint as a basis for this claim (¶ 310), UMass Memorial inexplicably fails to discuss the case in its argument on the claim.

UMass Memorial argues that a patient's interaction on the UMass Memorial Website does not sufficiently relate to any fiduciary duty UMass Memorial owes to patients. UMass Memorial cites **no** factually pertinent authority on this argument. Its primary authority on this issue, *Korper v. Weinstein*, 57 Mass. App. Ct 433 (App. Ct. 2003), is distant from the facts here; the conduct at issue there—an affair between a physician and patient—had no logical connection to the fiduciary relationship. That is not so here, given that the website is designed for use by patients as patients. ¶¶ 25-26.[20]

In *Emerson*, the court, applying Massachusetts law, rejected the precise argument UMass Memorial makes here—that patient communications on a hospital's website are not sufficiently related to the fiduciary doctor/patient relationship. *Emerson*, 2023 Mass. Super. LEXIS 673, at *5-7. Every other

[20] UMass Memorial's only other Massachusetts authority that touches upon medical issues, *Kelley*, 23 Mass. L. Rep. 87, involved much different facts. In *Kelley*, a pharmacy shared a list of consumers receiving certain prescriptions to a vendor to send mailings paid for by a pharmaceutical company. No information was provided to the pharmaceutical company, and the vendor received any information under a confidentiality agreement that forbade it from using the information for other purposes. *Id.* at *5-15. That is far different than here, where Google and Facebook were free to use the intercepted communications **for their own commercial purposes**. Moreover, there was no suggestion in *Kelley* that consumers were deceived, in contrast to here, where UMass Memorial expressly promised patients it would not engage in the precise conduct in which it engaged.

Massachusetts court that has considered a fiduciary duty claim based on the same allegations here (*i.e.*, surreptitious use of tracking technologies) has affirmed the claim. *Tenet*, 731 F. Supp. 3d at 149-51; *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *10-12; *Partners Healthcare* (margin order, attached as Ex. 1) (affirming breach of fiduciary duty claim); *Vita*, 494 Mass. at 849-50 (fiduciary duty claim "cognizable" for secret use of tracking technologies). UMass Memorial's conduct reflects a particularly egregious fiduciary breach, given both its deployment of hidden tracking technologies on its patient portal and its significant deception of patients about the technologies.

UMass Memorial's emphasis of the fact that its website is a "public website" ignores that UMass Memorial used tracking technologies on several pages designed specifically for patients, which Plaintiffs visited as patients. ¶¶ 35, 18-62 (patient portal); ¶¶ 149-52 (doctor pages); ¶¶ 154-55 (appointment requests); ¶¶ 156-57 (bill payment page). Similarly, UMass Memorial's argument that it owes no duty to non-patients (MTD 23) is irrelevant, as the only Plaintiffs before the Court are patients who used the UMass Memorial website as patients. Plaintiffs plainly state a claim. *See Li v. Off. of Transcription Services*, 2016 Mass. App. Unpub. LEXIS 1079 (App. Ct. Nov. 8, 2016) (recognizing claim for "breach of confidence" arising from improper disclosure of "information [the defendant] knew was confidential"); *Weekes v. Choen Cleary P.C.*, 723 F. Supp. 3d 97, 103 (D. Mass. 2024) (same).

F. *Plaintiffs State a Claim for Negligence.*

UMass Memorial's argument on negligence ignores the most relevant authorities, which affirm negligence claims under Massachusetts law on the same facts. *Tenet*, 731 F. Supp. 3d at 149; *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *9 (same); *see also Vita*, 494 Mass. at 849-50 (negligence claim "cognizable" based on undisclosed use of tracking technologies). Each of UMass Memorial's arguments lacks merit.

***Plaintiffs Allege a Duty.*** The contours of the duty UMass Memorial owes to patients are informed by state and federal privacy laws that reflect society's recognition of the importance of confidentiality of healthcare-related communications and the importance of consent to their disclosure, even if those statutes do not themselves either provide a claim or support a claim for "per se" negligence

liability. *Bennett v. Eagle Brook County Store, Inc.*, 408 Mass. 355, 358-59 (1990) (even though "violation of a statute does not by itself establish breach of duty," it does provide "some evidence of the defendant's negligence") (quotations omitted). Accordingly, the absence of *per se* negligence (MTD 18) does not prevent the Court from finding a duty on the facts alleged here, informed in part by statutory privacy protections. Indeed, UMass Memorial's own authorities confirm that a hospital "already has a legally cognizable duty to prevent harm to its own [] patients" under Massachusetts law, such that a tort claim is cognizable, and "not [merely] because the existence of the statutes created that duty." *Roe No. 1 v. Children's Hosp. Med. Ctr.*, 469 Mass. 710, 720 (2014).[21]

UMass Memorial's argument (MTD 18-19) that Plaintiffs' negligence claim is duplicative of their breach of fiduciary claim ignores that Plaintiffs assert several sources that define the scope of a duty actionable in a negligence claim (¶¶ 388-90), in contrast to the decisions UMass Memorial cites, which principally involve professional negligence claims where the sole basis for duty in negligence was the relationship that also gave rise to a malpractice claim.[22]

***Plaintiffs Allege Breach.*** UMass Memorial's only argument on breach of duty assumes Plaintiffs' negligence claim depends exclusively upon a HIPAA violation. Plaintiffs **do** allege a HIPAA violation (§ III-A, *supra*), but Plaintiffs also cite additional statutory and other sources that inform UMass Memorial's duties, including state medical privacy law and industry practices, *see* ¶¶ 388-89. Courts applying Massachusetts law have repeatedly confirmed that breach of a duty exists under circumstances like those here. *E.g.*, *Tenet*, 731 F. Supp. 3d at 148 (holding that allegations like those here sufficed to show the defendant "acted negligently by using trackers and disclosing Private Information to third-party companies, in breach of its duties to exercise reasonable care in handling patient information").

***Compensable Loss.*** UMass Memorial asserts summarily (MTD 19-20) that "Plaintiffs'

[21] *Juliano v. Simpson*, 461 Mass. 527 (2012), likewise reflects a rule against *per se* liability but confirms statutes are "relevant" to defining the scope of duties that may be vindicated through a claim for negligence.

[22] *Clark v. Rowe*, 428 Mass. 339, 345 (1998) (affirming dismissal of fiduciary duty claim as duplicative of malpractice claim; no suggestion of duty arising from sources other than professional relationship); *Jordan's Furniture, Inc. v. Carter & Burgess, Inc.*, 92 Mass. App. Ct. 1102 (App. Ct. 2017) (contract claim dismissed, not negligence claim; contract claim was based on promise to satisfy professional obligations; no further contractual duty alleged).

negligence claim also fails because they fail to plead that they suffered any actual compensable loss," but UMass Memorial does not engage Plaintiffs' actual allegations, which amply allege compensable loss, including Plaintiffs' detailed allegations regarding the significant, quantifiable economic value the intercepted communications have to patients, UMass Memorial, and the third-party eavesdroppers and advertisers that monetize the intercepted communications—that is, there is an established, mature market for the intercepted communications.[23] Such allegations are sufficient at this stage of the case, even if expert evaluation of that market may later be necessary to quantify damages. *Emerson*, 2023 Mass. Super. LEXIS 673, *5 (allegations that "private medical information was disclosed to Facebook" and defendant "and Facebook monetized [plaintiff's] personal health information without compensating him" sufficient at the pleading stage); *Meta Pixel Tax Filing*, 724 F. Supp. 3d at 1019-24 (allegations of "loss of privacy," "diminution in value," and "loss of the benefit of [the] bargain" sufficient even if not quantified; "[i]f a user shares information with the expectation that it will be protected but the recipient does not actually protect it, then the user has surrendered in that transaction more than she otherwise would have").[24]

UMass Memorial argues that some "[c]ourts" have "rejected loss of diminution of value of personal information damages" where plaintiffs fail to "allege the existence of a market for the personal information." MTD 20-21. The better-reasoned decisions do not place a significant burden on plaintiffs to plead the particulars of such a market, *see Meta Pixel Tax Filing*, 724 F. Supp. 3d at 1019-24 (applying Rule 8 notice pleading standard), but the courts' disagreement does not matter, as Plaintiffs here allege in detail the market for the types of data intercepted; Plaintiffs' allegations satisfy even the greater-than-notice-pleading standard that some courts apply. ¶¶ 228-35.

[23] ¶¶ 125, 141, 192, 236-40 (describing value UMass Memorial "bartered" in exchange for permitting Google and Facebook to eavesdrop on communications, resulting in increased revenue for UMass Memorial); ¶¶ 104-12, 140 (describing how Meta Pixel contributes to Facebook's building of individual profiles from which Facebook derives its revenues); ¶¶ 73, 182-85, 191, 199-200 (describing how Google Analytics contributes to Google's building of individual profiles from which Google derives its revenues); ¶¶ 328-342 (describing "economic market for consumers' personal data" and particular value of health data, including pricing of such data); ¶¶ 233-35 (describing a market through which consumers sell and monetize their own data).

[24] That Plaintiffs have not yet quantified damages or presented expert testimony on value does not matter. *Lee v. Conagra Brands, Inc.,* 958 F.3d 70, 80-81 (1st Cir. 2020) (plausible, even if general, allegations of benefit-of-the-bargain damages at pleadings stage sufficient); *In re Meta Pixel Healthcare Litig.*, 713 F. Supp. 3d 650, 655-56 (N.D. Cal. 2024) (allegation, even without quantification or expert testimony, that "Meta unjustly profited from the data taken," is sufficient); *Gay*, 2024 U.S. Dist. LEXIS 168515, at *17-18 (similar); *Lamarr*, 2024 Ind. Super. LEXIS 107, at *7-8 (similar).

UMass Memorial's one-sentence argument on the economic loss doctrine (MTD 20) ignores that Massachusetts permits recovery of economic losses where a duty arises from a special relationship, as it does here. *See* §§ III-D, *supra*; *Tenet*, 2024 U.S. Dist. LEXIS 73596, at *9 (rejecting economic loss doctrine argument in case involving tracking technologies on medical website, given special relationship between healthcare consumers and providers); *Portier v. NEO Tech. Sols.*, 2019 U.S. Dist. LEXIS 227494, at *47-60 (D. Mass. Dec. 31, 2019) (rejecting economic loss doctrine argument when defendant had duty to safeguard plaintiffs' personal information) (collecting authorities); *Shedd v. Sturdy Mem. Hosp.*, 2022 Mass. Super. LEXIS 7, at *13, *20-23 (Super. Ct. Apr. 5, 2022) (economic loss doctrine does **not** apply to failure to protect "confidential medical information").

G. *Plaintiffs State a Claim for Breach of Contract.*

"Under Massachusetts law, '[i]n the absence of an express agreement, an implied contract may be inferred' from 'the conduct of the parties' and 'the relationship of the parties.'" *Tenet*, 731 F. Supp. 3d at 149 (quoting *T.F. v. B.L.*, 442 Mass. 522, 527 (2004)). Here, UMass Memorial, through its own privacy policy, made promises to patients that it breached. UMass Memorial argues (MTD 21) that it did not assent to any promise to protect communications with Plaintiffs, but UMass Memorial's assent is embodied in the terms of its own policies, which it drafted and published on its own website. A contract may be implied at law on such facts, as confirmed by the **only** Massachusetts authorities to have considered similar allegations. *Emerson*, 2023 Mass. Super. LEXIS 673, at *8-9; *Tenet*, 731 F. Supp. 3d at 149-50; *see also Vita*, 494 Mass. at 849-50 (implied contract claim "cognizable" based on undisclosed use of tracking technologies). As the *Tenet* court held:

> [T]he amended complaint contains sufficient factual allegations that Tenet breached its implied contractual obligations by using third-party trackers on its Website. Tenet argues there is no reasonable expectation that information collected from the public-facing portion of the Website be treated as confidential or as a condition of receiving medical treatment…. [However,] Plaintiff paid Tenet for healthcare services with the understanding that Tenet would maintain Plaintiff's Private Information confidentially, as expected in a physician-patient relationship. Tenet's promise to keep Plaintiff's Private Information secure and confidential is evidenced by its privacy policies, such as its Notice of Privacy Practices, which states that Tenet is "required by law to maintain the privacy of [patient] health information" and that a patient's written authorization is required

> before Tenet uses Private Information to send the patient marketing materials. When a patient uses a healthcare provider's website to communicate or transfer confidential health or personal data, she has a reasonable expectation under HIPAA, as well as the privacy policies, that the information will be kept private and not sold to third-party companies, regardless of whether she read the privacy policies as a matter of law.

731 F. Supp. 3d at 150 (citations omitted). UMass Memorial's arguments (MTD 23-22) that Plaintiffs and UMass Memorial did not "discuss" the promises and characterization of Plaintiffs of relying on their own "mere beliefs" likewise ignore UMass Memorial's own privacy policies that included those promises.[25] *Id.*

Finally, UMass Memorial's argument (MTD 22) that there is no "consideration" for an agreement to comply with existing legal obligations disregards UMass Memorial's own written policies, which do not simply promise compliance with HIPAA but instead include promises, independent of any statutory obligation, that patients may access the website anonymously and that UMass Memorial would only share communications for specified purposes. *See id.*; ¶¶ 198-200.

H. *Plaintiffs State a Claim for Unjust Enrichment.*

UMass Memorial's only argument on Plaintiffs' unjust enrichment claim is that Plaintiffs could not have reasonably expected compensation for the economically valuable, secretly intercepted, and improperly disclosed communications, as they were unaware of those interceptions at the time. MTD 34-25. An unjust enrichment claim may arise, however, when a defendant enriches itself at a plaintiff's expense without that plaintiff's contemporaneous knowledge, as courts applying Massachusetts law have affirmed under the same facts. *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *13-14; *Tenet*, 731 F. Supp. 3d at 150-51; *Emerson*, 2023 Mass. Super. LEXIS 673, at *9-11; *see also Vita*, 494 Mass. at 849-50 (unjust enrichment claim "cognizable" based on hidden tracking technologies).

## IV. CONCLUSION

The Court should deny UMass Memorial's motion to dismiss.

[25] Although UMass Memorial's authority, *Weekes*, 723 F. Supp. 3d at 104, referenced an absence of allegations that the parties "discussed" protection of information in that case, the plaintiff there alleged no discussion **or** written promises, and *Weekes* does not hold that only a live discussion can give rise to an agreement; indeed, as this Court is surely aware, companies often seek to enforce online terms—particularly where they contain arbitration provisions—with no requirement that the parties "discuss" such online terms for the terms to be enforceable.

Dated: August 15, 2025

**Respectfully submitted,**

*/s/ J. Tucker Merrigan*
J. Tucker Merrigan (BBO# 681627)
Thomas T. Merrigan (BBO# 343480)
Ryan Hawkins (BBO# 686289)
Erin E. McHugh (BBO# 703701)
**Sweeney Merrigan Law**
268 Summer St. LL
Boston, MA 02210
Tel: (617) 391-9001
Fax: (617) 357-9001
tucker@sweeneymerrigan.com
tom@sweeneymerrigan.com
rmh@sweeneymerrigan.com
emchugh@sweeneymerrigan.com

Foster C. Johnson (*pro hac vice*)
David Warden (*pro hac vice*)
Justin C. Kenney *(pro hac vice)*
Nathan Campbell (*pro hac vice*)
**Ahmad, Zavitsanos, & Mensing, PLLC**
1221 McKinney Street, Suite 2500
Houston, Texas 77010
(713) 655-1101
fjohnson@azalaw.com
dwarden@azalaw.com
jkenney@azalaw.com
ncampbell@azalaw.com

Warren Postman (*pro hac vice*)
Alex Dravillas (*pro hac vice*)
**Keller Postman LLC**
150 N. Riverside Plaza
Suite 4100
Chicago, Illinois 60606
Tel: (312) 741-5220
wpd@kellerpostman.com
adj@kellerpostman.com

*Attorneys for John Doe and the Putative Class*

*/s/ William P. Doyle*
William P. Doyle (BBO# 556999)
**Law Offices of Colonna & Doyle**
26 Main Street
Lynnfield, MA 01940
Tel: (781) 245-1127
Fax: (781) 245-1148
bill@colonna-doyle.com

Nicholas A. Coulson (*pro hac vice*)
**Coulson P.C.**
300 River Place Drive
Suite 1700
Detroit, MI 48207
Tel: (313) 644-2685
nick@Coulsonpc.com

*Attorneys for Lisa Colleton and the Putative Classes*

*/s/ Patrick J. Vallely*
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
**Shapiro Haber & Urmy**
One Boston Place
Suite 2600
Boston, MA 02108
Tel: (617) 439-3939
Fax: (617) 439-0134
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

*Attorneys for Janice Progin and the Putative Classes*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading was filed electronically through the Court's electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: August 15, 2025

*/s/ Patrick J. Vallely*