**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANICE PROGIN, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UMASS MEMORIAL HEALTH CARE, INC., UMASS MEMORIAL COMMUNITY ENTITIES, INC., UMASS MEMORIAL MEDICAL CENTER, INC., UMASS MEMORIAL HEALTHALLIANCE-CLINTON HOSPITAL, INC., MARLBOROUGH HOSPITAL, and HARRINGTON MEMORIAL HOSPITAL, INC.,<br><br>Defendants. | Case No. 4:25-cv-40003<br><br>**Leave to File Granted on July 10, 2025** |

**DEFENDANTS' REPLY IN SUPPORT OF THE MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiffs Fail To State Their ECPA Claim ..... 1

1. Plaintiffs Do Not Plausibly Allege That UMass Memorial Intended To Commit A Crime Or Tort ..... 1

2. Plaintiffs Do Not Plausibly Allege The Interception Of "Contents" ..... 5

B. Plaintiffs' Attempts to Brush Away *Becerra* Are Unavailing ..... 6

C. Plaintiffs Fails To State Their Privacy Claims ..... 6

D. Plaintiffs' Negligence Claim Should Be Dismissed ..... 8

E. Plaintiffs' Breach Of Fiduciary Duty Claim Should Be Dismissed ..... 9

F. Plaintiffs' Breach Of Implied Contract Claim Should Be Dismissed ..... 10

G. Plaintiffs' Unjust Enrichment Claim Should Be Dismissed ..... 10

III. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberts v. Devine*,
95 Mass. 59 (Mass. 1985) ....................9

*American Hosp. Ass'n. v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................6

*B.K. v. Eisenhower Med. Center*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....................8, 10

*Bigelow v. Virginia*,
421 U.S. 809 (1975) ....................4

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ....................3, 4

*Commonwealth v. McCue*,
67 Mass. App. Ct. 1113 (2006) (unpublished) ....................8

*Commonwealth v. Welch*,
487 Mass. 425 (2021) ....................8

*Cousin v. Sharp Healthcare*,
681 F. Supp 3d. 1117 (S.D. Cal. 2023) ....................8

*Desnick v. Am. Broad. Companies, Inc.*,
44 F.3d 1345 (7th Cir. 1995) ....................4

*Doe v. Emerson Hosp.*,
2023 WL 8869624 (Mass. Super. Nov. 22, 2023) ....................7, 9

*Doe v. Post Acute Medical, LLC*,
2025 WL 511069 (M.D. Pa. Feb. 14, 2025) ....................10

*Doe v. Tenet Healthcare Corporation*,
731 F. Supp. 3d 142 (D. Mass. 2024) ....................7, 8, 9

*Goulart et al. v. Cape Cod Healthcare, Inc.*,
2025 WL 1745732 (D. Mass. June 24, 2025) ....................2, 5

*Hannant v. Sarah D. Culbertson Memorial Hosp.*,
2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) ....................7

*Jarrell v. Adena Health Sys.*,
2025 WL 81305 (S.D. Ohio Jan. 13, 2025) ....................3

*Kurowski v. Rush Sys. for Health*,
2024 WL 3455020 (N.D. Ill. July 18, 2024)....................2

*Lugo v. Inova Health Care Servs.*,
2025 WL 905191 (E.D. Va. March 25, 2025) ....................3

*Med. Lab. Mang't Consultants v. Am. Broad. Cos., Inc.*,
30 F. Supp. 2d 1182 (D. Ariz. 1998) ....................4

*Meredith v. Gavin*,
446 F.2d 794 (8th Cir. 1971) ....................3

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)....................10

*Polay v. McMahon*,
468 Mass. 379 (2014) ....................6

*Pressman v. Brigham Med. Grp. Found. Inc.*,
919 F. Supp. 516 (D. Mass. 1996) ....................8

*Rand v. Eyemart Express, LLC*,
2024 WL 4376162 (N.D. Tex. Oct. 1, 2024)....................6

*Shaulis v. Nordstrom, Inc.*
865 F.3d 1 (1st Cir. 2017)....................10

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)....................4

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ....................2

*Thomas v. Pearl*,
998 F.2d 447 (7th Cir. 1993) ....................3

*United States v. McHugh*,
57 F. Supp. 3d 95 (D. Mass. 2014) ....................2, 4

*Vita v. New England Baptist Hosp.*,
494 Mass. 824 (2024) ....................10

*Willitts v. Engie N. Am. Inc.*,
2021 WL 2322833 (D. Mass. June 7, 2021)....................9

**Statutes**

M.G.L. c. 111, § 70E ........................................................................................................................8

M.G.L. c. 214, § 1B ........................................................................................................................6

# I. INTRODUCTION

Plaintiffs seek to greatly expand the scope of the Electronic Communications Privacy Act ("ECPA") beyond the plain language of the statute and criminalize conduct that regularly occurs on the Internet. Plaintiffs argue for this Court to adopt an expansive interpretation of the crime-tort exception that would eliminate the requirement that a party act with an intended *purpose* to commit a crime or tort at the time of the interception that is *independent* of the interception. Plaintiffs' argument is contrary to the statutory text and decisions within this Circuit, including both Judge Richard G. Stearns' recent decision and Magistrate Judge Paul Levenson's report and recommendation, and would result in the crime-tort exception swallowing the one-party consent rule. As Judge Stearns and Magistrate Judge Levenson found, their argument should be rejected and Plaintiffs' ECPA claim should be dismissed.

Plaintiffs' argument that their personal health information, including their patient status, has been disclosed without their consent is also not supported by any well-pled allegations in their Consolidated Amended Complaint ("Complaint" or "CAC"). The lack of well-pled allegations are fatal to their tort and contract claims.

# II. ARGUMENT

## A. Plaintiffs Fail To State Their ECPA Claim

### 1. Plaintiffs Do Not Plausibly Allege That UMass Memorial Intended To Commit A Crime Or Tort

Plaintiffs do not dispute that unless the crime-tort exception applies, their ECPA claim against Defendants (collectively, "UMass Memorial") fail as a matter of law and must be dismissed. Opp. at 9. Plaintiffs contend that the fact that UMass Memorial deployed and used third-party analytics on its public website, which they claim resulted in a purported HIPAA

violation and an invasion of Plaintiffs' privacy, is sufficient to invoke the crime-tort exception. *Id.*[1] Plaintiffs' argument is not supported by the statute or decisions within this Circuit.

The crime-tort exception is "to be construed narrowly," and the finding of an "[a]n impermissible purpose" has been "confined to situations where the recording party intended to harm the recorded party, either through blackmail, threats or public embarrassment." *United States v. McHugh*, 57 F. Supp. 3d 95, 100 (D. Mass. 2014) (citations omitted). Plaintiffs conspicuously fail to address or attempt to distinguish their case from *McHugh*. Instead, Plaintiffs invite this Court to disregard the plain language of the statute and Judge Stearns' findings in *Goulart et al. v. Cape Cod Healthcare, Inc.*, 2025 WL 1745732 (D. Mass. June 24, 2025) ("Cape Cod"). Opp. at 11. Judge Stearns, however, accurately applied the law of the First Circuit, relying in part on *McHugh*. *Id.* at *3 (citing *McHugh*, 57 F. Supp. 3d at 99–100); *see also* ECF No. 27 at 7–10. On August 29, 2025, Magistrate Judge Levenson similarly concluded that a plaintiff's allegations concerning the alleged use of web tracking tools on a hospital's website did not meet the heightened standard to invoke the crime-tort exception requiring both that the interception was made "*for the purpose* of committing any criminal or tortious act"—not that the interception may have resulted in a tortious or criminal act—and the crime or tort must be separate and independent from the interception. *See Doe v. Lawrence General Hospital*, No. 25-cv-10081-NMG (D. Mass. Aug, 29, 2025), Rep. and Rec. at 21–25, attached as Ex. A.

Plaintiffs primarily depend on out-of-circuit district court decisions in support of their argument that the only purpose required under the statute must be to commit an act alone, and

---

[1] Plaintiffs in their Opposition argue that their claims also include allegations that pixels were deployed within the UMass Memorial patient portal. However, Plaintiffs' purported claim is not well pled or supported by any factual allegations. Instead, it is limited to a lone paragraph claiming "on information and belief" that UMass Memorial had "installed tracking technologies inside of its patients portal" and does not allege that any patients' communications with their physicians or medical records, let alone any of the Plaintiffs' communications with their physicians or medical records within the portal, were disclosed to anyone. *See* CAC ¶ 35.

the purpose for taking the act is irrelevant, so long as the act itself is purposeful. Opp. at 10–14 (quoting *Kurowski v. Rush Sys. for Health*, 2024 WL 3455020, (N.D. Ill. July 18, 2024), *Stein v. Edward-Elmhurst Health*, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025); *Jarrell v. Adena Health Sys.*, 2025 WL 81305 (S.D. Ohio Jan. 13, 2025); *Lugo v. Inova Health Care Servs.*, 2025 WL 905191 (E.D. Va. March 25, 2025)). The analysis in their cited decisions, however, is contrary to precedent not only in their circuits, but decisions within this circuit, which require an actual criminal or tortious purpose for the exception to apply—initially described by the appellate court as an "intent to harm." *See Thomas v. Pearl*, 998 F.2d 447, 451 (7th Cir. 1993) (interpreting exception, holding "[t]his means Thomas must show that Pearl either intended to break the law or commit a tort against him in order to prove a violation of the federal statute'); *Meredith v. Gavin*, 446 F.2d 794, 798–99 (8th Cir. 1971) (holding exception did not apply where defendant secretly recorded private conversation with plaintiff in connection with worker's compensation proceeding to use at trial; "it seems apparent from the context in which the statute was enacted that the sort of conduct contemplated was an interception by a party to a conversation with an intent to use that interception against the non-consenting party in some harmful way").

As a textual matter, Plaintiffs' proposed interpretation of the statute is incorrect. As the Second Circuit held: "Congress chose the word 'purpose' for a reason." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). "Therefore, the offender must have as her objective a tortious or criminal result." *Id.* "Had Congress intended for the act of recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception of oral communications *resulting in* a tortious or criminal act." *Id.* (emphasis in original). "But Congress limited the cause of action to instances where one party to the conversation *deliberately seeks to harm* the other participant through the information intercepted." *Id.* (emphasis added). The

uniform law, from the outset of cases analyzing the exception, is consistent with UMass Memorial's position and contrary to Plaintiffs' argument. *See, e.g., Caro*, 618 F.3d at 99–100 (2d Cir. 2010) and decisions cited in ECF No. 27 at 7–11.

Under all accounts, the focus of the tortious or criminal conduct exception analysis is on the purpose: was the defendant's alleged purpose in making the recording unlawful? If the purpose was lawful, then the exception does not apply, even if the defendant's actions in using the recording might ultimately turn out to violate some other law. *Desnick v. Am. Broad. Companies, Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995); *Med. Lab. Mang't Consultants v. Am. Broad. Cos., Inc.*, 30 F. Supp. 2d 1182, 1205 (D. Ariz. 1998) ("Even if Defendants were found liable for fraud, the question is not whether they are ultimately liable for conduct found to be tortious, but whether, at the time the recording took place, they recorded the conversation with the *express intent of committing a tort*.") (emphasis added). Moreover, Plaintiffs' argument is that UMass Memorial's alleged purpose was to use the alleged information for marketing. Opp. at 12. While marketing as a purpose may include a financial motive, it is not a criminal or tortious purpose. Far from being criminal or tortious, the United States Supreme Court has held that the basic right to engage in commercial speech is protected by the First Amendment to the United States Constitution. *See Bigelow v. Virginia*, 421 U.S. 809, 825 (1975); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) ("the creation and dissemination of information are speech within the meaning of the First Amendment").

For the crime-tort exception to apply, Plaintiffs must—but do not—plausibly allege that UMass Memorial, a not-for-profit health system, installed web analytics technologies on its websites for the distinct purpose of violating HIPAA or perpetrating a tort, like invasion of privacy or breach of confidentiality—*i.e.*, that UMass Memorial deployed these technologies

because it "intended to harm" its patients and other visitors to its website. *See McHugh*, 57 F. Supp. 3d at 100. Instead, they allege only that UMass Memorial used technologies commonplace in both the healthcare industry and on websites generally for advertising and marketing purposes. When the crime-tort exception analysis is properly focused on a defendant's alleged purpose in making an alleged interception, and not on whether the defendant's alleged conduct resulted in any purported crime or tort, Judge Stearns recently concluded that a purpose to engage in digital marketing is not criminal or tortious as a matter of law. *See Cape Cod*, 2025 WL 1745732 at *4 (finding "commercial purposes or advantages are not the stuff of which a crime-tort is made") and other decision cited in ECF No. 27 at 7–11. .

Plaintiffs' failure to plead that at the time it deployed the website analytics technologies it did so for the *purpose* of committing a crime or tort that was *independent* from the alleged interceptions of Plaintiffs' communications requires Plaintiffs' ECPA claim to be dismissed.

**2. Plaintiffs Do Not Plausibly Allege The Interception Of "Contents"**

Plaintiffs' ECPA claim separately fails as a matter of law because they have not plausibly alleged that the "contents" of any electronic communications was intercepted. Plaintiffs' Opposition merely asserts that (1) "patient status" was revealed and (2) "descriptive URLs" constitute contents. Opp. 15–16. Plaintiffs' arguments, however, are not supported by a review of the Complaint. The paragraphs that describe Plaintiffs Doe, Colleton, and Progin's actual browsing activity do not allege or show how their "patient status" was revealed or the allegedly "descriptive URLs" that they personally visited revealed any substantive communication. CAC ¶¶ 28–34. Instead, they contain cursory, insufficient allegations regarding general web browsing activity. *Id.*. With respect to the Patient Portal, the Amended Complaint alleges only that "IP Addresses and Browser Fingerprints, and Plaintiffs' interactions *with* Defendants' patient portal,

[were] transmitted to third party advertisers without their consent." *Id.* ¶ 35 (emphasis added). There is no allegation that information from *within* the patient portal was ever transmitted. *Id.*

### B. Plaintiffs' Attempts to Brush Away *Becerra* Are Unavailing

Plaintiffs' attempts to distinguish the holding in *American Hosp. Ass'n. v. Becerra* by arguing that the decision was limited to an analysis of the disclosure of browsing history information plus an IP address ignore the Court's material analysis of why searches on a public website can never reveal IIHI because the search itself does not and cannot reveal why the search is being made and whether it is related to the person's individual health. 738 F. Supp. 3d 780, 802–03 (N.D. Tex. 2024). It is this well-reasoned analysis that has led other Courts to conclude that searches on public websites, including navigating to a patient portal, do not reveal PHI. *See* ECF No. 27 at 4–5 (citing cases); *see also Rand v. Eyemart Express, LLC*, 2024 WL 4376162, at *4 (N.D. Tex. Oct. 1, 2024) (quoting *Becerra*'s "Identity (Person A) + Query (Condition B) ≠ IIHI (Person A has Condition B)" formula and dismissing an ECPA claim because "Plaintiffs have failed to plead facts that plausibly establish that they shared any private health information with Meta").

### C. Plaintiffs Fails To State Their Privacy Claims

To sustain an invasion of privacy claim under the MRPA, G.L. c. 214, § 1B, Plaintiffs must plausibly allege an invasion that is "both unreasonable and substantial or serious." *Polay v. McMahon*, 468 Mass. 379, 382 (2014). While "[g]enerally, whether an intrusion qualifies as unreasonable, as well as either substantial or serious, presents a question of fact," that does not mean such a claim is never subject to dismissal for failure to allege sufficient facts to state such a claim. *Id.* at 383. In an attempt to save their claim, Plaintiffs attempts to conflate the browsing on a public website with the transmission of actual particularly sensitive or personal information. Opp. at 18 (citing CAC ¶¶ 29–33, 35, 149–52, 154–62).

First, many of the cited paragraphs raised by Plaintiffs in their Opposition relate to alleged browsing activity of a hypothetical user, *not* Plaintiffs. *See* CAC ¶¶ 29–33, 35, 149–52, 154–62. Second, the lone paragraph claiming "on information and belief"[2] that UMass Memorial "installed tracking technologies inside of its patients portal" does not allege that patients' communications with their physicians or medical records were disclosed—it contains no factual allegations of a transmitted physician-patient communication. *See id.* ¶ 35. Third, as to the allegations specifically about Plaintiffs' own browsing activities, those merely describe browsing activities on a public website without specifics. *See id.* ¶¶ 29-33.

In *Doe v. Tenet Healthcare Corporation*, the plaintiff alleged that she used Tenet's website to "schedule appointments, search for information, and access the patient portal," and after taking those actions she received targeted online advertisements relating to her specific health conditions, including related to weight loss and diabetes. 731 F. Supp. 3d 142, 147–148, 151–152 (D. Mass. 2024). Likewise, in *Doe v. Emerson Hospital*, the plaintiff alleged that information about his specific treatment for a concussion and information about his appointments at Emerson were transmitted to Meta. 2023 WL 8869624, at *1, *5 (Mass Super. Nov. 22, 2023).

Here, unlike the allegations in *Tenet* and *Emerson*, there are no allegations that any information about the scheduling of Plaintiffs' medical appointments, the nature of those medical appointments, or the particular medical conditions were ever transmitted to any third-party. Massachusetts courts have found no reasonable expectation of privacy in situations that are more sensitive than the search of a public website. *See, e.g., Commonwealth v. Welch*, 487 Mass. 425,

---

[2] Courts have rejected similar conclusory "information and belief" pleadings asserting patient portal activity. *See, e.g., Hannant v. Sarah D. Culbertson Memorial Hosp.*, 2025 WL 2413894, at *5 (C.D. Ill. Aug. 20, 2025) (finding "an allegation that patient status was disclosed, standing alone, is closer to a legal conclusion than a factual allegation" and rejecting allegations "'[o]n information and belief' that Defendant disclosed information like her 'status as a patient' and her 'patient portal activity' but provides no detail as to what information was disclosed that demonstrated her patient status or what activities she took with respect to the patient portal").

433-34 (2021) (busy hospital emergency room was not a location where a suspect had a reasonable expectation of privacy); *Commonwealth v. McCue*, 67 Mass. App. Ct. 1113, at *1–2 (2006) (unpublished) (similar). In the present case, given the lack of any allegations that Plaintiffs' medical information was ever transmitted to third parties, Plaintiffs' claim is more akin to the allegations in *B.K. v. Eisenhower Medical Center* and *Cousin v. Sharp Healthcare*, where the courts dismissed invasion of privacy claims since, at most, information about routine medical searches and inquiries on a public website were transmitted. *B.K.*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024); *Cousin*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023).

With respect to Plaintiffs' other invasion of privacy claim, their contention that "at least one court applying [G.L. c. 111,] § 70E has held that it permits invasion of privacy claims is inapposite. Opp. at 19 (citing *Pressman v. Brigham Med. Grp. Found. Inc.*, 919 F. Supp. 516, 524 (D. Mass. 1996)). That claim was "premised upon [plaintiff's] allegation that the defendants reviewed his personal medical records without permission," which is not at issue here. *Pressman*, 919 F. Supp. at 524.

**D. Plaintiffs' Negligence Claim Should Be Dismissed**

Plaintiffs claim generally that the duty owed to them is "informed by state and federal privacy laws." Opp. at 22. Plaintiffs, however, fail to clarify what duty UMass Memorial owes Plaintiffs with respect to its negligence claim, stating only that this Court could "find[] a duty on the facts alleged here, informed in part by statutory privacy protections. *Id.*.

Plaintiffs' Opposition argues that "Courts applying Massachusetts law have repeatedly confirmed that breach of a duty exists under circumstances like those here." Opp. at 22 (citing only *Tenet*, 731 F. Supp. 3d at 148). However, Plaintiffs ignore that their Complaint is devoid of particular allegations that Plaintiffs' personal health information has ever been transmitted to third parties. As a result, their reliance on *Tenet* is misplaced because, in that matter and unlike

here, the plaintiff had specifically alleged facts that her personal health information, including her particular health conditions, treatments, appointment time and location was transmitted to Meta, and she alleged that these disclosures caused the advertisements she received for diabetes and obesity. *Tenet*, 731 F. Supp. 3d at 147–148. Here, Plaintiffs have failed to allege particular facts that they used UMass Memorial's website in a manner that any transmitted browsing data could be considered the transmission of protected confidential health information.

### E. Plaintiffs' Breach Of Fiduciary Duty Claim Should Be Dismissed

Plaintiffs' breach of fiduciary duty claim fails because, unlike the cases cited in the Opposition, Plaintiffs fail to adequately plead sufficient allegations regarding the Plaintiffs. As addressed above, Plaintiffs' reliance on the decision in *Tenet* is misplaced since those allegations were more robust and included the alleged transmission of the plaintiffs' specific treatments, appointment times and locations. See *Tenet*, 731 F. Supp. 3d at 147–148, 151. Likewise, the fiduciary obligation addressed in *Alberts v. Devine* addresses the obligation of a physician "to hold in trust confidential information." 95 Mass. 59, 69 (Mass. 1985). However, Plaintiffs have not alleged that any communication with any of their physicians were ever disclosed. *See Willitts v. Engie N. Am. Inc.*, 2021 WL 2322833, at *4 (D. Mass. June 7, 2021) (dismissing breach of confidentiality claim based on "no disclosure by a physician").

### F. Plaintiffs' Breach Of Implied Contract Claim Should Be Dismissed

With respect to its implied contract claim, Plaintiffs' Opposition ignores that the *Emerson* court acknowledged that there was no case law from the Commonwealth clearly on point and there are courts from other jurisdictions that have held that an implied contract is not viable. *Emerson*, 2023 WL 8869624, at *4. Given the lack of Plaintiffs' factual allegations and for the reasons addressed in UMass Memorial's memorandum in support of its motion, their breach of contract claim should be dismissed for failure to state a claim.

### G. Plaintiffs' Unjust Enrichment Claim Should Be Dismissed

Plaintiffs misrepresent the SJC's holding in *Vita*, which did not assess the viability of an unjust enrichment claim nor conclude that an "unjust enrichment claim is "cognizable" based on undisclosed use of tracking technologies. *Vita v. New England Baptist Hosp.*, 494 Mass. 824, 849–850 (2024). Further, based on the lack of factual allegations, there is no plausible basis to consider whether Plaintiffs conferred any "benefit" to UMass Memorial or whether there was any "value" associated with the purported benefit, which other courts have recognized in dismissing similar claims. *See Doe v. Post Acute Medical, LLC*, 2025 WL 511069, *9 (M.D. Pa. Feb. 14, 2025) (lack of specific facts regarding what information was disclosed, to whom, under what circumstances and whether the information was linked to Doe specifically required dismissal of unjust enrichment claim); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1093–94 (W.D. Wash. 2024) (dismissing unjust enrichment claim for lack of pleading "a concrete detriment for purposes of an unjust enrichment claim"); *B.K.*, 721 F. Supp. 3d at 1070 ("Without specific allegations about the underlying information that was allegedly disclosed, it is unclear to the Court how, if at all, Defendant was unjustly enriched"). Plaintiffs' pleading of other causes of action arising from the same alleged conduct further supports dismissal of her unjust enrichment claim. *Shaulis v. Nordstrom, Inc.* 865 F.3d 1, 16 (1st Cir. 2017) ("a party with an adequate remedy at law cannot claim unjust enrichment").

## III. CONCLUSION

For the foregoing reasons and those included in Defendants' memorandum, Defendants respectfully asks the Court to dismiss the Consolidated Amended Complaint with prejudice.

Dated: September 5, 2025

Respectfully submitted,

*/s/ Elizabeth A. Scully*

Elizabeth A. Scully (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W., Suite 1100
Washington, DC 20036-5304
escully@bakerlaw.com
T: (202) 861-1500

James H. Rollinson (BBO #649407)
BAKER & HOSTETLER LLP
127 Public Street, Suite 2000
Cleveland, OH 44116
jrollinson@bakerlaw.com

Paul G. Karlsgodt (*pro hac vice* to be filed)
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202-2662
pkarlsgodt@bakerlaw.com

Stephen T. Paterniti (BBO #564860)
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, MA 02116
Stephen.Paterniti@jacksonlewis.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 5, 2025, a copy of the foregoing was served via CM/ECF which will serve the Plaintiffs' counsels of record.

*/s/ Elizabeth A. Scully*
Elizabeth A. Scully (admitted *pro hac vice*)
BAKER & HOSTETLER LLP

*Attorney for Defendants*