**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANICE PROGIN, LISA COLLETON, and JOHN DOE, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>UMASS MEMORIAL HEALTH CARE, INC., UMASS MEMORIAL COMMUNITY ENTITIES, INC., UMASS MEMORIAL MEDICAL CENTER, INC., UMASS MEMORIAL HEALTHALLIANCE-CLINTON HOSPITAL, INC., MARLBOROUGH HOSPITAL, and HARRINGTON MEMORIAL HOSPITAL, INC.,<br><br>Defendants. | Case No. 4:25-cv-40003 |

**MEMORANDUM IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

I. THE SECOND CONSOLIDATED AMENDED COMPLAINT ..... 2

II. STANDARD OF REVIEW ..... 4

III. ARGUMENT ..... 5

A. Plaintiffs' Claims Fail Because No Protected Health Information Was Disclosed ..... 5

B. Plaintiffs' ECPA Claim Fails Because They Fail to Plead Facts That Defendants Purposefully Committed Any Criminal Or Tortious Acts ..... 7

C. Plaintiffs Fail To State A Privacy Claim ..... 11

1. Plaintiffs Fail To Plead A Claim For Statutory Invasion Of Privacy ..... 11

2. Plaintiffs Fail To Plead A Claim For Invasion Of Privacy Under G.L. c. 111, § 70E ..... 12

D. Plaintiffs' Negligence Claim Fails For Lack Of Duty, Breach, And Damages ..... 15

1. Plaintiffs' Negligence Claim Fails For Lack of Duty And Breach ..... 15

2. Plaintiffs Fail To Plead Cognizable Damages ..... 16

E. Plaintiffs Fail To Allege Mutual Assent And Consideration Necessary for Their Implied Contract Claim ..... 18

F. Plaintiffs Fail To Plead A Fiduciary Relationship Between UMass Memorial And Plaintiffs With Regards To Their Public Website Browsing Data ..... 19

G. Plaintiffs' Unjust Enrichment Fails For Lack Of Reasonable Expectation Of Compensation ..... 21

H. Plaintiffs' Chapter 93A Claims Fails Because UMass Memorial Is A Nonprofit Engaged In Customary Business For Its Charitable Purpose ..... 22

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acara v. Banks*,
470 F.3d 569 (5th Cir. 2006) ....................10

*Alberts v. Devine*,
395 Mass. 59 (1985) ....................14

*All Seasons Servs. v. Comm'r of Health & Hosps.*,
416 Mass. 269 (1993) ....................24

*Allen v. Novant Health, Inc.*,
No. 1:22-CV-697, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) ....................22

*Allen v. Quicken Loans Inc.*,
No. 17-CV-12352, 2018 WL 5874088 (D.N.J. Nov. 9, 2018) ....................9

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................5, 6, 8

*ARK Nat'l Holdings LLC v. We Campaign LLC*,
No. 21-CV-10893, 2021 WL 5918682 (D. Mass. Dec. 15, 2021)....................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5

*B.K. v. Eisenhower Medical Center*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....................12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 554 (2007)....................5, 12

*Branyan v. Southwest Airlines Co.*,
105 F. Supp. 3d 120 (D. Mass. 2015) ....................11

*Brookridge Funding Corp. v. Aquamarine, Inc.*,
675 F. Supp. 2d 227 (D. Mass. 2009) ....................21

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
238 F. Supp. 3d 1359 (S.D. Fla. 2017) ....................19

*Cape Cod ASC, LLC v. Bentivegna*,
No. 2008457, 2010 WL 3038824 (Mass. Super. Jul. 1, 2010) ....................19

*Carpenter v. United States*,
585 U.S. 296 (2018) .......... 9

*Chin v. Merriot*,
470 Mass. 527 (2015) .......... 14

*Clark v. Rowe*,
428 Mass. 339 (1998) .......... 15

*Cohen v. Casper Sleep Inc.*,
No. 17-CV-9325, 2018 WL 3392877 (S.D.N.Y. Jul. 12, 2018) .......... 11

*Conformis, Inc. v. Aetna, Inc.*,
58 F.4th 517 (1st Cir. 2023) .......... 4

*Counterman v. Colorado*,
600 U.S. 66 (2023) .......... 9

*Darviris v. Petros*,
442 Mass. 274 (2004) .......... 12

*Doe v. Genesis Health Sys.*,
No. 4:23-CV-04209-JEH, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) .......... 8

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 11

*Doe v. Lawrence Gen. Hosp.*,
No. 25-CV-10081-NMG, 2025 WL 2808055 (D. Mass. Aug. 29, 2025) .......... 7, 9, 10

*Doe v. Partners Healthcare Sys. Inc.*,
No. 1984CV01651-BLS1, 2020 Mass. Super. LEXIS 4667 (Nov. 20, 2020) .......... 24

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) .......... 6

*Donovan v. Philip Morris USA, Inc.*,
455 Mass. 215 (2009) .......... 16, 17

*Gardiner v. Walmart, Inc.*,
No. 20-CV-04618-JSW, 2021 WL 4992539 (N.D. Cal. Jul. 28, 2021) .......... 17

*Goulart v. Cape Cod Healthcare, Inc.*,
No. 25-CV-10445-RGS, 2025 WL 1745732 (D. Mass. June 24, 2025) .......... 7

*Gravallese v. Massachusetts Parole Bd.*,
No. CA 945777, 1995 WL 808813 (Mass. Super. Apr. 19, 1995) .......... 19

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................12

*Hubbard v. Google LLC*,
No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. Jul. 1, 2024) ....................12

*Hubert v. Melrose-Wakefield Hosp. Ass'n*,
40 Mass. App. Ct. 172 (1996) ....................24

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................12

*J.R. v. Walgreens Boots Alliance, Inc.*,
No. 20-1767, 2021 WL 4859603 (4th Cir. Oct. 19, 2021) ....................19

*Johnson v. Duxbury, Massachusetts*,
931 F.3d 102 (1st Cir. 2019) ....................9

*Jordan's Furniture, Inc. v. Carter & Burgess, Inc.*,
No. 16-P-728, 2017 WL 3393465 (Mass. App. 2017) ....................15

*Josef Gartner USA LP v. Consigli Const. Co., Inc.*,
No. 10-40072-FDS, 2011 WL 2417137 (D. Mass. Jun. 10, 2011) ....................18

*Juliano v. Simpson*,
461 Mass. 527 (2012) ....................15

*K.L. v. Legacy Health*,
No. 3:23-CV-1886-SI, 2024 WL 4794657 (D. Or. Nov. 14, 2024) ....................6, 8, 16

*Koppel v. Moses*,
No. 20-11479-LTS, 2020 WL 6292871 (D. Mass. Oct. 27, 2020) ....................12

*Korper v. Weinstein*,
57 Mass. App. Ct. 433 (2003) ....................20

*Linkage Corp. v. Trustees of Boston Univ.*,
425 Mass. 1 (1997) ....................23

*Loffredo v. Center for Addictive Behaviors*,
426 Mass. 541 (1998) ....................13

*A.G. ex rel. Maddox v. v. Elsevier, Inc.*,
732 F.3d 77 (1st Cir. 2013) ....................17

*Maghoney v. Dotdash Meredith, Inc.*,
No. 24-CV-2394, 2026 WL 497402 (S.D. Cal. Feb. 23, 2026) ....................6, 12

*Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
412 F.3d 215 (1st Cir. 2005)....................18

*In re Mednax Servs. Customer Data Sec. Breach Litig*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022)....................19

*Metro. Life Ins. Co. v. Cotter*,
464 Mass. 623 (2013)....................21

*Morales-Cruz v. Univ. of P.R.*,
676 F.3d 220 (1st Cir. 2012)....................5

*Nelson v. Massachusetts Port Auth.*,
55 Mass. App. Ct. 433 (2002)....................15

*In re Nickelodeon Consumer Priv. Lit.*,
No. 12-CV-07829, 2014 WL 3012873 (D.N.J. Jul. 2, 2014)....................22

*Nienaber v. Overlake Hospital Medical Ctr.*,
No. 2:23-CV-01159-TL, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025)....................11

*Portier v. NEO Tech. Sols.*,
No. 3:17-CV-30111-TSH, 2019 WL 7946103 (D. Mass. Dec. 31, 2019)....................16

*Progin v. UMass Mem'l Health Care, Inc.*,
No. 25-CV-40003, 2026 WL 632770 (D. Mass. Mar. 6, 2026)....................7, 8, 9

*R. M. W. by Wolfe v. Homewood Suites by Hilton Mt. Laurel*,
No. 09-CV-400 (JHR/AMD), 2012 WL 13186031 (D.N.J. Jun. 28, 2012)....................14

*Rafferty v. Merck & Co.*,
479 Mass. 141 (2018)....................22

*Renzulli v. Sullivan*,
No. 22 MISC 000564 (KTS), 2024 WL 1903573 (Mass. Land Ct. Apr. 26, 2024)....................15

*Roberts v. Charlotte Mecklenburg Hosp. Auth.*,
No. 3:24-CV-00382, 2025 WL 880538 (W.D.N.C. Mar. 20, 2025)....................10

*Rodriguez v. Fastmed Urgent Care, P.C.*,
741 F. Supp. 3d 352 (E.D.N.C. 2024)....................11

*Roe No. 1 v. Children's Hosp. Med. Ctr.*,
469 Mass. 710 (2014)....................15

*SEC v. Tambone*,
597 F.3d 436 (1st Cir. 2010)....................5

*Shedd v. Sturdy Mem'l Hosp., Inc.*,
No. 2173CV00498C, 2022 WL 1102524 (Mass. Super. Apr. 5, 2022)....24

*Smith v. Facebook, Inc.*,
745 Fed. App'x. 8 (9th Cir. 2018) ....6

*Steinberg v. CVS Caremark Corp.*,
899 F. Supp. 2d 331 (E.D. Pa. 2012)....17

*Swartz v. Cartwright*,
No. 000059, 2002 WL 31379860 (Mass. Super. Jul. 19, 2002) ....14

*Sweat v. Houston Methodist Hospital*,
No. 24-CV-775, 2025 WL 2697111 (S.D. Tex. Sept. 22, 2025)....10

*Sweeney v. DeLuca*,
No. 042338, 2006 WL 936688 (Mass. Super. Mar. 16, 2006) ....21

*T.D. v. Piedmont HealthCare, Inc.*,
No. 1:23-CV-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ....17

*Town of Canton v. Comm'r of Massachusetts Highway Dep't*,
455 Mass. 783 (2010) ....14

*Trustees of Boston Univ. v. ASM Commc'ns, Inc.*,
33 F. Supp. 2d 66 (D. Mass. 1998)....23

*Tyler v. Michaels Stores, Inc.*,
840 F. Supp. 2d 438 (D. Mass. 2012)....22

*United States v. Councilman*,
418 F.3d 67 (1st Cir. 2005)....8

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ....9

*Vacca v. Bringham & Women's Hosp., Inc.*,
156 N.E.3d 800 (Mass. App. Ct. 2020) ....18

*Wayne Inv., Inc. v. Gulf Oil Corp.*,
739 F.2d 11 (1st Cir. 1984)....2, 3

*Webb v. Injured Workers Pharmacy, LLC*,
No. 22-CV-10797, 2023 WL 5938606 (D. Mass. Sept. 12, 2023)....19

*Weekes v. Cohen Cleary P.C.*,
723 F. Supp. 3d 97 (D. Mass. 2024)....18

*Wofse v. Horn*,
523 F. Supp. 3d 122 (D. Mass. 2021) ....................11

*Xinrong Zhuang v. Benvie*,
No. 14-CV-13076-IT, 2018 WL 10335959 (D. Mass. Feb. 9, 2018) ....................13

**Statutes**

18 U.S.C. § 2511 ....................7

42 U.S.C. § 1320d ....................10

G.L. c. 111, § 70E ....................5, 13, 14

Mass. Gen. Laws ch. 93A, § 2(a) ....................22

**Other Authorities**

45 C.F.R. § 102.3 ....................10

1 A.W. Scott & W.F. Fratcher, TRUSTS § 2.4 (4th ed. 1987) ....................20

RESTATEMENT (SECOND) OF TRUSTS § 2 comment b (1959) ....................20

# INTRODUCTION

Plaintiffs' Second Consolidated Amended Complaint ("SCAC") again fails to cure the pleading deficiencies of their Electronic Communications Privacy Act ("ECPA") claim and are insufficient to trigger application of the crime-tort exception.

Plaintiffs continue to allege in conclusory terms that Defendants (collectively, "UMass Memorial"), a non-profit health care organization, intercepted its patients' communications for the primary purpose of committing criminal and tortious acts, including alleged violations of the Health Insurance Portability and Accountability Act ("HIPAA"), as well as other Massachusetts privacy statutes and common law torts. SCAC ¶ 384. However, the allegations in this case remain those concerning UMass Memorial's *public* website and mere navigation *to* the patient portal. Critically, the SCAC does not plausibly allege that *any* of Plaintiffs' medical records, treatments, test results, physician notes, or substantive communications with healthcare providers were ever disclosed. Indeed, Plaintiffs' allegations concerning their use of the website and the limited browsing history information purportedly disclosed remain unchanged. With respect to UMass Memorial, the factual allegations also remain materially unchanged. Plaintiffs instead have liberally included the word "purposeful" and "purposefully" throughout the SCAC, but the addition of these conclusory terms are not well pled factual allegations and does not change the fact that the SCAC fails to support a reasonable inference that UMass Memorial ever purposefully committed acts in violation of HIPAA or to invade Plaintiffs' privacy. As a result, the crime-tort exception is inapplicable and Plaintiffs' ECPA claim fails.

Plaintiffs' state law claims are also inadequately pled and should be dismissed for the reasons set forth further below.

## I. THE SECOND CONSOLIDATED AMENDED COMPLAINT

UMass Memorial is "the largest health care system in Central Massachusetts." SCAC ¶ 11. UMass Memorial has several public websites and allows anyone, patients and non-patients alike, to search its websites for information regarding UMass Memorial's services, physicians, and locations. *See id.* ¶¶ 40–43. UMass Memorial also has a secure patient portal that users can access after entering log-in credentials. *See id.* ¶¶ 27, 44. Plaintiffs make generic allegations that information transmitted regarding a user's browsing on UMass Memorial's *public* webpages, including transmission of IP addresses and browser fingerprints, amounts to the transmission of personal health information ("PHI") and individually identifiably health information ("IIHI") to Facebook and/or Google. *See, e.g.*, *id.* ¶¶ 22–23, 27–32. And while Plaintiffs allege that they used UMass Memorial's patient portal, they do not plausibly allege facts that any of their medical records, details of scheduled medical appointments, lab results or substantive communications on the patient portal were ever transmitted to Meta, Google or any other third-party—because they were not. *Id.* ¶ 24. Plaintiffs allege in a single paragraph of the 505-paragraph Second Consolidated Amended Complaint "[o]n information and belief" that UMass Memorial "installed tracking technologies inside of its patient portal," *id.* ¶ 33, but provide no facts upon which the belief is founded. Such conclusory allegations should be provided no weight and can be disregarded by the Court in considering this motion to dismiss. *See Wayne Inv., Inc. v. Gulf Oil Corp.,* 739 F.2d 11, 13–14 (1st Cir.1984) (allegations based upon "information and belief" do not satisfy the particularity requirement unless the complaint sets forth the facts upon which the belief is founded, even if the supporting facts are "peculiarly within the knowledge of the opposing party.").

The allegations regarding Plaintiffs John Doe, Lisa Colleton, and Janice Progin themselves are limited to the fact that they were or are patients of UMass Memorial and used its

public website and patient portal. *Id.* ¶¶ 22–31. Plaintiffs do not allege any specific facts[1] regarding any actual information of theirs that they contend has been transmitted to Google or Facebook, but instead rely on generic allegations that they used the website to search for medical information and/or information about their doctors on the website *Id.* The SCAC claims that Paragraphs 237–39 provide "an explanation for how Defendants deployed tracking technologies to intercept patients' ***navigation to*** the patient portal and patient portal mobile app for marketing and commercial purposes, and how those intercepted communications were disclosed…." *Id.* ¶ 24 (emphasis added). Yet all those paragraphs set forth are an alleged transmission of a button click to a myChart link on the main landing page. *Id.* ¶ 237.

Plaintiffs make conclusory allegations that "Defendants' primary purpose in intercepting their patients' communications on their Web Properties was to disclose the contents of those communications, including PII/PHI, to third-party advertisers, including Facebook and Google." SCAC ¶ 46. In an attempt to save their claim, Plaintiffs have added a new section purporting to explain UMass Memorial's "purpose," *see id.* ¶¶ 84–108, which repackages, but does not substantively change, their prior allegations that the technologies were allegedly deployed by UMass Memorial to facilitate advertising. Plaintiffs also liberally added the words "purposeful" and "purposefully" throughout the SCAC. *See, e.g.,* ¶¶ 149, 185. Plaintiffs further make conclusory, unsupported allegations that "Defendants intercepted and disclosed [Progin's] confidential and PII/PHI . . . including information about her patient status, messages she sent her doctors, details about her medical condition," etc., yet the SCAC provides no allegations as to how that could have possibly occurred—because it could not have. *Id.* ¶ 25. Instead, the SCAC adds copious, irrelevant images of advertisements, technical explanations, and

[1] Plaintiff Doe alleges he "communicated with Defendants regarding a spinal injury" but fails to state how he communicated such or how that communication could be intercepted. SCAC ¶ 242.

descriptions and infographics about "data brokers." *See id.* ¶¶ 61–83, 165–171, 188–192, 317–344. Conspicuously, Plaintiffs fail to show a specific advertisement any of them actually received that related to their purported, particularized activity on UMass Memorial's website. Nor can it reasonably be inferred that because UMass Memorial ran advertisements on Facebook and Google about services it offered that those advertisements were targeted in any way to any user's activity of UMass Memorial's website. Plaintiffs also make conclusory allegations relating to purported harm, including generic allegations that they have or will suffer damages, including "statutory, actual, compensatory, consequential, punitive, and nominal damages." *See id.* at 145. They plead no facts to support these allegations.

Plaintiffs assert seven causes of action against UMass Memorial (although two counts are erroneously both labeled count 5) for (1) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*; (2) violation of the privacy statute M.G.L. c. 214, § 1B (3); breach of fiduciary duty and/or common law duty of confidentiality; (4) breach of implied contract; (5) unjust enrichment; (6) violation of M.G.L. c. 93A for Unfair and Deceptive Acts or Practices in the Commonwealth of Massachusetts; and (7) negligence. Plaintiffs' claims are insufficiently pled and fail as a matter of law.

## II. STANDARD OF REVIEW

UMass Memorial moves to dismiss the Second Consolidated Amended Complaint for a failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss, the complaint must be both "plausible on its face" and suggest "more than a sheer possibility that a defendant has acted unlawfully." *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528 (1st Cir. 2023) (citations omitted). "To implement the plausibility standard, an inquiring court first must separate wheat from chaff; that is, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal

allegations (which need not be credited)." *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

## III. ARGUMENT

### A. Plaintiffs' Claims Fail Because No Protected Health Information Was Disclosed.

Plaintiffs' claims all rest on the fundamentally flawed and insufficiently pled assumption that the information allegedly disclosed to third parties is protected health information under HIPAA. SCAC ¶ 5. However, the *Becerra* court explained that an individual's browsing of a public website fails as a matter of law to relate to the health or condition of an individual under the HIPAA Privacy Rule. The court found that information that is merely "indicative" of PHI, such as browsing activity on a healthcare public website, is not sufficient to meet the definition of IIHI. *See Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 801 (N.D. Tex. 2024).

The federal definition of IIHI is instructive here to illustrate the shortcomings of Plaintiffs' complaint:

> any information, including demographic information collected from an individual, that—(A) is created or received by a health care provider, health plan, employer, or health care clearinghouse; and (B) **relates to** the past, present, or future physical or mental health or condition of an individual, **the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual**, and—(i) identifies the individual; or (ii) **with respect to which there is a reasonable basis to believe that the information can be used to identify the individual**.

42 U.S.C. § 1320d(6). (emphasis added). As the *Becerra* court explained, without knowing a user's subjective intent for their visit to a public website, which could include searching regarding their own condition, a family member's condition, for a book report, for litigation, or

for entirely other reasons, the metadata resulting from that visit "could never identify that individual's PHI. Simply put, **Identity** (Person A) + **Query** (Condition B) ≠ **IIHI** (Person A has Condition B)." *See Becerra*, 738 F. Supp. 3d at 803 (emphasis in original). Other courts have similarly found that data related to a user browsing a health care entity's public website does not reveal medical information protected under HIPAA.[2] *See K.L. v. Legacy Health*, No. 3:23-CV-1886-SI, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024) (finding "generic search queries" created during public website browsing are not PHI); *Maghoney v. Dotdash Meredith, Inc.*, No. 24-CV-2394, 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026) ("nothing about Plaintiff's searches indicates those searches were tied to his personal medical history."); *Smith v. Facebook, Inc.*, 745 Fed. App'x. 8, 9 (9th Cir. 2018) ("The data show only that Plaintiffs searched and viewed publicly available health information that cannot, in and of itself, reveal details of an individual's health status or medical history" and "Put simply, the connection between a person's browsing history and his or her own state of health is too tenuous to support Plaintiff's' contention that the disclosure requirements of HIPAA or section 1798.91 apply."). Plaintiffs' allegations amount to nothing more than this precise scenario: a user browsing UMass Memorial's public website, which by itself reveals nothing regarding the user's personal medical information. Therefore, *Becerra* and other courts' findings that the information at issue does not qualify as IIHI proves fatal for all of Plaintiffs' causes of action.

---

[2] UMass Memorial recognizes that the court in *Doe v. Tenet Healthcare Corp.* ("*Tenet*"*)*, allowed claims for negligence and invasion of privacy to survive a motion to dismiss. 731 F. Supp. 3d 142, 152 (D. Mass. 2024). However, the factual allegations in *Tenet* included allegations of the plaintiff's appointment times and locations being disclosed—which are materially different from Plaintiffs' allegations and render the analysis in that decision inapposite. *Id.* at 151–52. Moreover, that decision did not assess an ECPA claim and predated the *Becerra* decision. Numerous federal courts agree with *Becerra* on this point, as cited above. UMass Memorial submits that the *Becerra* decision more appropriately contextualizes the information at issue in this case and warrants dismissal of all Plaintiffs' claims.

### B. Plaintiffs' ECPA Claim Fails Because They Fail to Plead Facts That Defendants Purposefully Committed Any Criminal Or Tortious Acts.

As this Court previously held, because UMass Memorial was a party to the alleged electronic communications, Plaintiffs' ECPA claim cannot proceed unless they pleads facts supporting application of the crime-tort exception—facts they again fails to allege. *Progin v. UMass Mem'l Health Care, Inc.*, No. 25-CV-40003, 2026 WL 632770, at *4–5 (D. Mass. Mar. 6, 2026) (citing 18 U.S.C. § 2511(2)(d)). The statute provides: "It shall not be unlawful . . . to intercept a[n] electronic communication where . . . one of the parties to the communication has given prior consent to such interception unless such communication is intercepted *for the purpose of committing any criminal or tortious act* in violation of the Constitution or laws of the United States." *Cf. id.* at *4 (finding the "requirement that the acts be done for criminal and tortious purposes as required by the language of the statute. In other words, purpose is an essential element of ECPA, distinct from the minimal intent [of knowingness] required under HIPAA, and the [c]omplaint must therefore plead sufficient facts to satisfy this heightened intent requirement under ECPA.'") (emphasis added and internal citations omitted). The Court further held that "the facts related to individually identifiable health information are insufficient to support the conclusion that the Defendants purposefully 'accessed, contained, and disclosed' such information because they knew they had to in order to receive marketing benefits. *Cf.* [Am. Compl. ¶ 278]. Nor do the facts support the inference that Defendants purposefully invaded Plaintiffs' privacy." *Id.* at *5 n.3. Plaintiffs' new allegations do not cure the deficiencies the Court identified or plausibly satisfy that standard.[3]

---

[3] UMass Memorial maintains that the crime-tort exception requires a specific intent to commit a crime or tort, as other Courts have held, including within this district. *See Goulart v. Cape Cod Healthcare, Inc.,* No. 25-CV-10445-RGS, 2025 WL 1745732, at *3 (D. Mass. June 24, 2025); *Doe v. Lawrence Gen. Hosp.*, No. 25-CV-10081-NMG, 2025 WL 2808055 (D. Mass. Aug. 29, 2025), *report and recommendation adopted in relevant part*, 2025 WL 2807673 at *11 (D. Mass.

As with the First Consolidated Amended Complaint, Plaintiffs point to the following acts that they claims trigger the crime-tort exception: Defendants purported violation of "HIPAA and the Massachusetts tort causes of action set forth in th[e] complaint (including the Massachusetts Right to Privacy Act)." SCAC ¶ 384. But as this Court already explained, the facts related to individually identifiable health information ("IIHI"), which remain unchanged, are insufficient "to support the conclusion that Defendants purposefully 'accessed, obtained, and disclosed' such information because they knew they had to in order to receive marketing benefits" or "purposefully invaded Plaintiffs' privacy." *Progin*, 2026 WL 632770, at *5 n.3. Plaintiffs' substantive allegations related to IIHI are materially unchanged, and their repeated use of the word "purposefully" is conclusory and cannot support a reasonable inference of purposeful criminal or tortious conduct.

Plaintiffs' crime-tort exception theory therefore fails because the Second Consolidated Amended Complaint does not establish—or support a reasonable inference—that any IIHI was ever recorded or disclosed to third parties. UMass Memorial denies that the browsing history information at issue from the public website is IIHI and further denies that it ever knowingly disclosed any patient's IIHI. *See Becerra*, 738 F. Supp. 3d at 801–04 (information that is merely "indicative" of PHI, such as browsing activity on a healthcare public website, is not sufficient to meet the definition of IIHI); *K.L. v. Legacy Health*, 2024 WL 4794657, at *4 (D. Or. Nov. 14,

---

Sept. 30, 2025) ("As the Supreme Court has explained, there is a hierarchy of mens rea requirements, with "purpose" at the top. Thus, "'purpose' corresponds loosely with the common-law concept of specific intent"); *Doe v. Genesis Health Sys.*, No. 4:23-CV-04209-JEH, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025) ("the crime or tort exception require a specific intent that Defendant knew that its acts were in violation of HIPAA"). Further, because the ECPA is a criminal statue, the rule of lenity requires that a "grievous ambiguity in a penal statute [be] resolved in the defendant's favor." *United States v. Councilman*, 418 F.3d 67, 83 (1st Cir. 2005). However, even under this Court's stated construction of the exception, Plaintiffs have not adequately pled facts establishing the exception.

2024) (finding "generic search queries" created during public website browsing are not PHI); *see also Johnson v. Duxbury, Massachusetts,* 931 F.3d 102, 107 (1st Cir. 2019) (affirming the third party doctrine and holding "the United States Supreme Court has 'held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties, . . . even if the information is revealed on the assumption that it will be used only for a limited purpose.'") (quoting *Carpenter v. United States*, 585 U.S. 296, 308 (2018) (internal quotation marks omitted)); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("Internet users have no expectation of privacy in . . . the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information.").

But even *assuming arguendo* that HIPAA may be implicated when a person is on UMass Memorial's public website, Plaintiffs' argument ignores the critical distinction between a party's conscious purpose or goal and the mere alleged effect of its action, with only the former (a high bar to plead and prove) triggering the exception. *See Progin.*, 2026 WL 632770, at *4. ("It is not enough that a crime or tort [may have been] a . . . side effect of the interception.") (quoting *Doe v. Lawrence Gen. Hosp.*, 2025 WL 2808055, at *11; *Allen v. Quicken Loans Inc.*, No. 17-CV-12352, 2018 WL 5874088, at *6 (D.N.J. Nov. 9, 2018) (rejecting plaintiff's argument that a mere alleged violation of another statute gives rise to liability under the crime-tort exception as contrary to the plain language of the statute). As the Supreme Court has held, "[t]he law of mens rea offers three basic choices. Purpose is the most culpable level in the standard mental-state hierarchy, and the hardest to prove. A person acts purposefully when he 'consciously desires' a result." *Counterman v. Colorado*, 600 U.S. 66, 78–79 (2023). The fact that there are no well pled allegations that UMass Memorial deployed the technologies inside the secure patient portal and

is only alleged to have used the tools on the public website that is accessible by any member of the public, supports an inference that UMass Memorial's purpose was *not* to share IIHI with Google and Meta. *Lawrence Gen. Hosp.,* 2025 WL 2808055, at *17. Here, Plaintiffs have failed to plead the heightened intent requirement to trigger the crime-tort exception.

Plaintiffs' attempt to use an alleged HIPAA violation as the predicate to trigger the exception further ignores that conflating the ECPA and HIPAA violations would have the perverse effect of undermining HIPAA's own enforcement scheme. *See Roberts v. Charlotte Mecklenburg Hosp. Auth.,* No. 3:24-CV-00382, 2025 WL 880538, at *3 n.1 (W.D.N.C. Mar. 20, 2025) (dismissing ECPA claim as an "attempted end run around HIPAA's limitations to seek relief for the same alleged harm"); *Sweat v. Houston Methodist Hospital*, No. 24-CV-775, 2025 WL 2697111, at *5 n.5 (S.D. Tex. Sept. 22, 2025) (recognizing the merit of this argument).

Specifically, HIPAA allows no private right of action. *See Acara v. Banks,* 470 F.3d 569, 571 (5th Cir. 2006) ("HIPAA does not contain any express language conferring privacy rights upon a specific class of individuals."). Instead, Congress elected to vest enforcement power with the Department of Health and Human Services and imposed limits on what remedies the agency may seek. *See* 42 U.S.C. §§ 1320d-5–1320d-6. But if the ECPA becomes a back door to civil liability based on a purported HIPAA violation, then hospitals will be mired in the exact kind of private litigation that Congress meant to avoid. In short, Plaintiffs' theory of ECPA liability runs contrary to the regulatory scheme of HIPAA, imposing limitless civil liability without regard for the degree of culpability or whether the violation was rectified.[4]

The crime-tort exception is also inapplicable here, since the alleged purpose for deploying web analytics technology on the public website was to facilitate digital marketing—

---

[4] Congress also established a tiered regulatory scheme to assess penalties based on the level of culpability and whether the healthcare provider rectified the issue. *See* 45 C.F.R. § 102.3.

which is not a crime or tort. *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (finding the "apparent purpose" of hospital system collecting information via third party software was "for market research and consumer analysis solely for the benefit of [the hospital] in better reaching and serving its patients."); *Rodriguez v. Fastmed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 364 (E.D.N.C. 2024) (dismissing ECPA claim because allegations that "[defendant] intercepted and disclosed [plaintiff's] information to Meta for commercial use or gain [] does not equate to [defendant] intercepting and disclosing [plaintiff's] information 'for the purpose of committing any criminal or tortious act'"); *Cohen v. Casper Sleep Inc.*, No. 17-CV-9325, 2018 WL 3392877, at *3–4 (S.D.N.Y. Jul. 12, 2018) (same); *Nienaber v. Overlake Hospital Medical Ctr.*, No. 2:23-CV-01159-TL, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (same).

### C. Plaintiffs Fail To State A Privacy Claim.

Plaintiffs fail to plausibly allege violations of two Massachusetts privacy statutes: (1) a violation of G.L. c. 214, §1B and (2) a violation of G.L. c. 111, § 70 E.

#### 1. Plaintiffs Fail To Plead A Claim For Statutory Invasion Of Privacy.

G.L. c. 214, § 1B, provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." Whether based on intrusion upon seclusion or public disclosure of private facts, "a plaintiff must prove that there was 1) a gathering and dissemination of facts of a private nature that 2) resulted in an unreasonable, substantial or serious interference with his privacy." *Branyan v. Southwest Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015). The disclosed facts must be "of a highly personal or intimate nature" and the invasion must be "both unreasonable and substantial or serious." *Id.* (citations omitted); *Wofse v. Horn*, 523 F. Supp. 3d 122, 137 (D. Mass. 2021) (citation omitted).

Here, Plaintiffs fail to identify *any* particular communication, test result, or medical

diagnosis that were allegedly disclosed, and therefore do not allege facts sufficient to plausibly allege above a speculative level that any facts of a "highly personal or intimate nature" were disclosed. *Twombly*, 550 U.S. at 545.

Furthermore, mere public browsing data is not information that is "highly personal or intimate in nature." Allegations regarding analytics technologies collecting public website user data are so ubiquitous that Courts have found that "*a reasonable user should expect as much*." *See Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at *7 (N.D. Cal. Jul. 1, 2024) (emphasis in original); *B.K. v. Eisenhower Medical Center*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024) (dismissing privacy claims because disclosure of "routine medical searches and inquiries" was not "highly offensive"); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (explaining "data collection and disclosure to third parties is not a 'highly offensive' intrusion of privacy.") (collecting cases); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding disclosure of unique device identifier number, personal data, and geolocation information "does not constitute an egregious breach of social norms.") (citations omitted); *Koppel v. Moses*, No. 20-11479-LTS, 2020 WL 6292871, at *8–9 (D. Mass. Oct. 27, 2020) (dismissing invasion of privacy claim where plaintiff had "not alleged the disclosure of any private facts"). This is true even when the searches include medical information. *See Maghoney*, 2026 WL 497402, at *5.

Plaintiffs fail to allege the disclosure of any highly personal or intimate private facts; therefore, their privacy claim should be dismissed.

### 2. Plaintiffs Fail To Plead A Claim For Invasion of Privacy Under G.L. c. 111, § 70E.

G.L. c. 111, § 70E is known as the Massachusetts "Patients' Bill of Rights." *Darviris v. Petros*, 442 Mass. 274, 275 (2004). It provides that every patient or resident of a Massachusetts

health care facility shall have the right "to confidentiality of all records and communications to the extent provided by law." G.L. c. 111, § 70E(b). This cause of action fails for two reasons: (1) there is no private cause of action under the statute; and (2) the browsing history data involved in this case are not medical records protected under the statute.

First, the statute does not provide a private cause of action but instead requires all causes of actions under it to be brought as a medical malpractice claim. Massachusetts courts are "reluctant to infer a private cause of action from a statute in the absence of some indication from the Legislature supporting such an inference." *Loffredo v. Center for Addictive Behaviors*, 426 Mass. 541, 544 (1998). The Massachusetts legislature was clear that causes of action under the Patients' Bill of Rights be brought as medical malpractice claims. The statute provides that, "[a]ny person whose rights under this section are violated may bring, in addition to any other action allowed by law or regulation, a civil action under sections sixty B to sixty E, inclusive, of chapter two hundred and thirty-one." G. L. c. 111, § 70E. In turn, G.L. c. 231, §§ 60B–60E contain provisions regarding medical malpractice claims. This means that "any claim for violation of the Massachusetts Patients' Bill of Rights is to be brought as a medical malpractice claim." *See Xinrong Zhuang v. Benvie*, No. 14-CV-13076-IT, 2018 WL 10335959, at *5 (D. Mass. Feb. 9, 2018). Because there is no private cause of action under the statute other than for medical malpractice claims, Plaintiffs' claim must be dismissed.

Second, the statute does not protect the public browsing history data at issue. G.L. c. 111, § 70E(b) provides that every patient or resident of a Massachusetts health care facility shall have the right "to confidentiality of all records and communications to the extent provided by law." Plaintiffs fail to plausibly allege that any of their communications with doctors were ever disclosed or that any of their medical records, the only kinds of records protected by the Act,

were disclosed. The statute explains that confidentiality is afforded to "***records relating to diagnosis, treatment, or other services provided to any person*** …." G. L. c. 111, § 70E (emphasis added). Similarly, in the same chapter, a section regarding hospital record retention provides that hospitals "shall keep ***records of the treatment of the cases under their care including the medical history and nurses' notes***…." G. L. c. 111, § 70 (emphasis added). These provisions show that confidentiality is only afforded to medical records regarding a patient's actual diagnosis, treatment, or medical history, none of which are alleged to be disclosed in this case. *Chin v. Merriot*, 470 Mass. 527, 537 (2015) ("Where possible, we seek to harmonize the provisions of a statute with related provisions that are part of the same statutory scheme 'so as to give full effect to the expressed intent of the Legislature.'") (citation omitted); *Town of Canton v. Comm'r of Massachusetts Highway Dep't*, 455 Mass. 783, 791 (2010) ("We construe statutes that relate to the same subject matter as a harmonious whole and avoid absurd results.") (citations omitted).

Courts have similarly understood the term "records" to refer specifically to medical records. *See Swartz v. Cartwright*, No. 000059, 2002 WL 31379860, at *1 (Mass. Super. Jul. 19, 2002) ("G.L. c. 111, § 70E is not a blanket prohibition against disclosure of ***medical records*** but rather limits disclosure 'to the extent permitted by law ….'") (emphasis added); *R. M. W. by Wolfe v. Homewood Suites by Hilton Mt. Laurel*, No. 09-CV-400 (JHR/AMD), 2012 WL 13186031, at *11 (D.N.J. Jun. 28, 2012) ("Massachusetts does *not* recognize a physician-patient privilege … but does hold that ***medical records*** are confidential.") (emphasis added, citations omitted); *Alberts v. Devine*, 395 Mass. 59, 67 (1985) ("In Massachusetts, the Legislature has demonstrated its recognition of a policy favoring confidentiality of medical facts by enacting G.L. c. 111, §§ 70 and 70E, to limit the availability of ***hospital records***.") (emphasis added).

Plaintiffs do not plausibly allege that any of their medical records were disclosed in this case. Therefore, Plaintiffs' claim for a violation of G.L. c. 111, § 70E should be dismissed.

### D. Plaintiffs' Negligence Claim Fails For Lack Of Duty, Breach, And Damages.

In order to state a viable claim for negligence under Massachusetts law, Plaintiffs must allege facts establishing: "(1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury." *Nelson v. Massachusetts Port Auth.*, 55 Mass. App. Ct. 433, 435 (2002) (citation omitted).

#### 1. Plaintiffs' Negligence Claim Fails For Lack Of Duty And Breach.

The purported source of UMass Memorial's alleged duty to protect Plaintiffs' browsing data on a public website is unclear. To the extent Plaintiffs allege that UMass Memorial's duty originates from statute, whether it be created by HIPAA, Massachusetts privacy statutes, or any other statute, Plaintiffs' claim must be dismissed because Massachusetts does not recognize negligence per se causes of action. *See Roe No. 1 v. Children's Hosp. Med. Ctr.*, 469 Mass. 710, 719 (2014) ("As an initial matter, and as the judge correctly noted, the mere existence of a statute or regulation does not automatically give rise to a legal duty for the purpose of a negligence action.") (citation omitted); *see also Juliano v. Simpson*, 461 Mass. 527, 532 (2012).

To the extent Plaintiffs allege that UMass Memorial's duty originates from a fiduciary duty owed by UMass Memorial, Plaintiffs' negligence claim is duplicative of their fiduciary duty claim and should be dismissed. *See Clark v. Rowe*, 428 Mass. 339, 345 (1998) (dismissing breach of fiduciary duty claim as duplicative of a malpractice claim); *Jordan's Furniture, Inc. v. Carter & Burgess, Inc.*, No. 16-P-728, 2017 WL 3393465, at *3 (Mass. App. 2017) (finding no error in trial judge dismissing contract claims as duplicative of negligence claim because they were all "based on the same core facts"); *Renzulli v. Sullivan*, No. 22 MISC 000564 (KTS), 2024 WL 1903573, at *10 (Mass. Land Ct. Apr. 26, 2024) (instructing plaintiff not to plead a

negligence counterclaim because it was "duplicative of the breach of fiduciary duty claim"). Even if it was not duplicative, it would fail for the reasons stated in § III.F.

Moreover, Plaintiffs do not plausibly allege the breach of any duty. Plaintiffs allege the breached duty at issue is "a duty . . . to exercise reasonable care to secure, safeguard, and protect their patient communications and highly sensitive PHI." SCAC ¶ 498. PHI and IIHI are terms of art defined by HIPAA, and as explained *infra* in § III.A, the public browsing data at issue does not satisfy the statutory definitions of those terms of art. Therefore, Plaintiffs failed to allege facts showing any plausible breach of a duty to protect PHI and IIHI. *See Legacy Health*, 2024 WL 4794657 (dismissing plaintiff's negligence claim regarding the public website, under Oregon law, finding that the plaintiff only sufficiently pled that defendant owed plaintiff a duty with regards to her PHI, which did not include the public website browsing activity at issue).

**2. Plaintiffs Fail To Plead Cognizable Damages**.

Plaintiffs' negligence claim also fails because they fail to plead any facts to show how they were actually harmed by the alleged conduct. Plaintiffs' complaint includes multiple conclusory allegations of damages including "compensatory damages (including damages to compensate for the injuries described in Section J, supra)," *see* SCAC ¶ 505, yet SCAC's "Section J" does not detail injuries of the Plaintiffs, *see id.* ¶¶ 290–93. Elsewhere Plaintiffs allege "Defendants have deprived Plaintiffs and the Class Members of the economic value of their sensitive medical information." *Id.* ¶ 315. Plaintiffs, however, must show actual loss as a necessary element of a negligence claim; vague and generic claims alleging violation of property rights are insufficient. *See Portier v. NEO Tech. Sols.*, No. 3:17-CV-30111-TSH, 2019 WL 7946103, at *15 (D. Mass. Dec. 31, 2019), *report and recommendation adopted*, No. 3:17-CV-30111, 2020 WL 877035 (D. Mass. Jan. 30, 2020) (citation omitted). Further, nominal damages are not recoverable under a negligence claim. *See Donovan v. Philip Morris USA, Inc.*, 455

Mass. 215, 222 (2009) ("[T]here can be no invasion of the rights of another unless legal damage is caused, and for that reason nominal damages cannot be recovered.").

Other than creating a list of alleged damages, Plaintiffs provide no factual allegations supporting these proposed damages, and their conclusory assertions should be disregarded. *See A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 81 (1st Cir. 2013) ("When allegations, though disguised as factual, are so threadbare that they omit any meaningful factual content, we will treat them as what they are: naked conclusions.") (citations omitted). Indeed, in assessing similar allegations many courts have found that plaintiffs have no actionable damages for browsing history information that may be transmitted when searching a health care entity's public website or clicking a button to log in to a patient portal. *See T.D. v. Piedmont HealthCare, Inc.*, No. 1:23-CV-5416-TWT, 2024 WL 3972984, at **3–4 (N.D. Ga. Aug. 28, 2024) ("This is not a case where Plaintiff's personal information was stolen by criminal hackers with malicious intent… The better view from other courts around the country is that these types of damage claims are not actionable."); *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 339–40 (E.D. Pa. 2012) (finding a plaintiff "cannot sustain a finding of injury without a specific showing that the plaintiff has sustained a resulting loss.") (collecting cases).

Finally, any allegations regarding merely the risk of future harm are insufficient as a matter of law. *Donovan*, 455 Mass. at 223 ("A plaintiff is entitled to compensation for all damages that reasonably are to be expected to follow, but not to those that possibly may follow.") (citation omitted). Courts have also rejected loss of diminution of value of personal information damages theories where, like here, the plaintiff fails to allege "the existence of a market for the personal information and an impairment of the ability to participate in that market." *Gardiner v. Walmart, Inc.*, No. 20-CV-04618-JSW, 2021 WL 4992539, at *3 (N.D. Cal. Jul. 28, 2021).

### E. Plaintiffs Fail To Allege Mutual Assent And Consideration Necessary For Their Implied Contract Claim.

Under Massachusetts law, breach of contract and breach of implied contract claims largely have the same elements. *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005). A valid contract requires offer, acceptance, and consideration. *Josef Gartner USA LP v. Consigli Const. Co., Inc.*, No. 10-40072-FDS, 2011 WL 2417137, at *4 (D. Mass. Jun. 10, 2011) (citations omitted). If the parties do not agree on the essential elements of the contract, there can be no contract. *Id.* (affirming dismissal of implied contract claim for a "failure to reach agreement on the basic terms of the contract.").

Plaintiffs allege they were required to disclose their "PII/PHI" to UMass Memorial "as part of the physician-patient relationship," and as a result they and UMass Memorial had an implied contract for the protection said information. SCAC ¶ 440. As explained *supra* § III.A, the information at issue is not protected by HIPAA, not shared within the context of the provision of medical care, and is merely browsing information. There is no requirement that anyone use UMass Memorial's public website as a condition of receiving healthcare services.

Plaintiffs fail to plead any facts showing that UMass Memorial assented to the protection of Plaintiffs' public website browsing data. Contract formation "requires a bargain in which there is manifestation of mutual assent to the exchange." *Vacca v. Bringham & Women's Hosp., Inc.*, 156 N.E.3d 800, 806 (Mass. App. Ct. 2020) (internal citations and quotations omitted). There is a lack of mutual assent where the parties do not discuss the need to safeguard information. *See Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 104 (D. Mass. 2024) (dismissing breach of implied contract claim where no allegations that parties "discussed the manner of safeguarding the PII or PHI or that plaintiff had a particular concern about disclosing that information."). Plaintiffs do not allege that UMass Memorial agreed to protect Plaintiffs' public browsing data,

and mere belief by the Plaintiffs is insufficient as a matter of law to create a binding contract. *See Webb v. Injured Workers Pharmacy, LLC*, No. 22-CV-10797, 2023 WL 5938606, at *3 (D. Mass. Sept. 12, 2023) (finding plaintiff's good faith belief that their PII would be protected as insufficient because there was "no allegation that [Defendant] agreed – explicitly or implicitly – to provide such protection."); *In re Mednax Servs. Customer Data Sec. Breach Litig,* 603 F. Supp. 3d 1183, 1221 (S.D. Fla. 2022) (dismissing claim where "plaintiffs allege[d] no invitation or solicitation by Defendants indicating that Defendants implicitly assented to secure their PHI and PII in exchange for remuneration"); *J.R. v. Walgreens Boots Alliance, Inc.*, No. 20-1767, 2021 WL 4859603, at *5 (4th Cir. Oct. 19, 2021). As such, Plaintiffs fail to plead facts sufficient to show assent by UMass Memorial to protect their public browsing data.

Plaintiffs also fail to plead the existence of any consideration. A purported promise for UMass Memorial to protect PII/PHI is not valid consideration given that it is a pre-existing legal obligation under HIPAA. *See Gravallese v. Massachusetts Parole Bd.*, No. CA 945777, 1995 WL 808813, at *2 (Mass. Super. Apr. 19, 1995) (a promise to perform a pre-existing duty is not valid consideration); *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) ("Because the Defendants are required by law to adhere to HIPAA without receiving any consideration from the Plaintiff [], these provisions cannot create contractual obligations.").

### F. Plaintiffs Fail To Plead A Fiduciary Relationship Between UMass Memorial And Plaintiffs With Regards To Their Public Website Browsing Data.

Plaintiffs fail to plausibly allege the existence of a fiduciary relationship between themselves and UMass Memorial with regards to their browsing the public website. The elements of a breach of fiduciary duty claim include: (1) existence of a fiduciary duty based upon the relationship of the parties; (2) breach of the fiduciary duty; (3) damages; and (4) a causal connection between breach of fiduciary duty and damages. *Cape Cod ASC, LLC v. Bentivegna*,

No. 2008457, 2010 WL 3038824, at *3 (Mass. Super. Jul. 1, 2010) (citation omitted). However, fiduciary relationships have boundaries. The central tenet of a fiduciary relationship is the "duty on the part of the fiduciary to act for the benefit of the other party to the relation as to matters ***within the scope of the relation***." 1 A.W. Scott & W.F. Fratcher, TRUSTS § 2.4 (4th ed. 1987) (emphasis added); *see* RESTATEMENT (SECOND) OF TRUSTS § 2 comment b (1959) (same).

Plaintiffs allege that the fiduciary relationship between them and UMass Memorial is a physician/patient relationship. *See* SCAC ¶ 423. Accepting that allegation as true, Massachusetts courts have recognized limits to such fiduciary relationships. Fiduciaries are only held to a higher standard "as to matters within the scope of the fiduciary relationship," and even in a physician-patient relationship, "the scope of the fiduciary duty is defined by the incidents and undertakings of the defendant ***as a physician***." *Korper v. Weinstein,* 57 Mass. App. Ct. 433, 437–38 (2003) (emphasis added). The *Korper* court found that a plaintiff's complaints against her doctor based on their romantic relationship, instead of his provision of physician services to her as a patient, were outside the scope of their fiduciary relationship. *Id.* at 436–38. The court "decline[d] the plaintiff's invitation to expand the scope of the fiduciary duty a doctor owes a patient to include conduct beyond the context of medical treatment[.]" *Id.* at 438 n. 11.

As in *Korper*, the context of the Plaintiffs' relationship with UMass Memorial when they used the public website is outside the scope of the alleged physician/patient fiduciary relationship. Public website browsing history data are not medical records and do not contain IIHI as protected by HIPAA. *See supra* § III.A. There is no physician providing medical advice or treatment—it is an informational public website that the Plaintiffs were browsing. Patients and non-patients alike may browse the public website. As such, it would be inconsistent to afford higher fiduciary duty protections to some visitors to the public website—namely patients—and

not other members of the public when UMass Memorial does not know who any of the browsers to its public website are nor the context for their visit to the website. Plaintiffs' allegations fall outside the scope of any alleged patient/physician relationship, and Plaintiffs failed to plausibly allege the breach of a fiduciary relationship between them and UMass Memorial.

### G. Plaintiffs' Unjust Enrichment Fails For Lack Of Reasonable Expectation Of Compensation.

Under Massachusetts law, a claim for unjust enrichment includes the following elements: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under circumstances which make such acceptance or retention inequitable." *Sweeney v. DeLuca*, No. 042338, 2006 WL 936688, at *8 (Mass. Super. Mar. 16, 2006) (citation omitted). The fact that the Defendant received any benefit is not enough, the benefit received must be *unjust* which "turns on the reasonable expectations of the parties." *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013) (citations omitted). "Usually, this means that the parties were dealing with each other in such a way, or in such circumstances, that reasonable people would expect payment by the defendant to the plaintiff for some benefit conferred by the plaintiff on the defendant." *Brookridge Funding Corp. v. Aquamarine, Inc.*, 675 F. Supp. 2d 227, 234–35 (D. Mass. 2009).

Plaintiffs' unjust enrichment claim fails because they fail to allege that the reasonable expectation of the parties was for UMass Memorial to compensate Plaintiffs for the collection of their public browsing data. Plaintiffs makes no factual allegations that, at the time they were browsing the free UMass Memorial websites, they expected to receive payment from UMass Memorial for their public browsing data. Nor would there be any reasonable expectation that browsing UMass Memorial's free websites would somehow result in compensation for the browser. Similar allegations and theories levied against other healthcare providers have been

rejected by other courts at the motion to dismiss stage. *See e.g.*, *Allen v. Novant Health, Inc.*, No. 1:22-CV-697, 2023 WL 5486240, at *1, *3 (M.D.N.C. Aug. 24, 2023); *In re Nickelodeon Consumer Priv. Lit.*, No. 12-CV-07829, 2014 WL 3012873, at *19 (D.N.J. Jul. 2, 2014) (dismissing unjust enrichment claim alleging unauthorized collection of information about plaintiff's browsing activities because there were no allegations that plaintiff should have expected renumeration); *Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438, 451 (D. Mass. 2012) (dismissing unjust enrichment claim because plaintiff did not allege that a reasonable person would expect payment for PII); *ARK Nat'l Holdings LLC v. We Campaign LLC*, No. 21-CV-10893, 2021 WL 5918682, at *5 n.2 (D. Mass. Dec. 15, 2021) (same). Plaintiffs' unjust enrichment claim should similarly be dismissed for failure to state a viable claim.

### H. Plaintiffs' Chapter 93A Claims Fails Because UMass Memorial Is A Nonprofit Engaged In Customary Business For Its Charitable Purpose.

Chapter 93A makes it unlawful to engage in "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). To state a claim under Chapter 93A, Plaintiffs must allege "facts sufficient to establish four elements: first, that the defendant has committed an unfair or deceptive act or practice; second, that the unfair or deceptive act or practice occurred 'in the conduct of any trade or commerce;' third, that the plaintiff suffered an injury; and fourth, that the defendant's unfair or deceptive conduct was a cause of the injury." *Rafferty v. Merck & Co.*, 479 Mass. 141, 161 (2018) (citations omitted). Plaintiffs' Chapter 93A claim fails because UMass Memorial is not engaged in trade or commerce, and thus falls outside the scope of Chapter 93A.

For Chapter 93A to apply, UMass Memorial must have been engaged in "trade or commerce" by operating its public website and patient portal. *See* Mass. Gen. Laws ch. 93A, § 2(a). While an entity's status as a nonprofit corporation is not dispositive as to whether Chapter

93A applies, "[i]n most circumstances, a charitable institution will not be engaged in trade or commerce when it undertakes activities in furtherance of its core mission." *Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass. 1, 23, 26 (1997). A nonprofit "is not engaged in trade or commerce 'if, in the transaction in question, the nonprofit is merely engaged in the customary business necessary to meet its charitable purpose.'" *Trustees of Boston Univ. v. ASM Commc'ns, Inc.*, 33 F. Supp. 2d 66, 77 (D. Mass. 1998) (citation omitted).

UMass Memorial is a nonprofit healthcare system. SCAC ¶ 274. Its mission is to "to improv[e] the health of the people of our diverse communities of Central New England through culturally sensitive excellence in clinical care, service, teaching and research.."[5] In other words, UMass Memorial exists solely to serve its charitable purpose—to provide high quality, accessible care to its patients. *See id.* ¶ 11 ("Together with and through its subsidiaries, UMass Memorial Health Care, Inc. operates hospitals and other healthcare facilities in central Massachusetts that use the UMass Memorial Website").

To that end, like all other reasonably sophisticated healthcare systems, UMass Memorial operates a public website and patient portal. *See id.* ¶¶ 11–15, 40–44. It does so to help ensure effective delivery of and education about healthcare services, including provide information about treatment options to the community at large. *See id.* ¶¶ 41–43 (alleging that UMass Memorial's websites are designed for "learning about medical issues and treatment options" and "to find a doctor, research treatments, and learn about Defendants' services."). The patient portal facilitates appointment scheduling and provides patients with ready access to their medical records. *See id.* ¶ 44 ("Defendants also maintain a patient portal, which allows patients to make appointments, access medical records, view lab results, and exchange communications with their

---

[5] UMass Memorial Health, Mission Statement, https://www.ummhealth.org/about-us/mission-vision-and-values (last visited May 1, 2026).

health care providers."). UMass Memorial engages in these activities solely in support of its mission to provide medical care.

Plaintiffs offer only bare legal conclusions to the contrary. *See id.* ¶ 274 ("Defendants operated in a business context."); ¶ 268 ("Defendant was engaged in trade or commerce in Massachusetts."). Moreover, their own claims demonstrate that UMass Memorial employed website technologies solely to improve the delivery of medical services and to increase awareness among the patient population about those services. *See id.* ¶ 217 (a website "benefits from the ability to analyze a user's experience and activity on the website to assess the website's functionality and traffic"). Operating websites, and ensuring that they work properly and reach the community, are customary practices by many nonprofits, including UMass Memorial, to meet their charitable purpose.

Courts have overwhelmingly agreed. In *Doe v. Partners Healthcare Sys. Inc.*, the Court dismissed a Chapter 93A claim based on Partners Healthcare System and Dana-Farber Cancer Institute's use of website analytic technologies "because the informational websites at issue serve the defendant not-for-profits' core mission." No. 1984CV01651-BLS1, 2020 Mass. Super. LEXIS 4667, at *1 (Nov. 20, 2020). Courts routinely recognize that a hospital's core charitable mission includes—indeed, requires—many related activities that accordingly fall outside Chapter 93A. See *All Seasons Servs. v. Comm'r of Health & Hosps.*, 416 Mass. 269, 271 (1993) (concluding that Chapter 93A did not apply because "[c]ontracting for food services is merely incidental to the hospital's primary function of providing medical services"); *Hubert v. Melrose-Wakefield Hosp. Ass'n*, 40 Mass. App. Ct. 172, 175–76 (1996) (declining to extend Chapter 93A to a hospital's land purchase because "[n]othing in the record indicated that the hospital, a nonprofit organization, was acting in a business context so as to generate a profit by its efforts");

*Shedd v. Sturdy Mem'l Hosp., Inc.*, No. 2173CV00498C, 2022 WL 1102524, at *7 (Mass. Super. Apr. 5, 2022) (dismissing Chapter 93A data breach claim because collecting patient information "is conduct in furtherance of Sturdy Memorial's core mission of providing health care").

Plaintiffs cannot negate the fact that UMass Memorial operates its websites solely in support of its charitable mission by adding a few conclusory allegations. Accordingly, the conduct at the heart of their claim falls outside of Chapter 93A and the claim must be dismissed.

## CONCLUSION

For the foregoing reasons, UMass Memorial respectfully asks the Court to dismiss the Second Consolidated Amended Complaint with prejudice.

Dated: May 8, 2026

Respectfully submitted,

*/s/ Elizabeth A. Scully*

Elizabeth A. Scully (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W., Suite 1100
Washington, DC 20036-5304
escully@bakerlaw.com
T: (202) 861-1500

James H. Rollinson (BBO #649407)
BAKER & HOSTETLER LLP
127 Public Street, Suite 2000
Cleveland, OH 44116
jrollinson@bakerlaw.com

Paul G. Karlsgodt (*pro hac vice* to be filed)
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202-2662
pkarlsgodt@bakerlaw.com

Stephen T. Paterniti (BBO #564860)
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, MA 02116
Stephen.Paterniti@jacksonlewis.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 8, 2026, a copy of the foregoing was served via CM/ECF which will serve the Plaintiffs' counsels of record.

*/s/ Elizabeth A. Scully*
Elizabeth A. Scully (admitted *pro hac vice*)
BAKER & HOSTETLER LLP

*Attorney for Defendants*